# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ALBERT L. GRAY, Administrator, *et al.*        :
                Plaintiffs,    :
                                  :

    vs.                                 :
                                  :

JEFFREY DERDERIAN, *et al.*           :    C.A. No. 04-312-L
                Defendants.   :
                                  :    **JURY TRIAL CLAIMED**

## FIRST AMENDED MASTER COMPLAINT

Counsel for their respective Plaintiffs, as
enumerated on the signature page,

Max Wistow, Esq. (#0330)
John P. Barylick, Esq. (#1907)
WISTOW & BARYLICK INCORPORATED
61 Weybosset Street
Providence, RI  02903

Mark S. Mandell, Esq. (#0502)
MANDELL, SCHWARTZ & BOISCLAIR
One Park Row
Providence, RI  02903

Patrick T. Jones, Esq. (#6636)
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA  02110

Michael A. St. Pierre, Esq. (#2553)
REVENS, REVENS & ST. PIERRE
946 Centerville Road
Warwick, RI 02886

Stephen E. Breggia, Esq. (#2865)
BREGGIA, BOWEN & GRANDE
395 Smith Street
Providence, RI  02908

Steven A. Minicucci, Esq. (#4155)
CALVINO LAW ASSOCIATES
373 Elmwood Avenue
Providence, RI 02907

Eva Marie Mancuso, Esq. (#3564)
HAMEL, WAXLER, ALLEN & COLLINS
387 Atwells Avenue
Providence, RI  02909

Charles N. Redihan, Esq. (#1810)
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI  02903



**TABLE OF CONTENTS**

PAGE

Introduction ............................................................................................................... 16

Plaintiffs .................................................................................................................. 16-66

D1.  Jeffrey Derderian ............................................................................................. 66-68
D2.  Michael Derderian ........................................................................................... 68-69
D3.  DERCO, LLC .................................................................................................. 69-71
D4   Howard Julian .................................................................................................. 71-72
D5.  Triton Realty Limited Partnership ................................................................... 72-73
D6.  Triton Realty, Inc. ............................................................................................ 73-75
D7.  Raymond J. Villanova ...................................................................................... 75-77
D8.  Jack Russell .................................................................................................... 77-78
D9.  Jack Russell Touring, Inc. ............................................................................... 78-80
D10. Paul Woolnough ............................................................................................. 80-81
D11. Manic Music Management, Inc. ....................................................................... 81-82
D12. Knight Records, Inc. ........................................................................................ 83-84
D13. Daniel Biechele ............................................................................................... 84-85
D14. Anheuser-Busch, Incorporated ....................................................................... 85-88
D15. Anheuser-Busch Companies, Incorporated .................................................... 85-88
D16. Mclaughlin & Moran ........................................................................................ 88-90
D17. WHJY, Inc. and Capstar Radio Operating Company ...................................... 90-92
D18. Clear Channel Broadcasting, Inc. ................................................................... 92-93
D19. Denis P. Larocque ........................................................................................... 93-96
D20. Anthony Bettencourt ........................................................................................ 93-97
D21. Malcolm Moore, in his Capacity as Finance Director of the Town of West Warwick ... 93-96
D22. State of Rhode Island ...................................................................................... 97
D23. Irving J. Owens, Fire Marshal ......................................................................... 97-98
D24. Brian Butler .................................................................................................... 98-99
D25. TVL Broadcasting, Inc. ................................................................................... 99
D26. STC Broadcasting, Inc. .................................................................................... 100
D27. Barry H. Warner .............................................................................................. 100-101
D28. Luna Tech, Inc. ............................................................................................... 101-103
D29. High Tech Special Effects, Inc. ....................................................................... 103-105
D30. American Foam Corporation ............................................................................ 105-107
D31. Leggett & Platt Incorporated .......................................................................... 107-113
D32. L&P Financial Services Co. ............................................................................ 113-118
D33. General Foam Corporation .............................................................................. 119-124
D34. GFC Foam, LLC. ............................................................................................ 124-129
D35. Foamex LP ...................................................................................................... 130
D36. Foamex International Inc. ................................................................................. 130
D37. FMXI, Inc. ....................................................................................................... 130
D38. PMC, Inc. ........................................................................................................ 131
D39. PMC Global, Inc. ............................................................................................. 131
D40. JBL Incorporated f/k/a James B. Lansing Sound, Incorporated d/b/a JBL Professional ... 131-134
D41. Essex Insurance Company ............................................................................... 134-136
D42. Multi-State Inspections, Inc. ............................................................................ 136

D43. High Caliber Inspections, Inc. ........................................................................................... 136
D44. Underwriters at Lloyd's, London ................................................................................... 136-138
D45. Gresham & Associates of RI., Inc. .................................................................................... 138
D46. ABC Bus, Inc. d/b/a ABC Bus Leasing, Inc. ................................................................. 139-140
D47. Superstar Services LLC ................................................................................................ 140-141
D48. "John Doe" Defendants ................................................................................................ 141-142

Prayers for Relief.................................................................................................................. 142-145

Jury Trial Claim..................................................................................................................... 146

Signatures of Enumerated Plaintiffs' Counsel ......................................................................... 146-148

Appendices

    Appendix A:  Numerical Victim Index
    Appendix B:  Alphabetical Victim Index
    Appendix C:  Attorney/Victim Index

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| 1. | Albert L. Gray, Adm. of the Estate of Derek Gray, and on behalf of Jani L. Gray-McGill, minor child of the decedent, Derek Gray; | ) ) ) |
| 2. | Joanne O'Neill, Adm. of the Estate of Nicholas O'Neill; | ) ) |
| 3. | Marie G. Morton, Adm. of the Estate of Jason R. Morton, individually as wife and surviving spouse of the decedent, Jason R. Morton, and as mother and next friend of Kaitlin Marie Morton and Ashley Marie Morton, minor children of the decedent, Jason R. Morton; | ) ) ) ) ) ) ) |
| 4. | Angel O. Amitrano, Adm. of the Estate of Thomas A. Barnett; | ) ) |
| 5. | Joanne L. Mitchell and William Mitchell, Co-Adm. of the Estate of Donna M. Mitchell, and Joanne L. Mitchell, as guardian and next friend of Brooklyn Belanger and Joslynn Belanger, minor children of the decedent, Donna M. Mitchell; | ) ) ) ) ) |
| 6. | Scott J. Viera, Adm. of the Estate of Kelly Lynn Vieria, and as husband and surviving spouse of the decedent, Kelly Lynn Vieira, and as father and next friend of Crystle Vieira, minor child of the decedent, Kelly Lynn Vieira; | ) ) ) ) ) |
| 7. | Patricia Avilez, Adm. of the Estate of Eugene Avilez; | ) ) |
| 8. | Jennifer L. Young, Adm. of the Estate or Robert Daniel Young and as wife and surviving spouse of the decedent, Robert Daniel Young; | ) ) ) |
| 9. | Leonard Angers, Adm. of the Estate of Stacie J. Angers; | ) ) |
| 10. | Dorothy Marion, Adm. of the Estate of Thomas Frank Marion, Jr.; | ) ) |
| 11. | Yvette Fresolo, on behalf of the Estate of Michael Fresolo, and as wife and surviving spouse of the decedent, Michael Fresolo, and as mother and next friend of Maria Fresolo and Emily Fresolo, minor children of the decedent, Michael Fresolo; | ) ) ) ) ) ) |
| 12. | Heidi Peralta Longley, as parent of and for the benefit of AceyTy Longley, minor child of the decedent, Ty Longley; | ) ) ) |

CIVIL ACTION
NO. 04-312L

JURY TRIAL CLAIMED

13.    Katherine Shubert, on behalf of the Estate of    )
Mitchell Shubert, and as wife and surviving    )
spouse of the decedent, Mitchell Shubert, and as    )
mother and next friend of Melissa Cara Shubert,    )
minor child of the decedent, Mitchell Shubert;    )
Maryanne Shubert, as minor daughter at the    )
time of death of Mitchell Shubert, and Laura    )
Shubert, as mother and next friend of Mitchell J.    )
Shubert, Jr., minor child of the decedent,    )
Mitchell Shubert;    )

14.    Eileen L. DiBonaventura, Adm. of the Estate of    )
Albert DiBonaventura;    )

15.    Donna DeBoard, Adm. of the Estate of Daniel    )
Frederickson, and on behalf of Amanda    )
Frederickson, Ryan Frederickson, Amber    )
Frederickson and Kenneth Frederickson, minor    )
children of the decedent, Daniel Frederickson;    )

16.    Judith Marie Croteau, Adm. of the Estate of    )
her son, Robert J. Croteau;    )

17.    Warren L. Baker, III and John J. Decosta, III,    )
Co-Adm. of the Estate of Mary H. Baker and    )
John J. Decosta, III as the natural and legal    )
guardian of the persons and estates of Alison M.    )
Decosta, John R. Decosta, Scott A. Decosta and    )
Michael J. Decosta, minor children of the    )
decedent, Mary H. Baker, and Warren L. Baker,    )
III, as husband and surviving spouse of Mary H.    )
Baker;    )

18.    Dorothy E. Bonardi, Adm. of the Estate of    )
William C. Bonardi, III;    )

19.    Denise M. McGregor and Nancy Depasquale,    )
Co-Adm. of the Estate of Alfred C. Crisostomi    )
and Denise M. McGregor as mother and next    )
friend of Brandon M. Crisostomi, minor child of    )
the decedent, Alfred C. Crisostomi;    )

20.    Eileen Dunn as surviving spouse of Kevin Dunn    )
and mother and next friend of Joanna Dunn,    )
minor child of the decedent, Kevin Dunn;    )

21.    Anthony J. Durante as father and next friend    )
of Anthony Durante and Matthew Durante, minor    )
children and wrongful death beneficiaries of the    )
decedent, Lori K. Durante;    )

22.    Loriann Gooden, Adm. of the Estate of James F.    )
Gooden, and Loriann Gooden, individually as    )
wife and surviving spouse of the decedent,    )
James F. Gooden;    )

23.    Claire H. Bruyere, Adm. of the Estate of Bonnie    )
L. Hamelin;    )

- 2 -

24. John M. Hoban, Adm. of the Estate of Andrew )
R. Hoban; )
25. Paula A. McLaughlin, Adm. of the Estate of )
Michael B. Hoogasian; )
26. Paula A. McLaughlin, Adm. of the Estate of )
Sandy L. Hoogasian; )
27. Maria Latulippe, Adm. of the Estate of Dale L. )
Latulippe and as the natural and legal guardian )
of the person and estate of Dustin T. Latulippe, )
minor child of the decedent, Dale L. Latulippe; )
28. John A. Longiaru and Sus Longiaru, Co-Adm. )
of the Estate of John M. Longiaru; )
29. Sarah R. Mancini and Anthony B. Mancini, Co- )
Adm. of the Estate of Keith A. Mancini; )
30. Barbara Magness, Adm. of the Estate of Steven )
R. Mancini; )
31. Paul A.. Morin, Adm. of the Estate of Ryan M. )
Morin; )
32. Roderick Prouty, Nancy A. Lee and Paula )
Woodcock, Co-Adm. of the Estate of Christopher )
Prouty and Paula Woodcock as mother and next )
friend of Makayla Woodcock, the minor child of )
the decedent Christopher Prouty; )
33. Susan Sylvia, Adm. of the Estate of Kevin )
Anderson, Melinda Bloomingburgh, as )
mother and next friend of  Kevin Gage, minor )
child of the decedent, Kevin Anderson, and )
Sheila Palumbo, as mother and next friend of )
Brandon Palumbo, minor child of the decedent, )
Kevin Anderson; )
34. Ray F. Beauchaine, Sr., Adm. of the Estate of )
Laureen Beauchaine, Ray Beauchaine, Jr., )
individually as husband and surviving spouse )
of the decedent, Laureen Beauchaine, and Ray )
Beauchaine, Jr., as father and next friend of )
Ray F. Beauchaine, III, Christopher R. Beauchaine )
and Ashley Beauchaine, minor children  of the )
decedent, Laureen Beauchaine; )
35. Sally Blom and Rolland Blom, Co-Adm. of the )
Estate of Steven Blom, and Sharon Colpitts as )
mother and next friend of Steven Blom, Jr., a )
minor child of the decedent, Steven Blom; )
36. Catherine Cabral, Adm. of the Estate of Richard )
Cabral, Jr., Catherine Cabral, individually as )
wife and surviving spouse of the decedent, )
Richard Cabral, Jr., and Catherine Cabral, as )
mother and next friend of Christine Cabral and )
Richard Cabral, III, minor children of the )

decedent, Richard Cabral, Jr.;    )

37.    William H. Cartwright, Jr., Adm. of the Estate    )
       of William W. Cartwright;    )

38.    Katherine Cordier and Ronald J. Cordieri, Co-    )
       Adm. of the Estate of Michael Cordier;    )

39.    Mark D'Andrea, Adm. of the Estate of Lisa    )
       D'Andrea;    )

40.    Peter M. DiRienzo, Adm. of the Estate of    )
       Christina DiRienzo, Peter M. DiRienzo,    )
       individually as husband and surviving spouse of    )
       the decedent, Christina DiRienzo, Peter M.    )
       DiRienzo, as father and next friend of Beau    )
       DiRienzo, minor child of the decedent, Christina    )
       DiRienzo, and Peter M. DiRienzo, Jr., as minor    )
       son of the deceased, Christina DiRienzo at the    )
       time of her death;    )

41.    Lawrence E. Fick, Adm. of the Estate of    )
       Charline E. Fick, and Lawrence E. Fick, as    )
       father and next friend of Samantha Fick and    )
       William Fick, minor children of the decedent,    )
       Charline E. Fick;    )

42.    Timothy J. Fleming, Adm. of the Estate of    )
       Thomas J. Fleming;    )

43.    Dean DePietro, Adm. of the Estate of Rachel K.    )
       Florio-DePietro, and Dean DePietro, as father    )
       and next friend of Adrian DePietro, a minor    )
       child of the decedent, Rachel K. Florio-DePietro;    )

44.    James C. Gahan, III, Adm. of the Estate of    )
       James C. Gahan, IV;    )

45.    Sandra L. Greene, Adm. of the Estate of Scott    )
       C. Greene, and Sandra L. Greene, individually    )
       as wife and surviving spouse of the decedent,    )
       Scott C. Greene;    )

46.    Bruce G. Pollock, Esq., Adm. of the Estate of    )
       Scott S. Griffith, and Nancene Cohen as    )
       guardian of the Estate and next friend of Kacie    )
       L. Griffith, a minor child of the decedent, Scott    )
       S. Griffith;    )

47.    Bonnie A. Hoisington, Adm. of the Estate of    )
       Abbie L. Hoisington;    )

48.    Carlton L. Howorth, Jr., Adm. of the Estate of    )
       Carlton L. Howorth, III, and Karen E. Howorth,    )
       individually and as mother and next friend of    )
       Elizabth Howorth, a minor child of the decedent,    )
       Carlton L. Howorth, III;    )

49.    George F. Phelan, Esq., Special Adm. of the    )
       Estate of Lisa Kelly;    )

50.    Evelyn L. King, Adm. of the Estate of Tracy F.    )

- 4 -

King, Evelyn L. King, individually as wife and )
surviving spouse of the decedent, Tracy F. King, )
Evelyn L. King, as mother and next friend of )
Joshua King and Jacob King, minor children of )
the decedent, Tracy F. King and Rozilyn Guy, as )
mother and next friend of Jordan King, minor )
child of the decedent, Tracy F. King; )

51. Barbara A. Kulz and George A. Kulz, Co-Adm. )
of the Estate of Michael J. Kulz; )

52. Tammy Lapierre, Adm. of the Estate of Keith R. )
Lapierre, Tammy Lapierre, individually as wife )
and surviving spouse of the decedent, Keith R. )
Lapierre, and Tammy Lapierre, as mother and )
next friend of Ryan S. Lapierre and Sarah R. )
Lapierre, minor children of the decedent, Keith )
R. Lapierre; )

53. Judith Carver, Adm. of the Estate of Kristin L. )
McQuarrie; )

54. Richard Moreau and Jean Moreau, Co-Adm. of )
the Estate of  Leigh Ann Moreau; )

55. Michael Reno, Esq., Adm. of the Estate of Beth )
Mosczynski; )

56. Richard H. Rakoski, Adm. of the Estate of )
Theresa L. Rakoski, and Richard H. Rakoski, )
individually as husband and surviving spouse of )
the decedent, Theresa L. Rakoski; )

57. Judy O'Brien, Adm. of the Estaet of Robert L. )
Reisner, III; )

58. John J. Shaw, Exec. of the Estate of Rebecca )
Shaw; )

59. Veda Kerr, Adm. of the Estate of Victor L. )
Stark; )

60. Zachary S. Suffoletto and Diana L. )
Shaughnessy, Co-Adm. of the Estate of )
Benjamin J. Suffoletto, Jr.; )

61. Zachary S. Suffoletto and Diana L. )
Shaughnessy, Co-Adm. of the Estate of )
Linda D. Suffoletto; )

62. Honorina Washburn, Adm. of the Estate of )
Kevin R. Washburn; )

63. Cheryl Haines, Adm. of the Estate of Everett T. )
Woodmansee, III; )

64. Melinda J. Darby, Adm. of the Estate of )
Matthew P. Darby, individually and as natural )
parent, next friend and guardian of Jessica L. )
Darby and Sarah M. Darby, minor children of )
the decedent, Matthew P. Darby; )

| | | |
|---|---|---|
| 65. | Susan W. Romanoff, Ex. of the Estate of Tracey L. Romanoff and Jordan Blasbalg as guardian of Joshua Blasbalg and Lindsey Blasbalg, minor children of the decedent, Tracey Romanoff; | ) ) ) ) |
| 66. | Mark P. Hyer, Sr., Adm. of the Estate of Eric J. Hyer; | ) ) |
| 67. | Annmarie Swidwa, Adm. of the Estate of Bridget M. Sanetti; | ) ) |
| 68. | Stephen A. Gillett, Adm. of the Estate of Laura L. Gillett, individually and as father, next friend and permanent legal guardian of Jake T. Gillett and Jared J. Gillet, minor children of the decedent, Laura L. Gillett; | ) ) ) ) ) |
| 69. | Suzanne Fox, Adm. of the Estate of Jeffrey Wood Martin; | ) ) |
| 70. | Ellen-Marie Stowers, Adm. of the Estate of Jennifer L. Stowers; | ) ) |
| 71. | Sharon Eaton, Adm. of the Estate of Edward B. Corbett, III; | ) ) |
| 72. | Patricia Belanger, Ex. of the Estate of Dina A. DeMaio and Steven Beardsworth, temporary guardian of Justin Perry, minor child of the decedent, Dina A. DeMaio; | ) ) ) ) |
| 73. | Robert J. Johnson, Sr., Adm. of the Estate of Derek B. Johnson; | ) ) |
| 74. | Jacqueline Jacavone, Adm. of the Estate of Andrea L. Jacavone-Mancini; | ) ) |
| 75. | Leo Smith and Doris Smith as Co-Adm. of the Estate of Dennis J. Smith; | ) ) |
| 76. | Korina Arruda, Co-Adm. of the Estate of Christopher G. Arruda and as surviving spouse of the decedent, Christopher G. Arruda; | ) ) ) |
| 77. | Gerard W. Fontaine and Rosanna C. Fontaine, Co-Adm. of the Estate of Mark A. Fontaine; | ) ) |
| 78. | John J. Libera and Joanne T. Libera, Co-Adm. of the Estate of Stephen Matthew Libera; | ) ) |
| 79. | Edward C. Ervanian as Adm. of the Estate of Edward E. Ervanian; | ) ) |
| 80. | Kathleen Sullivan; | ) |
| 81 | Scott J. Vieira, individually and as father and next friend of Crystle Vieira, his minor child; | ) ) |
| 82. | Susan H. Chamberlin; | ) |
| 83. | John F. Van Deusen, III, individually and as father and next friend of John F. Van Deusen, IV and Dylan Van Deusen, minor children of John F. Van Deusen, III; | ) ) ) ) |
| 84. | Robert J. Luxton; | ) |
| 85. | Elizabeth Arruda, individually and as mother | ) |

- 6 -

|      | and next friend of Zoey Retamoza, minor child of Elizabeth Arruda; | ) ) |
|------|---|---|
| 86.  | Robert W. Rager, | ) |
| 87.  | Joseph K. Kinan individually and Joseph K. Kinan and Maureen Sullivan, as parents and next friends of Kaitlin E. Sullivan, a minor; | ) ) ) |
| 88.  | John F. Fairbairn, individually and as father and next friend of John Fairbairn and Ariana Fairbairn, minor children of John F. Fairbairn; | ) ) ) |
| 89.  | Andrea F. Fairbairn, individually and as mother and next friend of John Fairbairn, Ariana Fairbairn, Amanda Melendez Durfee and Christopher Melendez Durfee, minor children of Andrea F. Fairbairn; | ) ) ) ) ) |
| 90.  | Jose Roberto Demos, individually and as father and next friend of Vanessa Santos Demos and Samuel Santos Demos, minor children of Jose Roberto Demos; | ) ) ) ) |
| 91.  | Roberta O'Melia, individually and as mother and next friend of Brendan O'Melia and Christian O'Melia, minor children of Roberta O'Melia; | ) ) ) ) |
| 92.  | Fredrick P. Vallante, Jr., individually and as father and next friend of Caitlyn Vallante and Courtney Vallante, minor children of Fredrick P. Vallante, Jr.; | ) ) ) ) |
| 93.  | Kerrie-Lynn Beers, individually and as mother and next firend of Jeremy T. Beers, minor child of Kerrie-Lynn Beers; | ) ) ) |
| 94.  | Francis J. Canillas; | ) |
| 95.  | David Ciccone; | ) |
| 96.  | Christopher J. Travis; | ) |
| 97.  | Jon R. Schmidt, individually and as father and next friend of Ryan Schmidt and Even Schmidt, minor children of Jon R. Schmidt; | ) ) ) |
| 98.  | David B. MacDonald, individually and as father and next friend of David B. MacDonald, Jr., minor child of David B. MacDonald; | ) ) ) |
| 99.  | Paul du Fossé; | ) |
| 100. | John R. Arpin, individually and as father and next friend of Ryan Arpin and Matthew Arpin, minor children of John R. Arpin; | ) ) ) |
| 101. | Paula Gould; | ) |
| 102. | Kevin J. Beese, Sr., individually and as father and next friend of Taylor Beese, Brittany Beese and Kevin Beese, Jr., minor children of Kevin J. Beese, Sr.; | ) ) ) ) |
| 103. | Shaun O'Donnell; | ) |

104. Brian Loftus;                                                )
105. Christopher Costa, individually and as father              )
     and next friend of Leah Elizabeth Costa Turck,           )
     minor child of Christopher Costa;                       )
106. Georgette Giroux-Brown, individually and as            )
     mother and next friend of Ben Giroux-Brown,             )
     minor child of Georgette Giroux-Brown;                  )
107. Stephanie Zannella;                                          )
108. Roberta J. Prete, individually and as mother and      )
     next friend of Michael Falco, minor child of            )
     Roberta J. Prete;                                       )
109. Catherine Randall, individually and as mother         )
     and next friend of Douglas Randall and Meagan           )
     Randall, minor children of Catherine Randall;           )
110. Edward Pezzelli, Jr., individually and as father      )
     and next friend of Edward Pezzelli, III and             )
     Hannah Pezzelli, minor children of Edward               )
     Pezzelli, Jr.;                                          )
111. Paul Pezzelli, individually and as father and         )
     next friend of Megan Pezzelli and Kyle Pezzelli,        )
     minor children of Paul Pezzelli;                        )
112. Joseph P. Barber, individually and as father and      )
     next friend of Max Leili and Brandon Tully,             )
     minor children of Joseph P. Barber;                     )
113. Irina M. Gershelis, individually and as mother        )
     and next friend of Brentin St. Jean and Colner          )
     St. Jean, minor children of Irina M. Gershelis;         )
114. Rodney J. Gaumitz, individually and as father         )
     and next friend of  Tyler Gaumitz and Collin            )
     Gaumitz, minor children of Rodney J. Gaumitz;           )
115. Donna Reis;                                                  )
116. Ronald S. Schoepfer;                                        )
117. Richard J. Grace;                                           )
118. Tawnya Kelly, individually and as mother and          )
     next friend of Andrew A. Jones and Aryanna F.           )
     Greene, minor children of Tawnya Kelly;                 )
119. Gregory Scott Dufour, individually and as father      )
     and next friend of Ashley A. Dufour, minor              )
     child of Gregory Scott Dufour;                          )
120. John D. Wigginton;                                          )
121. Scott Dunbar;                                               )
122. Joseph Lusardi;                                             )
123. John Kudryk;                                                )
124. Brandon Fravala, individually and as father and       )
     next friend of Nicholas James Douglas Fravala,          )
     minor child of Brandon Fravala;                         )
125. David Fravala;                                              )
126. Robin Petrarca;                                             )

| | | |
|---|---|---|
| 127. | Michael Stefani, individually and as father and next friend of Jade Bartels, minor child of Michael Stefani; | ) ) ) |
| 128. | Hollie A. Pomfred and Justin Pomfret, individually and as parents and next friends of Alexis Pomfret and Skylar Pomfret, minor children of Hollie A. Pomfret; | ) ) ) ) |
| 129. | Justin Pomfret and Hollie A. Pomfret, individually and as parents and next friends of Alexis Pomfret and Skylar Pomfret, minor children of Justin Pomfret; | ) ) ) ) |
| 130. | Al Prudhomme; | ) |
| 131. | Charlene Prudhomme; | ) |
| 132. | Robert Harrington; | ) |
| 133. | Robert A. Barlow; | ) |
| 134. | Kristen A. Brown; | ) |
| 135. | Patricia L. Clarke, individually and as mother and next friend of Kira Lynn Clarke, a minor; | ) ) |
| 136. | Gennaro Companatico, individually and as father and next friend of Samantha Companatico and Genna Companatico, minors; | ) ) ) |
| 137. | Richard Cook, Sarah Amy Cook as wife of Richard Cook and Richard and Sarah Cook as parents and next friends of their minor child, Cooper R Cook; | ) ) ) ) |
| 138. | Richard DelSanto, individually and as parent and next friend of his minor children, Jarred Ferrara and Evan Parr; | ) ) ) |
| 139. | Joseph A. DiBona, Jr.; | ) |
| 140. | Linda M. Fisher, individually, Kevin J. Fisher, individually and Linda M. Fisher and Kevin J. Fisher as parents and next friends of Amber Fisher, a minor; | ) ) ) ) |
| 141. | Joseph M. Flynn; | ) |
| 142. | Lisa C. Hale, individually and as mother and next friend of Kylen Hale, a minor; | ) ) |
| 143. | Laurie A. Hussey, individually, John Edward Hussey, Jr., individually and Laurie A. Hussey and John Edward Hussey as parents and next friends of Hallie Ann Hussey and Rayanna Leigh Hussey, minors; | ) ) ) ) ) |
| 144. | Marc A. Lucier; | ) |
| 145. | Matthew Mallette, individually, Jessica Mallette, individually and Matthew Mallette and Jessica Mallette as parents and next friends of Joshua Mallette and Cameron Mallette, minors; | ) ) ) ) |
| 146. | John Mangan, Jr. | ) |
| 147. | Frances P. McMurray; | ) |

- 9 -

| | | |
|---|---|---|
| 148. | Christopher J. Nowicki; | ) |
| 149. | Paul M. Pelletier; | ) |
| 150. | Michael Perreault; | ) |
| 151. | Christopher A. Peters; | ) |
| 152. | Jonathan Petrin; | ) |
| 153. | Jason Piscopio; | ) |
| 154. | John A. Rezendes, individually and as father | ) |
| | and next friend of Leah M. Rezendes and | ) |
| | Cameron M. Rezendes, minors; | ) |
| 155. | Catherine C. Sagesta, individually and as | ) |
| | mother and next friend of Christin Cameron | ) |
| | and Samantha Cameron, minors; | ) |
| 156. | George Solitro; | ) |
| 157. | Gary Stein, individually and as father and | ) |
| | next friend of Victoria Stein and Joshua Stein, | ) |
| | minors; | ) |
| 158. | Melissa A. Stephenson; | ) |
| 159. | Ray F. Beauchaine, Jr., and Ray F. Beauchaine, | ) |
| | Jr., as father and next friend of Ray F. | ) |
| | Beauchaine, III, Christopher R. Beauchaine | ) |
| | and Ahsley Beauchaine, minor children of | ) |
| | Ray Beauchaine, Jr.; | ) |
| 160. | Julie Belson; | ) |
| 161. | Kevin Blom; | ) |
| 162. | Milisa Bump, individually and as  mother and | ) |
| | next friend of Dereck Bump and Sandra Dunn, | ) |
| | minor children of Milisa Bump; | ) |
| 163. | Jennifer Choquette; | ) |
| 164. | Nicole Conant; | ) |
| 165. | Stephanie Conant; | ) |
| 166. | Arthur J. Conway, III; | ) |
| 167. | Robert Cushman; | ) |
| 168. | Shauna Dell, and Claude Richard as husband | ) |
| | of Shauna Dell; | ) |
| 169. | Claude Richard and Shauna Dell as wife | ) |
| | of Claude Richard; | ) |
| 170. | Richard Dufour, Jr.; | ) |
| 171. | James Dufresne, individually and as father and | ) |
| | next friend of James J. Dufresne, Jr. and Bryan | ) |
| | Dufresne, minor children of James Dufresne; | ) |
| 172. | John Gibbs; | ) |
| 173. | Gregory Gray; | ) |
| 174. | Grant Hall; | ) |
| 175. | Michael Iannone; | ) |
| 176. | Adrian Krasinskas; | ) |
| 177. | Joseph LoBianco; | ) |
| 178. | David McGinn; | ) |
| 179. | Deborah Peduzzi, individually and Deborah | ) |

|  | Peduzzi and Robert Peduzzi as parents and next friends of Joseph Peduzzi and Ashley Peduzzi, minors; | ) ) ) |
| 180. | Dawn Perry, individually and Stephen Perry, as husband of Dawn Perry; | ) ) |
| 181. | Stephen Perry, individually and Dawn Perry, as wife of Stephen Perry; | ) ) |
| 182. | Robin Precourt, and Justina Martin as minor daughter at the time of injury to Robin Precourt; | ) ) |
| 183. | Gina Russo, and Gina Russo, as mother and next friend of Alex Odsen and Nicholas Odsen, minor children of Gina Russo; | ) ) ) |
| 184. | Milton Servis, II; | ) |
| 185. | Derrick Silva; | ) |
| 186. | Erik Sippy; | ) |
| 187. | David Steets, individually and as father and next friend of David M. Steets, a minor; | ) ) |
| 188. | Raul Vargas and Melanie Vargas, individually and as parents and next friends of Bryan Vargas, a minor; | ) ) ) |
| 189. | Jennifer Viera; | ) |
| 190. | Andrew S. Richardson, Trustee in Bankruptcy for Debra Wagner and Brian Wagner, individually, and Debra Wagner and Brian Wagner as parents and next friends of Krystal Wagner, a minor; | ) ) ) ) ) |
| 191. | Gina M. Gauvin, individually and as parent and next friend of Shayna S. Gauvin and Joseph Jordan; | ) ) ) |
| 192. | Scott C. Moresco, individually, and in his capacity as natural parent, next friend and guardian of Tatiana Abel; | ) ) ) |
| 193. | Mario B. Cardillo, individually and Kathleen M. Cardillo as wife of Mario B. Cardillo; | ) ) |
| 194. | Kathleen M. Cardillo, individually, and Mario B. Cardillo as husband of Kathleen M. Cardillo; | ) ) |
| 195. | Tammy M. St. Hilaire; | ) |
| 196. | Robert P. Feeney; | ) |
| 197. | David D. Brennan, individually and Susan Brennan as wife of David D. Brennan; | ) ) |
| 198. | Robert M. Cripe; | ) |
| 199. | Neil E. Cronin; | ) |
| 200. | Karen M. Gordon; | ) |
| 201. | Paul R. Gordon; | ) |
| 202. | Joseph A. Jones; | ) |
| 203. | Lee A. Karvonen; | ) |
| 204. | Theresia M. LaBree; | ) |
| 205. | Melissa J. Minor, individually and John Minor | ) |

- 11 -

|      |                                                                                                                                                                    |   |
|------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------|---|
|      | as husband of Melissa J. Minor;                                                                                                                                     | ) |
| 206. | Charles A. Oberg;                                                                                                                                                   | ) |
| 207. | Linda A. Ormerod;                                                                                                                                                   | ) |
| 208. | John S. Pinkham;                                                                                                                                                    | ) |
| 209. | Victoria L. Potvin;                                                                                                                                                 | ) |
| 210. | Kerrie A. Rock;                                                                                                                                                     | ) |
| 211. | Timothy J. Rossano;                                                                                                                                                 | ) |
| 212. | Nancy S. Trautz, individually and Chris C. Trautz as husband of Nancy S. Trautz;                                                                                    | ) |
| 213. | Donovan Williams, individually and as parent and next friend of Zachary Williams, Hayley Williams and Dylan Williams;                                               | ) |
| 214. | Sharon A. Wilson;                                                                                                                                                   | ) |
| 215. | Melanie Fontaine;                                                                                                                                                   | ) |
| 216. | Shawn Lourenzo and Mary Lourenco, as Legal Guardian on behalf of Shawn Lourenco's children, Bryan Lourenco, Brett Lourenco and Brad Lourenco;                       | ) |
| 217. | Ashley A. Poland;                                                                                                                                                   | ) |
| 218. | Joseph Cristina;                                                                                                                                                    | ) |
| 219. | William Rancourt;                                                                                                                                                   | ) |
| 220. | Matthew Dussault;                                                                                                                                                   | ) |
| 221. | Paul Bertolo;                                                                                                                                                       | ) |
| 222. | Cynthia A. Nobles, individually, and Edward D. Nobles as husband of Cynthia A. Nobles and next friend of Ethan MacLeod and Brandon Nobles;                          | ) |
| 223. | Edward D. Nobles, individually, and Cynthia A. Nobles as wife of Edward D. Nobles and next friend of Brandon Nobles;                                                | ) |
| 224. | Donald N. Trudeau, individually, and Roberta Trudeau as wife of Donald N. Trudeau;                                                                                  | ) |
| 225. | Jane C. Sylvester and Robert L. Sylvester, Co-Adm. of the Estate of Jason Sylvester;                                                                                | ) |
| 226. | Erin Pucino, individually and as mother and next friend of Sterling Pucino, her minor child;                                                                        | ) |
| 227. | Dorothy Pimentel, individually and as mother and next friend of Savannah, Carlos, Jr., Cheyenne and Cullin Pimentel, minor children of Charles Pimentel, deceased;  | ) |
| 228. | Kimberly Rich as Adm. of the Estate of Walter E. Rich, individually and as next friend of Christopher Rich, minor child of the decedent, Walter E. Rich;            | ) |
| 229. | Cathren M. Prunier, individually and as mother and next friend of Peter Shays, Angela Shays and Christopher Shays, her minor children;                              | ) |
| 230. | Glenn Therriault, Cristina Therriault as wife of                                                                                                                    | ) |

|  | Glenn Therriault and Glenn Therriault as father | ) |
|  | and next friend of Maya Therriault, his minor | ) |
|  | daughter; | ) |
| 231. | Bruce Cormier; | ) |
| 232. | Donna Cormier; | ) |
| 233. | Brenda Cormier; | ) |
| 234. | Anthony Manzo, Adm. of the Estate of Judith Manzo) |  |
|  | and as father and next friend of Brianna B. Manzo | ) |
|  | and Anthony Manzo, II, minor children of Judith | ) |
|  | Manzo; | ) |
| 235. | Raymond Mattera and Jaromir Housa, Co-Adm. | ) |
|  | of the Estate of Tammy A. Mattera-Housa, Jaromir | ) |
|  | Housa as surviving spouse and as father and next | ) |
|  | friend of Nicholas Housa, and Raymond Mattera | ) |
|  | and Diane Mattera as parents and next friend of | ) |
|  | Nathan Robert Mattera; | ) |
| 236. | Erin Whalen; | ) |
| 237. | Stephanie Simpson, individually and as next friend | ) |
|  | of her minor children, Matthew Simpson, David | ) |
|  | Simpson and Tayla Simpson; | ) |
| 238. | Richard Wiggs; | ) |
| 239. | John F. Pickett, Adm. of the Estate of Matthew J. | ) |
|  | Pickett; | ) |
| 240. | Michael R. Ricardi | ) |
|  | (241 through 270 reserved) | ) |
|  |  | ) |
|  | Plaintiffs, | ) |
|  |  | ) |
|  | vs. | ) |
|  |  | ) |
| D1. | Jeffrey Derderian; | ) |
| D2. | Michael Derderian; | ) |
| D3. | DERCO, LLC; | ) |
| D4. | Howard Julian; | ) |
| D5. | Triton Realty Limited Partnership; | ) |
| D6. | Triton Realty, Inc.; | ) |
| D7. | Raymond Villanova; | ) |
| D8. | Jack Russell; | ) |
| D9. | Jack Russell Touring, Inc.; | ) |
| D10. | Paul Woolnough; | ) |
| D11. | Manic Music Management, Inc.; | ) |
| D12. | Knight Records, Inc.; | ) |
| D13. | Daniel Biechele; | ) |
| D14. | Anheuser-Busch, Incorporated; | ) |
| D15. | Anheuser-Busch Companies, Incorporated; | ) |

- 13 -

| | | |
|---|---|---|
| D16. | McLaughlin & Moran, Inc.; | ) |
| D17. | WHJY, Inc. and Capstar Radio Operating | ) |
| | Company; | ) |
| D18. | Clear Channel Broadcasting, Inc.; | ) |
| D19. | Denis P. Larocque, Fire Inspector; | ) |
| D20. | Anthony Bettencourt; | ) |
| D21. | Malcolm Moore, in his capacity as | ) |
| | Finance Director of the Town of | ) |
| | West Warwick; | ) |
| D22. | State of Rhode Island; | ) |
| D23. | Irving J. Owens, Fire Marshal; | ) |
| D24. | Brian Butler; | ) |
| D25. | TVL Broadcasting, Inc.; | ) |
| D26. | STC Broadcasting, Inc.; | ) |
| D27. | Barry H. Warner; | ) |
| D28. | Luna Tech, Inc.; | ) |
| D29. | High Tech Special Effects, Inc.; | ) |
| D30. | American Foam Corporation; | ) |
| D31. | Leggett & Platt, Incorporated; | ) |
| D32. | L&P Financial Services Co.; | ) |
| D33. | General Foam Corporation; | ) |
| D34. | GFC Foam, LLC; | ) |
| D35. | Foamex LP; | ) |
| D36. | Foamex International Inc.; | ) |
| D37. | FMXI, Inc.; | ) |
| D38. | PMC, Inc.; | ) |
| D39. | PMC Global, Inc.; | ) |
| D40. | JBL Incorporated f/k/a James B. Lansing | ) |
| | Sound, Incorporated d/b/a JBL Professional; | ) |
| D41. | Essex Insurance Company; | ) |
| D42. | Multi-State Inspections, Inc.; | ) |
| D43. | High Caliber Inspections, Inc.; | ) |
| D44. | Underwriters at Lloyd's, London; | ) |
| D45. | Gresham & Associates of R.I., Inc.; | ) |
| D46. | ABC Bus, Inc. d/b/a ABC Bus Leasing, Inc.; | ) |
| D47. | Superstar Services LLC; | ) |
| D48. | through D58. "John Doe" defendants (being | ) |
| | unknown defendants who manufactured, | ) |
| | distributed, sold or installed non-flame-retardant | ) |
| | foam or other defective products in use at The | ) |
| | Station nightclub on February 20, 2003, who | ) |
| | inspected the premises after installation of the | ) |
| | foam but prior to February 20, 2003, who | ) |
| | promoted, managed and produced the appearance | ) |
| | of Great White at The Station nightclub on | ) |

February 20, 2003, or who received property )
from Triton Realty-related persons or entities )
with intent to hinder, delay or default Plaintiffs) )
                                                    )
                              Defendants.           )
                                                    )

## COMPLAINT AND JURY DEMAND

### Introduction

During the first status conference in this matter on October 26, 2004, the Court expressed its desire that a single Master Complaint be prepared which might be adopted by all claimants in The Station nightclub fire actions. The following is Plaintiffs' submission in that regard.

This complaint seeks monetary damages from those individuals and entities responsible for the conditions and actions which resulted in a fire at The Station nightclub in West Warwick, Rhode Island on February 20, 2003, which claimed 100 lives and caused injury to several hundred individuals.

### PARTIES

### Plaintiffs

1.      (a) Plaintiff Albert L. Gray, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his son, Derek J. Gray, who lived in Dracut, Massachusetts. Derek Gray was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died from injuries sustained in the fire. Albert L. Gray was appointed Administrator of the plaintiff Estate by the Probate Court for the County of Bristol on April 3, 2003. (b) Plaintiff, Albert L. Gray, brings this claim as next friend of Jani L. Gray-McGill, a minor child of the decedent, Derek J. Gray.

2.      Plaintiff Joanne O'Neill, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Nicholas O'Neill, who lived in Pawtucket, Rhode Island. Nicholas O'Neill was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died from injuries sustained in the fire.

Joanne O'Neill was appointed Administratrix of the plaintiff Estate by the Probate Court of the City of Pawtucket on April 9, 2003.

3.    (a) Plaintiff Marie G. Morton, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her husband, Jason R. Morton, who lived in West Greenwich, Rhode Island. Jason Morton was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died from injuries sustained in the fire. Marie G. Morton was appointed Administratrix of the plaintiff Estate by the Probate Court of the Town of West Greenwich on April 29, 2003. (b) Plaintiff, Marie G. Morton, brings this claim as surviving spouse of the decedent, Jason R. Morton. (c) Plaintiff, Marie G. Morton, brings this claim as mother and next friend of Kaitlin Marie Morton and Ashley Marie Morton, minor children of the decedent, Jason R. Morton.

4.    Plaintiff Angel O. Amitrano, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her father, Thomas A. Barnett, who lived in West Greenwich, Rhode Island. Thomas Barnett was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Angel Amitrano was appointed Administratrix of the plaintiff Estate by the Probate Court of the Town of West Greenwich on April 15, 2003.

5.    (a) Plaintiffs Joanne L. Mitchell and William Mitchell, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of their daughter, Donna M. Mitchell, who lived in Fall River, Massachusetts. Donna Mitchell was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Joanne and William Mitchell were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the County of Bristol on October

6, 2003. (b) Plaintiff, Joanne L. Mitchell, brings claims as guardian and next friend of Brooklyn Belanger and Joslynn Belanger, minor children of the decedent, Donna M. Mitchell.

6.     (a) Plaintiff Scott J. Vieira, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his wife, Kelly Lynn Vieira, who lived in West Warwick, Rhode Island. Kelly Lynn Vieira was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Scott J. Vieira was appointed Administrator of the plaintiff Estate by the Probate Court for the Town of West Warwick on March 21, 2003. (b) Plaintiff, Scott J. Vieira, brings this claim as surviving spouse of the decedent, Kelly Lynn Vieira. (c) Plaintiff, Scott J. Vieira, brings this claim as father and next friend of Crystle Vieira, minor child of the decedent, Kelly Lynn Vieira.

7.     Plaintiff Patricia Avilez, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Eugene Avilez, who lived in Burlington, Massachusetts. Eugene Avilez was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Patricia Avilez was appointed Administratrix of the plaintiff Estate by the Probate Court for the County of Middlesex on June 24, 2003.

8.     (a) Plaintiff Jennifer L. Young, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her husband, Robert Daniel Young, who lived in Taunton, Massachusetts. Robert Young was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Jennifer L. Young was appointed Administratrix of the plaintiff Estate by the Probate Court for the County of Bristol on August 13, 2003. (b) Plaintiff, Jennifer L. Young, brings this claim as surviving spouse of the decedent, Robert Daniel Young.

9.     Plaintiff Leonard Angers, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his daughter, Stacie J. Angers, who lived in Worcester, Massachusetts. Stacie Angers was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Leonard Angers was appointed Administrator of the plaintiff Estate by the Probate Court for the County of Worcester on May 1, 2003.

10.    Plaintiff Dorothy Marion, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Thomas Frank Marion, Jr., who lived in Westport, Massachusetts. Thomas Frank Marion, Jr. was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. Dorothy Marion was appointed Administratrix of the plaintiff Estate by the Probate Court for the County of Bristol on June 6, 2003.

11.    (a) Plaintiff, Yvette Fresolo, brings this claim on behalf of the Estate and wrongful death beneficiaries of her husband, Michael Fresolo, who lived in Millbury, Massachusetts. Michael Fresolo was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire. (b) Plaintiff, Yvette Fresolo, brings this claim as surviving spouse of the decedent, Michael Fresolo. (c) Plaintiff, Yvette Fresolo, brings claims as mother and next friend of Maria Fresolo and Emily Fresolo, minor children of the decedent, Michael Fresolo.

12.    Plaintiff, Heidi Peralta Longley, brings this claim on behalf of AceyTy Longley, minor child and wrongful death beneficiary of the decedent, Ty Longley. Ty Longley was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003, and died of injuries sustained in the fire.

13.    (a) Plaintiff, Katherine Shubert, brings this claim on behalf of the Estate of her husband, Mitchell Shubert, and wrongful death beneficiaries of Mitchell Shubert, who lived in Newberry, Florida.  Mitchell Shubert was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire.  (b) Plaintiff, Katherine Shubert, brings this claim as surviving spouse of the decedent, Mitchell Shubert.  (c) Plaintiff, Katherine Shubert, brings this claim as mother and next friend of Melissa Cara Shubert, minor child of the decedent, Mitchell Shubert.  (d) Maryanne Shubert, brings this claim as daughter and beneficiary of deceased, Mitchell Shubert.  (e) Plaintiff, Laura Shubert, brings this claim as mother and next friend of Mitchell J. Schubert, Jr., minor child of the decedent, Mitchell Shubert.

14.    Plaintiff Eileen L. DiBonaventura, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Albert DiBonaventura, who lived in North Dighton, Massachusetts.  Albert DiBonaventura was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire.  Eileen DiBonaventura was appointed Administratrix of the plaintiff Estate by the Probate Court for the County of Bristol on March 31, 2003.

15.    (a)  Plaintiff, Donna DeBoard, brings this claim on behalf of the Estate and wrongful death beneficiaries of Daniel Frederickson, who lived in Groton, Connecticut.  Daniel Frederickson was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire.  (b) Plaintiff, Donna DeBoard, brings claims as guardian and next friend of Amanda, Ryan, Amber and Kenneth Frederickson, minor children of the decedent, Daniel Frederickson.

16.    Plaintiff, Judith Marie Croteau, Administratrix of the Estate of Robert J. Croteau, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Robert J. Croteau, who lived in Fall River, Massachusetts.  Ms. Croteau was appointed administratrix of

her son's estate by the Probate Court for the County of Bristol on August 12, 2004. Mr. Croteau was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire.

17.    (a) Plaintiffs, Warren L. Baker, III and John J. DeCosta, III, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Mary H. Baker, who lived in Fall River, Massachusetts. Mary Baker was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Warren Baker and John DeCosta were appointed Co-Administrators of the plaintiff estate by the Probate Court for the County of Bristol on June 17, 2004. (b) Plaintiff, John J. DeCosta, III, brings this claim as the father and legal guardian of the persons and estates of Alison M. DeCosta, John R. DeCosta, Scott A. DeCosta and Michael J. DeCosta, the minor children of the decedent Mary H. Baker. (c) Plaintiff, Warren L. Baker, III, brings this claim as surviving spouse of Mary H. Baker.

18.    Plaintiff, Dorothy E. Bonardi, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, William C. Bonardi, III, who lived in Smithfield, Rhode Island. William Bonardi was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Dorothy C. Bonardi was appointed Administratrix of the plaintiff estate by the Probate Court for the Town of Smithfield on April 21, 2003.

19.    (a) Plaintiffs, Denise M. McGregor and Nancy DePasquale, Co-Administratrixes, bring this claim on behalf of the Estate and wrongful death beneficiaries of Alfred C. Crisostomi, who lived in Warwick, Rhode Island. Alfred Crisostomi was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Denise M. McGregor and Nancy DePasquale were

- 21 -

appointed Co-Administratrixes of Plaintiff estate by the Probate Court of the City of Warwick on July 30, 2003. (b) Plaintiff, Denise M. McGregor, who lives in Cranston, Rhode Island brings this claim on behalf of her minor son, Brandon M. Crisostomi, the minor child of the decedent Alfred C. Crisostomi.

20.     (a) Plaintiff, Eileen Dunn, surviving spouse of Kevin Dunn, brings this claim on behalf of the wrongful death beneficiaries of Kevin Dunn, who lived in Attleboro, Massachusetts. Kevin Dunn was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. (b) Eileen Dunn brings this claim as wife of the decedent, Kevin Dunn. (c) Eileen Dunn brings this claim as mother and next friend of Joanna Dunn, minor child of Kevin Dunn.

21.     (a) Plaintiff Anthony J. Durante, father and next friend of Anthony M. Durante and Matthew P. Durante, brings this claim on behalf of the wrongful death beneficiaries of Lori K. Durante who lived in West Warwick, Rhode Island. Lori K. Durante was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. (b) Plaintiff, Anthony J. Durante, brings this claim as father and next friend of Matthew P. Durante, minor child of the decedent, Lori K. Durante. (c) Plaintiff, Anthony J. Durante, brings this claim as father and next friend of Anthony M. Durante, minor child of the decedent, Lori K. Durante.

22.     (a) Plaintiff, Lori Ann Gooden, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her husband, James F. Gooden, who lived in Cranston, Rhode Island. James F. Gooden was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Lori Ann Gooden was appointed Administratrix of the plaintiff estate by

the Probate Court for the City of Cranston on May 12, 2003. (b) Plaintiff, Lori Ann Gooden, brings this claim as surviving spouse of the decedent, James F. Gooden.

23.    Plaintiff, Claire H. Bruyere, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her daughter, Bonnie L. Hamelin, who lived in Warwick, Rhode Island. Bonnie L. Hamelin was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Claire H. Bruyere was appointed Administratrix of the plaintiff estate by the Probate Court of the City of Warwick on February 9, 2004.

24.    Plaintiff, John M. Hoban, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his son, Andrew R. Hoban, who lived in North Kingstown, Rhode Island. Andrew R. Hoban was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. John M. Hoban was appointed Administrator of the plaintiff estate by the Probate Court of the Town of North Kingstown on May 14, 2003.

25.    Plaintiff, Paula A. McLaughlin, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her brother, Michael B. Hoogasian, who lived in Cranston, Rhode Island. Michael B. Hoogasian was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Paula A. McLaughlin was appointed Administratrix of the plaintiff estate by the Probate Court of the City of Cranston on March 21, 2003.

26.    Plaintiff, Paula A. McLaughlin, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her sister-in-law, Sandy L. Hoogasian, who lived in Cranston, Rhode Island. Sandy L. Hoogasian was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of

injuries sustained in the fire. Paula A. McLaughlin was appointed Administratrix of the plaintiff estate by the Probate Court of the City of Cranston on March 21, 2003.

      27.    (a)  Plaintiff, Maria Latulippe, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her husband, Dale L. Latulippe, who lived in Carver, Massachusetts. Dale L. Latulippe was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Maria Latulippe was appointed Administratrix of the plaintiff estate by the Probate Court for the County of Plymouth on March 27, 2003. (b) Plaintiff, Maria Latulippe, brings this claim as mother and legal guardian of the person and estate of Dustin Tyler Latulippe, the minor child of the decedent, Dale L. Latulippe.

      28.    Plaintiffs, John A. Longiaru and Sus Longiaru, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of their son, John M. Longiaru, who lived in Johnston, Rhode Island. John M. Longiaru was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. John and Sus Longiaru were appointed Co-Administrators of the plaintiff estate by the Probate Court of the Town of Johnson on April 8, 2003.

      29.    Plaintiffs, Sarah R. Mancini and Anthony B. Mancini, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of their son, Keith A. Mancini, who lived in Cranston, Rhode Island. Keith A. Mancini was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Sarah R. Mancini and Anthony B. Mancini were appointed Co-Administrators of the plaintiff estate by the Probate Court of the City of Cranston on March 31, 2004.

30.    Plaintiff, Barbara Magness, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Steven R. Mancini, who lived in Johnston, Rhode Island.  Steven R. Mancini was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire.  Barbara Magness was appointed Administratrix of the plaintiff estate by the Probate Court of the Town of Johnston on July 3, 2003.

31.    Plaintiff, Paul A. Morin, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his son, Ryan M. Morin, who lived in Thompson, Connecticut.  Ryan M. Morin was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire.  Paul A. Morin was appointed Administrator of the plaintiff estate by the State of Connecticut, Court of Probate on February 24, 2003.

32.    (a)  Plaintiffs, Roderick Prouty, Nancy A. Lee and Paula Woodcock, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Christopher Prouty, who lived in Pawtucket, Rhode Island.  Christopher Prouty was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire.  Roderick Prouty, Nancy A. Lee and Paula Woodcock were appointed Co-Administrators of the plaintiff estate by the Probate Court of the City of Pawtucket.  (b)  Plaintiff Paula Woodcock brings this claim as mother and next friend of Makayla Woodcock, minor child of the decedent, Christopher Prouty.

33.    (a)  Plaintiff, Susan Sylvia, Administratrix brings this claim on behalf of the Estate and wrongful death beneficiaries  of Kevin Anderson, who lived in Warwick, Rhode Island.  Kevin Anderson was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the

fire. Susan Sylvia was appointed Administratrix of the plaintiff Estate by the Probate Court for the City of Warwick on October 16, 2003. (b) Plaintiff, Melinda Bloomingburgh, brings this claim as mother and next friend of Kevin Gage, minor child of the decedent, Kevin Anderson. (c) Plaintiff Sheila Palumbo brings this claim as mother and next friend of Brandon Palumbo, minor child of the decedent, Kevin Anderson.

34.    (a) Plaintiff, Ray F. Beauchaine, Sr., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Laureen Beauchaine, who lived in West Warwick, Rhode Island. Laureen Beauchaine was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Ray F. Beauchaine, Sr. was appointed Administrator of the plaintiff Estate by the Probate Court for the Town of West Warwick on March 24, 2003. (b) Plaintiff, Ray Beauchaine, Jr., brings this claim as surviving spouse of the decedent, Laureen Beauchaine. (c) Plaintiff, Ray Beauchaine, Jr., brings this claim as father and next friend of Ray F. Beauchaine, III, Christopher R. Beauchaine and Ashley Beauchaine, minor children of the decedent, Laureen Beauchaine.

35.    (a) Plaintiffs, Sally Blom and Rolland Blom, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Steven Blom, who lived in Cranston, Rhode Island. Steven Blom was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Sally Blom and Rolland Blom were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the City of Cranston on August 11, 2003. (b) Plaintiff, Sharon Colpitts, brings this claim as mother and next friend of Steven Blom, Jr., a minor child of the decedent, Steven Blom.

36.     (a) Plaintiff, Catherine Cabral, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Richard Cabral, Jr., who lived in Attleboro, Massachusetts.  Richard Cabral, Jr., was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire.  Catherine Cabral was appointed Administratrix of the plaintiff Estate by the Probate Court for the Bristol Division.  (b) Plaintiff, Catherine Cabral, brings this claim as surviving spouse of the decedent, Richard Cabral, Jr. (c) Plaintiff, Catherine Cabral, brings this claim as mother and next friend of Christine Cabral and Richard Cabral, III, minor children of the decedent, Richard Cabral, Jr.

37.     Plaintiff, William H. Cartwright, Jr., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of William W. Cartwright, who lived in Pawtucket, Rhode Island.  William W. Cartwright was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire.  William H. Cartwright, Jr. was appointed Administrator of the plaintiff Estate by the Probate Court for the City of Pawtucket on April 11, 2003.

38.     Plaintiffs, Katherine Cordier and Ronald J. Cordier, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Michael Cordier, who lived in Westerly, Rhode Island.  Michael Cordier was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire.  Katherine Cordier and Ronald J. Cordier were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the Town of Westerly on April 23, 2003.

39.     Plaintiff, Mark D'Andrea, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Lisa D'Andrea, who lived in Barrington, Rhode Island.  Lisa D'Andrea was lawfully on the premises of The Station nightclub on Cowesett Avenue, West

Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Mark D'Andrea was appointed Administrator of the plaintiff Estate by the Probate Court for the Town of Barrington on April 12, 2004.

40.      (a) Plaintiff, Peter M. DiRienzo, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Christina DiRienzo, who lived in Plymouth, Massachusetts. Christina DiRienzo was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Peter M. DiRienzo was appointed Administrator of the plaintiff Estate by the Probate Court for the Plymouth Division on June 30, 2003. (b) Plaintiff, Peter M. DiRienzo, brings this claim as surviving spouse of the decedent, Christina DiRienzo. (c) Plaintiff, Peter M. DiRienzo, brings this claim as father and next friend of Beau DiRienzo, minor child of the decedent, Christina DiRienzo. (d) Peter M. DiRienzo, Jr., a minor at the time of his mother's death, brings this claim as son of the decedent, Christina DiRienzo.

41.      (a) Plaintiff, Lawrence E. Fick, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Charline E. Fick, who lived in Central Falls, Rhode Island. Charline E. Fick was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Lawrence E. Fick was appointed Administrator of the plaintiff Estate by the Probate Court for the City of Central Falls on August 8, 2003. (b) Plaintiff, Lawrence E. Fick, brings this claim as father and next friend of Samantha Fick and William Fick, minor children of the decedent, Charline E. Fick.

42.      Plaintiff, Timothy J. Fleming, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Thomas J. Fleming, who lived in Worcester, Massachusetts. Thomas J. Fleming was lawfully on the premises of The Station nightclub on

Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Timothy J. Fleming was appointed Administrator of the plaintiff Estate by the Probate Court for the Worcester Division on June 27, 2003.

43.     (a) Plaintiff, Dean DePietro, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Rachel K. Florio-DePietro, who lived in Coventry, Rhode Island. Rachel K. Florio-DePietro was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Dean DePietro was appointed Administrator of the plaintiff Estate by the Probate Court for the Town of Coventry on June 3, 2003. (b) Plaintiff, Dean DePietro, brings this claim as father and next friend of Adrian DePietro, a minor child of the decedent, Rachel K. Florio-DePietro.

44.     Plaintiff, James C. Gahan, III, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of James C. Gahan, IV, who lived in Falmouth, Massachusetts. James C. Gahan, IV was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. James C. Gahan, III, was appointed Administrator of the plaintiff Estate by the Probate Court for the Barnstable Division on March 6, 2003.

45.     (a) Plaintiff, Sandra L. Greene, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Scott C. Greene, who lived in Warwick, Rhode Island. Scott C. Greene was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Sandra L. Greene was appointed Administratrix of the plaintiff Estate by the Probate Court for the City of Warwick on May 12, 2003. (b) Plaintiff, Sandra L. Greene, brings this claim as surviving spouse of the decedent, Scott C. Greene.

46.   (a) Plaintiff, Bruce G. Pollock, Esq., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Scott S. Griffith, who lived in West Warwick, Rhode Island. Scott S. Griffith was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Bruce G. Pollock, Esq. was appointed Administrator of the plaintiff Estate by the Probate Court for the Town of West Warwick on February 4, 2004. (b) Plaintiff, Nancene Cohen, brings this claim as guardian of the Estate and next friend of Kacie L. Griffith, a minor child of the decedent, Scott S. Griffith.

47.   Plaintiff, Bonnie A. Hoisington, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Abbie L. Hoisington, who lived in Cranston, Rhode Island. Abbie L. Hoisington was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Bonnie A. Hoisington was appointed Administratrix of the plaintiff Estate by the Probate Court for the City of Cranston on April 10, 2003.

48.   (a) Plaintiff, Carlton L. Howorth, Jr., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Carlton L. Howorth, III, who lived in Norton, Massachusetts. Carlton L. Howorth, III was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Carlton L. Howorth, Jr. was appointed Administrator of the plaintiff Estate by the Probate Court for the Bristol Division on March 21, 2003. (b) Plaintiff Karen E. Howorth brings this claim as surviving spouse of Carlton L. Howorth, III. (c) Plaintiff, Karen E. Howorth, brings this claim as mother and next friend of Elizabeth Howorth, a minor child of the decedent, Carlton L. Howorth, III.

49.     Plaintiff, George Phelan, Esq., Special Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Lisa Kelly, who lived in Swansea, Massachusetts. Lisa Kelly was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. George Phelan, Esq. was appointed Special Administrator of the plaintiff Estate by the Probate Court for the County of Bristol on February 24, 2004.

50.     (a) Plaintiff, Evelyn L. King, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Tracy F. King, who lived in Warwick, Rhode Island. Tracy F. King was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Evelyn L. King was appointed Administratrix of the plaintiff Estate by the Probate Court for the City of Warwick on June 16, 2003. (b) Plaintiff, Evelyn L. King, brings this claim as surviving spouse of the decedent, Tracy F. King. (c) Plaintiff, Evelyn L. King, brings this claim as mother and next friend of Joshua King and Jacob King, minor children of the decedent, Tracy F. King. (d) Plaintiff Rosilyn Guy brings this claim as mother and next friend of Jordan King, minor child of the decedent, Tracy F. King.

51.     Plaintiffs, Barbara A. Kulz and George A. Kulz, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Michael J. Kulz, who lived in Warwick, Rhode Island. Michael J. Kulz was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Barbara A. Kulz and George A. Kulz were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the City of Warwick on June 12, 2003.

52.     (a) Plaintiff, Tammy Lapierre, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Keith R. Lapierre, who lived in Worcester,

- 31 -

Massachusetts. Keith R. Lapierre was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Tammy Lapierre was appointed Administratrix of the plaintiff Estate by the Probate Court for the Worcester Division on June 17, 2003. (b) Plaintiff, Tammy Lapierre, brings this claim as surviving spouse of the decedent, Keith R. Lapierre. (c) Plaintiff, Tammy Lapierre, brings this claim as mother and next friend of Ryan S. Lapierre and Sarah R. Lapierre, minor children of the decedent, Keith R. Lapierre.

53. Plaintiff, Judith Carver, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Kristen L. McQuarrie, who lived in Ledyard, Connecticut. Kristen L. McQuarrie was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Judith Carver was appointed Administratrix of the plaintiff Estate by the Probate Court for the District of Ledyard on September 16, 2003.

54. Plaintiffs, Richard Moreau and Jean Moreau, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Leigh Ann Moreau, who lived in Providence, Rhode Island. Leigh Ann. Moreau was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Richard Moreau and Jean Moreau were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the City of Providence on April 30, 2003.

55. Plaintiff, Michael Reno, Esq., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Beth Mosczynski, who lived in Millbury, Massachusetts. Beth Mosczynski was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries

sustained in the fire. Michael Reno was appointed Administrator of the plaintiff Estate by the Probate Court for the Worcester Division

56.    (a)  Plaintiff, Richard H. Rakoski, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Theresa L. Rakoski, who lived in Taunton, Massachusetts. Theresa L. Rakoski was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Richard H. Rakoski was appointed Administrator of the plaintiff Estate by the Probate Court for the County of Bristol on June 26, 2003. (b) Plaintiff, Richard H. Rakoski, brings this claim as surviving spouse of the decedent, Theresa L. Rakoski.

57.    Plaintiff, Judy O'Brien, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Robert L. Reisner, III, who lived in Coventry, Rhode Island. Robert L. Reisner, III was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Judy O'Brien was appointed Administratrix of the plaintiff Estate by the Probate Court for the Town of Coventry on May 7, 2003.

58.    Plaintiff, John J. Shaw, Temporary Executor, brings this claim on behalf of the Estate and wrongful death beneficiaries of Rebecca Shaw, who lived in Sudbury, Massachusetts. Rebecca Shaw was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. John J. Shaw was appointed Temporary Executor of the plaintiff Estate by the Probate Court for the Middlesex Division

59.    Plaintiff, Veda Kerr, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Victor L. Stark, who lived in Mashpee, Massachusetts. Victor L. Stark was lawfully on the premises of The Station nightclub on Cowesett Avenue, West

Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Veda Kerr was appointed Administratrix of the plaintiff Estate by the Probate Court for the Barnstable Division on June 11, 2003.

60.    (a) Plaintiffs, Zachary S. Suffoletto and Diana L. Shaughnessy, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Benjamin J. Suffoletto, Jr., who lived in Glocester, Rhode Island. Benjamin J. Suffoletto, Jr. was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Zachary S. Suffoletto and Diana L. Shaughnessy were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the Town of Glocester on March 17, 2003. (b) Plaintiffs, Zachary S. Suffoletto and Diana L. Shaughnessy, Co-Adm. of the Estate of Linda D. Suffoletto, bring this claim on behalf of Linda D. Suffoletto as surviving spouse of the decedent, Benjamin J. Suffoletto, Jr.

61.    Plaintiffs, Zachary S. Suffoletto and Diana L. Shaughnessy, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Linda D. Suffoletto, who lived in Glocester, Rhode Island. Linda D. Suffoletto was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries sustained in the fire. Zachary S. Suffoletto and Diana L. Shaughnessy were appointed Co-Administrators of the plaintiff Estate by the Probate Court for the Town of Glocester on March 17, 2003.

62.    Plaintiff, Honorina Washburn, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Kevin R. Washburn, who lived in Franklin, Massachusetts. Kevin R. Washburn was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of injuries

sustained in the fire. Honorina Washburn was appointed Administratrix of the plaintiff Estate by
the Probate Court for the Norfolk Division on March 28, 2003.

   63. Plaintiff, Cheryl Haines, Administratrix, brings this claim on behalf of the Estate
and wrongful death beneficiaries of Everett T. Woodmansee, III, who lived in Charlestown,
Rhode Island. Everett T. Woodmansee, III was lawfully on the premises of The Station
nightclub on Cowesett Avenue, West Warwick, Rhode Island, on February 20, 2003 and died of
injuries sustained in the fire. Cheryl Haines was appointed Administratrix of the plaintiff Estate
by the Probate Court for the Town of Charlestown on May 6, 2003.

   64. (a) Plaintiff Melinda J. Darby, Administratrix, brings this claim on behalf of the
Estate and wrongful death beneficiaries of her husband, Matthew P. Darby, who lived in
Coventry, Rhode Island. Matthew P. Darby was lawfully on the premises of The Station
nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of
injuries sustained in the fire. Melinda J. Darby was appointed Administratrix of the Estate of
Matthew P. Darby by the Probate Court for the Town of Coventry, Rhode Island on July 24,
2003. (b) Plaintiff, Melinda J. Darby, brings this claim as surviving spouse of the decedent,
Matthew P. Darby. (c) Plaintiff, Melinda J. Darby, brings this claim as mother and next friend of
Jessica L. Darby and Sarah M. Darby, minor children of the decedent, Matthew P. Darby.

   65. (a) Plaintiff Susan W. Romanoff, Executrix, brings this claim on behalf of the
Estate and wrongful death beneficiaries of her daughter, Tracey L. Romanoff, who lived in
Coventry, Rhode Island. Tracey L. Romanoff was lawfully on the premises of The Station
nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of
injuries sustained in the fire. Susan W. Romanoff was appointed Executrix of the Estate of
Tracey L. Romanoff by the Probate Court for the Town of Coventry, Rhode Island on August 28,
2003. (b) Plaintiff, Jordan Blasbalg, brings this claim on behalf of his two minor children,

Joshua M. Blasbalg, and Lindsey N. Blasbalg, the minor children of the decedent Tracey L. Romanoff.

    66.    (a) Plaintiff, Mark P. Hyer, Sr., brings this claim on behalf of the Estate and wrongful death beneficiaries of his brother, Eric J. Hyer, who lived in Scituate, Rhode Island. Eric J. Hyer was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Mark P. Hyer, Sr., was appointed Administrator of the Estate of Eric J. Hyer by the Probate Court for the Town of Scituate, Rhode Island on May 14, 2003.

    67.    Plaintiff, Annmarie Swidwa, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her daughter, Bridget M. Sanetti, who lived in Coventry, Rhode Island. Bridget M. Sanetti was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Annmarie Swidwa was appointed Administratrix of the Estate of Bridget M. Sanetti by the Probate Court for the Town of Coventry, Rhode Island on October 7, 2003.

    68.    (a) Plaintiff Stephen A. Gillett, Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of Laura L. Gillett, who lived in Pembroke, Massachusetts. Laura L. Gillett was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Stephen A. Gillett was appointed Administrator of the Plaintiff Estate by the Probate Court for the County of Plymouth, Massachusetts on April 2, 2003. (b) Plaintiff, Stephen A. Gillett brings this claim as father, next friend and permanent legal guardian of Jake T. Gillett and Jared J. Gillett, minor children of the decedent, Laura L. Gillett.

69.    Plaintiff Suzanne Fox, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Jeffrey Wood Martin. Jeffrey Wood Martin lived in Melrose, Massachusetts. Jeffrey Wood Martin was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and died of injuries sustained in the fire.

70.    Plaintiff Ellen-Marie Stowers, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of Jennifer L. Stowers, who lived in South Boston, Massachusetts. Jennifer L. Stowers was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, RI, on February 20, 2003 and sustained injuries in the fire which set in motion a course of events which led to her death.

71.    Plaintiff, Sharon Eaton, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her son, Edward B. Corbett, III. Edward B. Corbett, III was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Sharon Eaton was appointed Administratrix of the Estate by the West Warwick Probate Court.

72.    (a) Plaintiff, Patricia Belanger, Executrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her daughter, Dina A. DeMaio, who lived in West Warwick. Dina A. DeMaio was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Patricia Belanger was appointed Executrix of the Estate by the West Warwick Probate Court. (b) Plaintiff, Steven Beardsworth, brings this claim on behalf of Justin Perry DeMaio, minor child of the decedent Dina A. DeMaio, having been duly appointed temporary guardian by the West Warwick Probate Court on June 16, 2003.

73.    Plaintiff, Robert J. Johnson, Sr., Administrator, brings this claim on behalf of the Estate and wrongful death beneficiaries of his son, Derek B. Johnson. Derek Johnson was

lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Robert J. Johnson, Sr. was appointed Administrator of the estate on March 31, 2003 by the West Warwick Probate Court.

74.    Plaintiff, Jacqueline Jacavone, Administratrix, brings this claim on behalf of the Estate and wrongful death beneficiaries of her daughter, Andrea L. Jacavone-Mancini. Andrea L. Jacavone-Mancini was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Jacqueline Jacavone was appointed Administratrix of the estate on June 13, 2003 by the Johnston Probate Court.

75.    Plaintiffs, Leo Smith and Doris Smith, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of their son, Dennis J. Smith. Dennis J. Smith was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Leo and Doris Smith were appointed Co-Administrators of the estate on May 15, 2003 by the Pawtucket Probate Court.

76.    (a) Plaintiff, Korina Arruda, Co-Administrator of the Estate of Christopher G. Arruda, brings this claim on behalf of the Estate and wrongful death beneficiaries of Christopher G. Arruda, who lived in Coventry, Rhode Island. Christopher G. Arruda was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Korina Arruda and Steven A. Minicucci were appointed Co-Administrators of the Estate of Christopher G. Arruda by the Coventry Probate Court on April 24, 2003. (b) Korina Arruda brings this claim as surviving spouse of the decedent, Christopher G. Arruda.

77.    Plaintiffs, Gerard W. Fontaine and Rosanna C. Fontaine, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Mark A. Fontaine who lived in Johnston, Rhode Island. Mark A. Fontaine was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Gerard W.

Fontaine and Rosanna C. Fontaine were appointed Co-Administrators of the Plaintiff estate by the Johnston Probate Court on August 26, 2003.

78.     Plaintiffs, John J. Libera and Joanne T. Libera, Co-Administrators, bring this claim on behalf of the Estate and wrongful death beneficiaries of Stephen Matthew Libera who lived in North Kingstown, Rhode Island. Stephen Matthew Libera was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. John J. Libera and Joanne T. Libera were appointed Co-Administrators of the Estate of Stephen Matthew Libera by the North Kingstown Probate Court on April 2, 2004.

79.     Plaintiffs, Edward C. Ervanian and Pauline B. Ervanian, bring this claim on behalf of the Estate and wrongful death beneficiaries of Edward E. Ervanian, who lived in Cranston, Rhode Island. Edward E. Ervanian was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Edward C. Ervanian was appointed Administrator of the Plaintiff's estate by the Cranston Probate Court on April 10, 2003.

80.     Plaintiff Kathleen Sullivan is an individual who at times material hereto lived in Swansea, Massachusetts. Ms. Sullivan was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

81.     (a) Plaintiff Scott J. Vieira brings this claim as an individual who at all times material hereto lived in West Warwick, Rhode Island. Scott J. Vieira was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Scott J. Vieira brings this claim as father and next friend of Crystle Vieira, his minor child.

82.    Plaintiff Susan H. Chamberlin, is an individual who at times material hereto lived
in Warwick, Rhode Island. Ms. Chamberlin was lawfully on the premises of The Station
nightclub on February 20, 2003 where she was injured in the fire.

83.    (a) Plaintiff, John F. Van Deusen, III, is an individual who at times material
hereto lived in Carver, Massachusetts. Mr. Van Deusen was lawfully on the premises of The
Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, John F.
Van Deusen III, brings this claim as father and next friend of his minor children, John F. Van
Deusen IV and Dylan Van Deusen.

84.    Plaintiff, Robert J. Luxton, is an individual who at times material hereto lived in
North Easton, Massachusetts. Mr. Luxton was lawfully on the premises of The Station nightclub
on February 20, 2003 where he was injured in the fire.

85.    (a) Plaintiff, Elizabeth Arruda, is an individual who at times material hereto
lived in Westport, Massachusetts. Ms. Arruda was lawfully on the premises of The Station
nightclub on February 20, 2003 where she was injured in the fire.  (b) Plaintiff, Elizabeth
Arruda, brings this claim as mother and next friend of her minor child, Zoey Retamoza.

86.    Plaintiff, Robert W. Rager, is an individual who at times material hereto lived in
Kent, Ohio. Mr. Rager was lawfully on the premises of The Station nightclub on February 20,
2003 where he was injured in the fire.

87.    (a) Plaintiff, Joseph K. Kinan, is an individual who at times material hereto lived
in Canton, Massachusetts. Mr. Kinan was lawfully on the premises of The Station nightclub on
February 20, 2003 where he was injured in the fire. (b) Plaintiffs, Joseph K. Kinan and Maureen
Sullivan, bring this claim as parents and next friends of their minor child, Kaitlin E. Sullivan.

88.    (a) Plaintiff, John F. Fairbairn, is an individual who at times material hereto lived
in Brockton, Massachusetts. Mr. Fairbairn was lawfully on the premises of The Station

nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, John F. Fairbairn, brings claims as father and next friend of his minor children, John Fairbairn and Ariana Fairbairn.

89.     (a) Plaintiff, Andrea F. Fairbairn, is an individual who at times material hereto lived in Brockton, Massachusetts. Ms. Fairbairn was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Andrea F. Fairbairn, brings claims as mother and next friend of her minor children, John Fairbairn, Ariana Fairbairn, Amanda Melendez Durfee and Christopher Melendez Durfee.

90.     (a) Plaintiff, Jose Roberto Demos, is an individual who at times material hereto lived in Lowell, Massachusetts. Mr. Demos was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Jose Roberto Demos, brings claims as father and next friend of his minor children, Vanessa Santos Demos and Samuel Santos Demos.

91.     (a) Plaintiff, Roberta O'Melia, is an individual who at times material hereto lived in Pawtucket, Rhode Island. Ms. O'Melia was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Roberta O'Melia, brings claims as mother and next friend of her minor children, Brendan O'Melia and Christian O'Melia.

92.     (a) Plaintiff, Fredrick P. Vallante, Jr., is an individual who at times material hereto lived in Providence, Rhode Island. Mr. Vallante was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Fredrick P. Vallante, Jr., brings claims as father and next friend of his minor children, Caitlyn Vallante and Courtney Vallante.

93.     (a) Plaintiff, Kerrie-Lynn Beers, is an individual who at times material hereto lived in West Warwick, Rhode Island. Ms. Beers was lawfully on the premises of The Station

nightclub on February 20, 2003 where she was injured in the fire. (b)  Plaintiff, Kerrie-Lynn Beers, brings this claim as mother and next friend of her minor child, Jeremy T. Beers.

94.     Plaintiff, Francis J. Canillas, is an individual who at times material hereto lived in Everett, Massachusetts.  Mr. Canillas was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

95.     Plaintiff, David Ciccone, is an individual who at times material hereto lived in Warwick, Rhode Island.  Mr. Ciccone was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

96.     Plaintiff, Christopher J. Travis, is an individual who at times material hereto lived in Lakeville, Massachusetts.  Mr. Travis was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

97.     (a)  Plaintiff, Jon R. Schmidt, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Mr. Schmidt was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.   (b)  Plaintiff, Jon R. Schmidt, brings claims as father and next friend of his minor children, Ryan Schmidt and Evan Schmidt.

98.     (a)  Plaintiff, David B. MacDonald, is an individual who at times material hereto lived in Johnston, Rhode Island.  Mr. MacDonald was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.  (b)  Plaintiff, David B. MacDonald, brings this claim as father and next friend of his minor child, David B. MacDonald, Jr.

99.     Plaintiff, Paul du Fossé, is an individual who at times material hereto lived in Kennebunkport, Maine.  Mr. du Fossé was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

100. (a) Plaintiff, John R. Arpin, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Arpin was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, John R. Arpin, brings claims as father and next friend of his minor children, Ryan Arpin and Matthew Arpin.

101. Plaintiff, Paula Gould, is an individual who at times material hereto lived in West Warwick, Rhode Island. Ms. Gould was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

102. (a) Plaintiff, Kevin J. Beese, Sr. is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Beese was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Kevin J. Beese, Sr. brings this claim as father and next friend of his minor children, Taylor Beese, Brittany Beese and Kevin Beese, Jr.

103. Plaintiff, Shaun O'Donnell, is an individual who at times material hereto lived in Newport, Rhode Island. Mr. O'Donnell was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

104. Plaintiff, Brian Loftus, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Loftus was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

105. (a) Plaintiff, Christopher Costa, is an individual who at times material hereto lived in Hope Valley, Rhode Island. Mr. Costa was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Christopher Costa, brings this claim as father and next friend of his minor child, Leah Elizabeth Costa Turck.

106. (a) Plaintiff, Georgette Giroux-Brown, is an individual who at times material hereto lived in Cranston, Rhode Island. Ms. Giroux-Brown was lawfully on the premises of The

Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Georgette Giroux-Brown, brings this claim as mother and next friend of her minor child, Ben Giroux-Brown.

107.    Plaintiff, Stephanie Zannella, is an individual who at times material hereto lived in North Providence, Rhode Island. Ms. Zannella was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

108.    (a) Plaintiff, Roberta J. Prete, is an individual who at times material hereto lived in Cranston, Rhode Island. Ms. Prete was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Roberta J. Prete, brings this claim as mother and next friend of her minor child, Michael Falco.

109.    (a) Plaintiff, Catherine Randall, is an individual who at times material hereto lived in Lincoln, Rhode Island. Ms. Randall was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Catherine Randall, brings claims as mother and next friend of her minor children, Douglas Randall and Meagan Randall.

110.    (a) Plaintiff, Edward Pezzelli, Jr., is an individual who at times material hereto lived in Pascoag, Rhode Island. Mr. Pezzelli was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Edward Pezzelli, Jr., brings claims as father and next friend of his minor children, Edward Pezzelli III and Hannah Pezzelli.

111.    (a) Plaintiff, Paul Pezzelli, is an individual who at times material hereto lived in Lincoln, Rhode Island. Mr. Pezzelli was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Paul Pezzelli, brings claims as father and next friend of his minor children, Megan Pezzelli and Kyle Pezzelli.

112.    (a) Plaintiff, Joseph P. Barber, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Barber was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Joseph P. Barber, brings claims as father and next friend of his minor children, Max Leili and Brandon Tully.

113.    (a) Plaintiff, Irina M. Gershelis, is an individual who at times material hereto lived in West Warwick, Rhode Island. Ms. Gershelis was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Irina M. Gershelis, brings claims as mother and next friend of her minor children, Brentin St. Jean and Colner St. Jean.

114.    (a) Plaintiff, Rodney J. Gaumitz, is an individual who at times material hereto lived in Warwick, Rhode Island. Mr. Gaumitz was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Rodney J. Gaumitz, brings claims as father and next friend of his minor children, Tyler Gaumitz and Collin Gaumitz.

115.    Plaintiff, Donna Reis, is an individual who at times material hereto lived in North Providence, Rhode Island. Ms. Reis was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

116.    Plaintiff, Ronald S. Schoepfer, is an individual who at times material hereto lived in Pawtucket, Rhode Island. Mr. Schoepfer was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

117.    Plaintiff, Richard J. Grace, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Grace was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

118.    (a) Plaintiff, Tawnya Kelly, is an individual who at times material hereto lived in Cranston, Rhode Island. Ms. Kelly was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Tawnya Kelly, brings claims as mother and next friend of her minor children, Andrew A. Jones and Aryanna F. Greene.

119.    (a) Plaintiff, Gregory Scott Dufour, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Dufour was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Gregory Scott Dufour, brings this claim as father and next friend of his minor child, Ashley A. Dufour.

120.    Plaintiff, John D. Wigginton, is an individual who at times material hereto lived in Uxbridge, Massachusetts. Mr. Wigginton was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

121.    Plaintiff, Scott Dunbar, is an individual who at times material hereto lived in Woburn, Massachusetts. Mr. Dunbar was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

122.    Plaintiff, Joseph Lusardi, is an individual who at times material hereto lived in Easton, Massachusetts. Mr. Lusardi was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

123.    Plaintiff, John Kudryk, is an individual who at times material hereto lived in Easton, Massachusetts. Mr. Kudryk was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

124.    (a) Plaintiff, Brandon Fravala, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Fravala was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Brandon Fravala, brings this claim as father and next friend of his minor child, Nicholas James Douglas Fravala.

125.   Plaintiff, David Fravala, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Fravala was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

126.   Plaintiff, Robin Petrarca, is an individual who at times material hereto lived in Warwick, Rhode Island. Ms. Petrarca was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

127.   (a) Plaintiff, Michael Stefani, is an individual who at times material hereto lived in North Kingstown, Rhode Island. Mr. Stefani was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Michael Stefani, brings this claim as father and next friend of his minor child, Jade Bartels.

128.   (a) Plaintiff, Hollie A. Pomfret, is an individual who at times material hereto lived in Greene, Rhode Island. Ms. Pomfret was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff Justin Pomfret brings this claim as husband of Hollie A. Pomfret. (c) Plaintiffs Justin Pomfret and Hollie A Pomfret bring claims as parents and next friends of Alexis Pomfret and Skylar Pomfret, minor children of Hollie A. Pomfret.

129.   (a) Plaintiff, Justin Pomfret, is an individual who at times material hereto lived in Greene, Rhode Island. Mr. Pomfret was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Hollie A. Pomfret brings this claim as wife of Justin Pomfret. (c) Plaintiffs, Justin Pomfret and his wife, Hollie A. Pomfret, bring claims as parents and next friends of Alexis Pomfret and Skylar Pomfret, minor children of Justin Pomfret.

130.    Plaintiff, Al Prudhomme, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Prudhomme was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

131.    Plaintiff, Charlene Prudhomme, is an individual who at times material hereto lived in Coventry, Rhode Island. Ms. Prudhomme was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

132.    Plaintiff, Robert Harrington, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Harrington was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

133.    Plaintiff, Robert A. Barlow, is an individual who at times material hereto lived in Fall River, Massachusetts. Mr. Barlow was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

134.    Plaintiff, Kristin A. Brown, is an individual who at times material hereto lived in West Kingstown, Rhode Island. Ms. Brown was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

135.    (a) Plaintiff, Patricia L. Clarke, is an individual who at times material hereto lived in Portsmouth, Rhode Island. Ms. Clarke was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Patricia L. Clarke, brings this claim as mother and next friend of Kira Lynn Clarke, her minor daughter.

136.    (a) Plaintiff, Gennaro Companatico, is an individual who at times material hereto lived in Warwick, Rhode Island. Mr. Companatico was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Gennaro Companatico, brings this claim as father and next friend of Samantha Companatico and Genna Companatico, his minor children.

137.   (a) Plaintiff, Richard Cook, is an individual who at times material hereto lived in Westerly, Rhode Island. Mr. Cook was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Sarah Amy Cook, brings this claim as wife of Richard Cook. (c) Plaintiffs Richard Cook and Sarah Amy Cook bring this claim as parents and next friends of their minor child, Cooper R. Cook.

138.   (a) Plaintiff, Richard DelSanto, is an individual who at times material hereto lived in Warwick, Rhode Island. Mr. DelSanto was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Richard Delsanto brings this claim as parent and next friend of his minor children, Jarred Ferrara and Evan Parr.

139.   Plaintiff, Joseph A. DiBona, Jr., is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. DiBona was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

140.   (a) Plaintiff, Linda M. Fisher, is an individual who at times material hereto lived in Cranston, Rhode Island. Mrs. Fisher was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Linda M. Fisher, and her husband, Kevin J. Fisher, bring this claim as parents and next friends of Amber Fisher, their daughter, a minor. (c) Plaintiff, Kevin J. Fisher, brings this claim as husband of Linda M. Fisher.

141.   Plaintiff, Joseph M. Flynn, is an individual who at times material hereto lived in Webster, Massachusetts. Mr. Flynn was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

142.   (a) Plaintiff, Lisa C. Hale, is an individual who at times material hereto lived in Hope Valley, Rhode Island. Ms. Hale was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Lisa C. Hale, brings a claim as mother and next friend of her minor child, Kylen Hale.

143.    (a)  Plaintiff, Laurie A. Hussey, in an individual who at times material hereto lived in North Kingstown, Rhode Island.  Mrs. Hussey was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.  (b)  Plaintiffs, Laurie A. Hussey and John Edward Hussey, Jr., bring this claim as parents and next friends of their minor children, Hallie Ann Hussey and Rayanna Leigh Hussey. (c)  Plaintiff, John Edward Hussey, Jr., brings this claim as husband of Laurie A. Hussey.

144.    Plaintiff, Marc A. Lucier, is an individual who at times material hereto lived in Danielson, Connecticut.  Mr. Lucier was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

145.    (a)  Plaintiff, Matthew Mallette, is an individual who at times material hereto lived in Webster, Massachusetts.  Mr. Mallette was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.  (b)  Plaintiffs, Matthew Mallette and Jessica Mallette, bring this claim as parents and next friends of their minor children, Joshua Mallette and Cameron Mallette.  (c)  Plaintiff, Jessica Mallette, brings this claim as  wife of Matthew Mallette.

146.    Plaintiff, John Mangan, Jr., is an individual who at times material hereto lived in Cranston, Rhode Island.  Mr. Mangan was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

147.    Plaintiff, Frances P. McMurray, is an individual who at times material hereto lived in Cranston, Rhode Island.  Ms. McMurray was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

148.    Plaintiff, Christopher J. Nowicki, is an individual who at times material hereto lived in East Greenwich, Rhode Island.  Mr. Nowicki was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

149.    Plaintiff, Paul M. Pelletier, is an individual who at times material hereto lived in Lincoln, Rhode Island.  Mr. Pelletier was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

150.    Plaintiff, Michael Perreault, is an individual who at times material hereto lived in Coventry, Rhode Island.  Mr. Perreault was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

151.    Plaintiff, Christopher A. Peters, is an individual who at times material hereto lived in Peabody, Massachusetts.  Mr. Peters was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

152.    Plaintiff, Jonathan Petrin, is an individual who at times material hereto lived in Albion, Rhode Island.  Mr. Petrin was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

153.    Plaintiff, Jason Piscopio, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Mr. Piscopio was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

154.    (a)  Plaintiff, John A. Rezendes, is an individual who at times material hereto lived in Jamestown, Rhode Island.  Mr. Rezendes was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.  (b)  Plaintiff, John A. Rezendes, brings this claim as father and next friend of Leah M. Rezendes and Cameron M. Rezendes, his minor children

155.    (a)  Plaintiff, Catherine C. Sagesta, is an individual who at times material hereto lived in Taunton, Massachusetts.  Ms. Sagesta was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b)  Plaintiff, Catherine C.

Sagesta, brings this claim as mother and next friend of Christin Cameron and Samantha Cameron, her minor children.

156.    Plaintiff, George Solitro, is an individual who at times material hereto lived in West Warwick, Rhode Island. Mr. Solitro was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

157.    (a) Plaintiff, Gary Stein, is an individual who at times material hereto lived in Norton, Massachusetts. Mr. Stein was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Gary Stein, brings this claim as father and next friend of Victoria Stein and Joshua Stein, his minor children.

158.    Plaintiff, Melissa A. Stephenson, is an individual who at times material hereto lived in Coventry, Rhode Island. Ms. Stephenson was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

159.    (a) Plaintiff, Ray F. Beauchaine, Jr., is an individual who at all times material hereto lived in West Warwick, Rhode Island. Ray F. Beauchaine, Jr. was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Ray Beauchaine, Jr., brings claims as father and next friend of his minor children Ray F. Beauchaine, III, Christopher R. Beauchaine and Ashley Beauchaine.

160.    Plaintiff, Julie Belson, is an individual who at all times material hereto lived in Danvers, Massachusetts. Julie Belson was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

161.    Plaintiff, Kevin Blom, is an individual who at all times material hereto lived in Cranston, Rhode Island. Kevin Blom was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

162.    (a) Plaintiff, Milisa Bump, is an individual who at all times material hereto lived in Worcester, Massachusetts. Milisa Bump was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Milisa Bump, brings claims as mother and next friend of her minor children Dereck Bump and Sandra Dunn.

163.    Plaintiff, Jennifer Choquette, is an individual who at all times material hereto lived in South Dartmouth, Massachusetts. Jennifer Choquette was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

164.    Plaintiff, Nicole Conant, is an individual who at all times material hereto lived in Medford, Massachusetts. Nicole Conant was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

165.    Plaintiff, Stephanie Conant, is an individual who at all times material hereto lived in Medford, Massachusetts. Stephanie Conant was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

166.    Plaintiff, Arthur J. Conway, III, is an individual who at all times material hereto lived in Plymouth, Massachusetts. Arthur J. Conway, III, was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

167.    Plaintiff, Robert Cushman, is an individual who at all times material hereto lived in Warwick, Rhode Island. Robert Cushman was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

168.    (a) Plaintiff, Shauna Dell, is an individual who at all times material hereto lived in Warwick, Rhode Island. Shauna Dell was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Claude Richard, brings this claim as husband of Shauna Dell.

169.    (a) Plaintiff, Claude Richard, is an individual who at all times material hereto lived in Warwick, Rhode Island. Claude Richard was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Shauna Dell, brings this claim as wife of Claude Richard.

170.    Plaintiff, Richard Dufour, Jr., is an individual who at all times material hereto lived in Coventry, Rhode Island. Richard Dufour, Jr. was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

171.    (a) Plaintiff, James Dufresne, is an individual who at all times material hereto lived in Oxford, Massachusetts. James Dufresne was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, James Dufresne, brings claims as father and next friend of his minor children James J. Dufresne, Jr. and Bryan Dufresne.

172.    Plaintiff, John Gibbs, is an individual who at all times material hereto lived in Attleboro, Massachusetts. John Gibbs was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

173.    Plaintiff, Gregory Gray, is an individual who at all times material hereto lived in Pawcatuck, Connecticut. Gregory Gray was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

174.    Plaintiff, Grant Hall, is an individual who at all times material hereto lived in Saunderstown, Rhode Island. Grant Hall was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

175.    Plaintiff, Michael Iannone, is an individual who at all times material hereto lived in Johnston, Rhode Island. Michael Iannone was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

176.    Plaintiff, Adrian Krasinskas, is an individual who at all times material hereto lived in Oxford, Massachusetts.  Adrian Krasinskas was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

177.    Plaintiff, Joseph LoBianco, is an individual who at all times material hereto lived in North Providence, Rhode Island.  Joseph LoBianco was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

178.    Plaintiff, David McGinn, is an individual who at all times material hereto lived in Cranston, Rhode Island.  David McGinn was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

179.    (a)  Plaintiff, Deborah Peduzzi, is an individual who at all times material hereto lived in Sutton, Massachusetts.  Deborah Peduzzi was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b)  Plaintiffs, Deborah Peduzzi and Robert Peduzzi, bring these claims as parents and next friends of Joseph Peduzzi and Ashley Peduzzi, their minor children.

180.    (a)  Plaintiff, Dawn Perry, is an individual who at all times material hereto lived in Johnston, Rhode Island.  Dawn Perry was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b)  Plaintiff, Stephen Perry, brings this claim as husband of Dawn Perry.

181.    (a)  Plaintiff, Stephen Perry, is an individual who at all times material hereto lived in Johnston, Rhode Island.  Stephen Perry was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.  (b) Plaintiff, Dawn Perry, brings this claim as wife of Stephen Perry.

182.    (a)  Plaintiff, Robin Precourt, is an individual who at all times material hereto lived in Lincoln, Rhode Island.  Robin Precourt was lawfully on the premises of The Station

nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Justina Martin, brings this claim as daughter and beneficiary of Robin Precourt.

183. (a) Plaintiff, Gina Russo, is an individual who at all times material hereto lived in Cranston, Rhode Island. Gina Russo was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Gina Russo, brings claims as mother and next friend of her minor children Alex Odsen and Nicholas Odsen.

184. Plaintiff, Milton Servis, II, is an individual who at all times material hereto lived in Mashpee, Massachusetts. Milton Servis, II was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

185. Plaintiff, Derrick Silva, is an individual who at all times material hereto lived in Fairhaven, Massachusetts. Derrick Silva was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

186. Plaintiff, Erik Sippy, is an individual who at all times material hereto lived in Warwick, Rhode Island. Erik Sippy was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

187. (a) Plaintiff, David Steets, is an individual who at all times material hereto lived in Johnston, Rhode Island. David Steets was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, David Steets, brings this claim as father and next friend of his minor child, David M. Steets.

188. (a) Plaintiff, Raul Vargas, is an individual who at all times material hereto lived in Johnston, Rhode Island. Raul Vargas was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Melanie Vargas, brings this claim as wife of Raul Vargas. (c) Plaintiffs, Raul Vargas, and his wife, Melanie Vargas, bring this claim as parents and next friends of Bryan Vargas, their son, a minor.

189.    Plaintiff, Jennifer Vieira, is an individual who at all times material hereto lived in Cranston, Rhode Island. Jennifer Vieira was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

190.    (a) Plaintiff, Andrew S. Richardson, Trustee in Bankruptcy, for Debra and Brian Wagner, brings this claim on behalf of Debra Wagner, who is an individual who at all times material hereto lived in Warwick, Rhode Island. Debra Wagner was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. Andrew S. Richardson was named Trustee in Bankruptcy for Debra and Brian Wagner by the United States Bankruptcy Court for the District of Rhode Island on February 3, 2004 (b) Plaintiff, Andrew S. Richardson, Trustee in Bankruptcy, for Debra and Brian Wagner, brings this claim on behalf of Brian Wagner, as husband of Debra Wagner. (c) Plaintiffs, Debra Wagner, and her husband, Brian Wagner, bring this claim as parents and next friends of Krystal Wagner, their daughter, a minor.

191.    (a) Plaintiff, Gina M. Gauvin, is an individual who at all times material hereto lived in Johnston, Rhode Island. Gina M. Gauvin was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff, Gina M. Gauvin, brings claims as mother and next friend of her minor children Shayna S. Gauvin and Joseph Jordan.

192.    (a) Plaintiff, Scott C. Moresco, is an individual who at all times material hereto lived in Pawtucket, Rhode Island. Scott C. Moresco was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 where he was injured in the fire. (b) Plaintiff, Scott C. Moresco, brings this claim as father and next friend of Tatiana Abel, his minor child.

193.    (a)  Plaintiff, Mario B. Cardillo, is an individual who at times material hereto lived in Providence, Rhode Island.  Mario B. Cardillo was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 where he was injured in the fire.  (b)  Plaintiff, Kathleen M. Cardillo, brings this claim as wife of Mario B. Cardillo.

194.    (a) Plaintiff, Kathleen M. Cardillo, is an individual who at times material hereto lived in Providence, Rhode Island.  Kathleen M. Cardillo was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 where she was injured in the fire.  (b) Plaintiff, Mario B. Cardillo, brings this claim as husband of Kathleen M. Cardillo.

195.    Plaintiff, Tammy M. St. Hilaire, is an individual who at all times material hereto lived in Lincoln, Rhode Island.  Tammy M. St. Hilaire was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 where she was injured in the fire.

196.    Plaintiff, Robert P. Feeney is an individual who at all times material hereto lived in Plymouth, Massachusetts.  Robert P. Feeney was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

197.    (a) Plaintiff, David D. Brennan, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Mr. Brennan was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Susan Brennan brings this claim as wife of David D. Brennan.

198.    Plaintiff, Robert M. Cripe, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Mr. Cripe was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

199.    Plaintiff, Neil E. Cronin, is an individual who at times material hereto lived in Warwick, Rhode Island.  Mr. Cronin was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

200.    Plaintiff, Karen M. Gordon, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Ms. Gordon was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

201.    Plaintiff, Paul R. Gordon, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Mr. Gordon was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

202.    Plaintiff, Joseph A. Jones, is an individual who at times material hereto lived in Cranston, Rhode Island.  Mr. Jones was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

203.    Plaintiff, Lee A. Karvonen, is an individual who at times material hereto lived in Greene, Rhode Island.  Mr. Karvonen was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

204.    Plaintiff, Theresia M. LaBree, is an individual who at times material hereto lived in Pawtucket, Rhode Island.  Ms. LaBree was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

205.    (a) Plaintiff, Melissa J. Minor, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Ms. Minor was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff John Minor brings this claim as husband of Melissa Minor.

206.    Plaintiff, Charles A. Oberg, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Oberg was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

207.    Plaintiff, Linda A. Ormerod, is an individual who at times material hereto lived in Providence, Rhode Island. Ms. Ormerod was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

208.    Plaintiff, John S. Pinkham, is an individual who at times material hereto lived in Pawtucket, Rhode Island. Mr. Pinkham was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

209.    Plaintiff, Victoria L. Potvin, is an individual who at times material hereto lived in West Warwick, Rhode Island. Ms. Potvin was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

210.    Plaintiff, Kerrie A. Rock, is an individual who at times material hereto lived in West Warwick, Rhode Island. Ms. Rock was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

211.    Plaintiff, Timothy J. Rossano, is an individual who at times material hereto lived in Warwick, Rhode Island. Mr. Rossano was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

212.    (a) Plaintiff, Nancy S. Trautz, is an individual who at times material hereto lived in South Dartmouth, Massachusetts. Ms. Trautz was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff Chris C. Trautz brings this claim as husband of Nancy S. Trautz.

213.    (a) Plaintiff, Donovan Williams, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Williams was lawfully on the premises of The Station

nightclub on February 20, 2003 where he was injured in the fire.  (b) Plaintiff, Donovan Williams, brings these claims as father and next friend of his three minor children, Zachary, Hayley and Dylan Williams.

214.    Plaintiff, Sharon A. Wilson, is an individual who at times material hereto lived in West Warwick, Rhode Island.  Ms. Wilson was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

215.    Plaintiff, Melanie Fontaine, is an individual who at times material hereto lived in Johnston, Rhode Island.  Ms. Fontaine was lawfully on the premises of The Station nightclub on February 20, 2003 where she injured in the fire.

216.    (a) Plaintiff, Shawn Lourenco, is an individual who at times material hereto lived in New Bedford, Massachusetts.  Mr. Lourenco was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.  (b) Plaintiff, Mary Lourenco, as legal guardian brings this claim on behalf of Shawn Lourenco's minor children, Brett Lourenco, Bryan Lourenco and Brad Lourenco.

217.    Plaintiff, Ashley A. Poland, is an individual who at times material hereto lived in Wakefield, Rhode Island.  Ms. Poland was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

218.    Plaintiff, Joseph Cristina, is an individual who at times material hereto lived in East Bridgewater, Massachusetts.  Mr. Cristina was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

219.    Plaintiff, William Rancourt, is an individual who at times material hereto lived in Providence, Rhode Island.  Mr. Rancourt was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

220.    Plaintiff, Matthew Dussault, is an individual who at times material hereto lived in Coventry, Rhode Island. Mr. Dussault was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

221.    Plaintiff, Paul Bertolo, is an individual who at times material hereto lived in Brockton, Massachusetts. Mr. Bertolo was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

222.    (a) Plaintiff, Cynthia A. Nobles, is an individual who at times material hereto lived in North Kingstown, Rhode Island. Cynthia A. Nobles was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff Edward D. Nobles brings this claim as husband of Cynthia A. Nobles. (c) Plaintiff Edward D. Nobles brings this claim as next friend of Ethan MacLeod and Brandon Nobles, minor children of Cynthia A. Nobles.

223.    (a) Plaintiff, Edward D. Nobles, is an individual who at times material hereto lived in North Kingstown, Rhode Island. Edward D. Nobles was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Cynthia A. Nobles brings this claim as wife of Edward D. Nobles. (c) Plaintiff Cynthia A. Nobles brings this claim as mother and next friend of Brandon Nobles, minor child of Edward D. Nobles.

224.    (a) Plaintiff, Donald N. Trudeau, is an individual who at times material hereto lived in Warwick, Rhode Island. Donald N. Trudeau was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Plaintiff Roberta Trudeau brings this claim as wife of Donald N. Trudeau.

225.    Plaintiffs, Jane C. Sylvester and Robert L. Sylvester, Co-Administrators of the Estate of Jason Sylvester, bring this claim on behalf of the Estate and wrongful death beneficiaries of Jason Sylvester, who lived in Coventry, Rhode Island. Jason Sylvester was

lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Jane C. Sylvester and Robert L. Sylvester were appointed Co-Administrators of the plaintiff estate by the Probate Court of the Town of Coventry on July 24, 2003.

226.    (a) Plaintiff, Erin Pucino, is an individual who at times material hereto lived in North Kingstown, Rhode Island. Ms. Pucino was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Plaintiff Erin Pucino brings this claim as mother and next friend of her minor child, Sterling Pucino.

227.    (a) Plaintiff, Dorothy Pimentel, surviving spouse of Carlos Pimentel, brings this action on behalf the wrongful death beneficiaries of Carlos Pimentel who lived in West Warwick, Rhode Island. Carlos Pimentel was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. (b) Dorothy Pimentel brings this claim as wife of the decedent, Carlos Pimentel. (c) Dorothy Pimentel brings this claim as mother and next friend of Savannah Pimentel, Carlos Pimentel, Jr. Cheyenne Pimentel and Cullin Pimentel, minor children of Carlos Pimentel.

228.    (a) Plaintiff, Kimberly Rich, Administratrix, brings this claim on behalf of the estate and wrongful death beneficiaries of Walter Rich who lived in Attleboro, Massachusetts. Walter G. Rich was lawfully on the premises of The Station nightclub on Cowesett Avenue, West Warwick, Rhode Island on February 20, 2003 and died of injuries sustained in the fire. Kimberly Rich was appointed administratrix of the estate by the Probate Court of the County of Bristol on June 27, 2003. (b) Plaintiff, Kimberly Rich brings this claim as surviving spouse of the decedent, Walter E. Rich. (c) Kimberly Rich brings this claim as next friend of Christopher Rich, a minor child of Walter E. Rich.

229.    (a) Plaintiff, Cathren M. Prunier, is an individual who at all times material hereto lived in Worcester, Massachusetts. Ms. Prunier was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire. (b) Cathren M. Prunier brings this claim as mother and next friend of Peter, Angela and Christopher Shays, her minor children.

230.    (a) Plaintiff, Glenn Therriault, is an individual who at all times material hereto lived in Attleboro, Massachusetts. Mr. Therriault was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire. (b) Christina Therriault bring this claim as wife of Glenn Therriault. (c) Glenn Therriault brings this claim as father and next friend of his minor child, Maya Therriault.

231.    Plaintiff, Bruce Cormier, is an individual who at all times material hereto lived in Foxboro, Massachusetts. Mr. Cormier was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

232.    Plaintiff, Donna Cormier, is an individual who at all times material hereto lived in Foxboro, Massachusetts. Ms. Cormier was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

233.    Plaintiff, Brenda Cormier, is an individual who at all times material hereto lived in Foxboro, Massachusetts. Ms. Cormier was lawfully on the premises of The Station nightclub on February 20, 2003 where she sustained injuries in the fire.

234.    Plaintiff, Anthony Manzo, Administrator, brings this claim on behalf of the estate and wrongful death beneficiaries of Judith Manzo, who lived in North Providence, Rhode Island. Judith Manzo was lawfully on the premises of The Station nightclub on February 20, 2003 and died of injuries sustained in the fire. Anthony Manzo was appointed administrator of the estate by the North Providence Probate Court. (b) Anthony Manzo brings this claim as father and next friend of Brianna B. Manzo and Anthony Manzo, II, minor children of Judith Manzo.

235.    Plaintiffs, Raymond Mattera and Jaromir Housa, Co-Administrators of the Estate of Tammy A. Mattera-Housa, bring this claim on behalf of the estate and wrongful death beneficiaries of Tammy A. Mattera-Housa who lived in Warwick, Rhode Island.  Tammy A. Mattera-Housa was lawfully on the premises of The Station nightclub on Cowesset Avenue, West Warwick, Rhode Island on February 20, 2003 and died from injuries sustained in the fire. Co-Administrators Raymond Mattera and Jaromir Housa were appointed Co-Administrators of the estate by the Warwick Probate Court on July 2, 2004.  (b) Plaintiff, Jaromir Housa brings this claim as surviving spouse of the decedent Tammy A. Mattera-Housa and as next friend of Nicholas Housa, minor child of decedent.  (c) Plaintiffs Raymond Mattera and Diane Mattera bring this claim on behalf of Nathan Robert Mattera, minor child of decedent.

236.    Plaintiff, Erin Whalen, is an individual who at all times material hereto lived in Coventry, Rhode Island.  Ms. Whelan was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.

237.    Plaintiff, Stephanie Simpson, is an individual who at all times material hereto lived in Johnston, Rhode Island.  Ms. Simpson was lawfully on the premises of The Station nightclub on February 20, 2003 where she was injured in the fire.  (b) Plaintiff, Stephanie Simpson, brings this claim as mother and next friend of her three minor children, Matthew Simpson, David Simpson and Tayla Simpson.

238.    Plaintiff, Richard Wiggs, is an individual who at all times material hereto lived in Coventry, Rhode Island.  Mr. Wiggs was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

239.    Plaintiff, John F. Pickett, Administrator of the Estate of Matthew J. Pickett, brings this claim on behalf of the estate and wrongful death beneficiaries of Matthew J. Pickett, who lived in Bellingham, Massachusetts.  Matthew J. Pickett was lawfully on the premises of The

Station nightclub on February 20, 2003 and died of injuries sustained in the fire. John F. Pickett was appointed Administrator by the Probate Court of Norfolk County, Massachusetts, on May 15, 2003.

240.    Plaintiff, Michael R. Ricardi is an individual who at all times material hereto lived in Worcester, Massachusetts. Mr. Ricardi was lawfully on the premises of The Station nightclub on February 20, 2003 where he was injured in the fire.

(Plaintiff paragraph numbers 241 through 270 reserved.)

## GENERAL ALLEGATIONS AS TO ALL DEFENDANTS

271.    The amount in controversy as to each defendant is sufficient to satisfy the applicable jurisdictional threshold of the Court.

## JEFFREY DERDERIAN

272.    Plaintiffs repeat and incorporate by reference herein all prior paragraphs of this Complaint.

273.    The defendant Jeffrey Derderian is an individual who at times material hereto resided in Narragansett, Washington County, Rhode Island. At times material hereto Jeffrey Derderian acted individually and as an agent of defendant DERCO, LLC and as an agent of either TVL Broadcasting, Inc. ("TVL") or STC Broadcasting, Inc. ("STC").

274.    The defendant Jeffrey Derderian was negligent, both individually and as an agent of defendant DERCO, LLC, in the management, maintenance, supervision, control and inspection of The Station. Without limitation, defendant Jeffrey Derderian:

   a.    contributed to the over-crowding of The Station of February 20, 2003;

   b.    installed and maintained defective material, including flammable foam and other interior finish, in The Station which caused and contributed to fire spread;

   c.    failed to ensure compliance with Rhode Island's laws for the permit and use of pyrotechnics;

d.    failed to provide numerous fire prevention, detection, and suppression materials at The Station; and

e.    failed to provide proper means of egress and adequate and operable lighting to illuminate such means of egress during the fire.

275.    Defendant Jeffrey Derderian's negligence, both individually and as an agent of DERCO, LLC caused deaths and severe personal injuries to plaintiffs.

276.    On February 20, 2003, Jeffrey Derderian acted at times material hereto as an investigative reporter for WPRI Channel 12, owned by TVL and/or STC. Together with Channel 12 photographer Brian Butler, also employed by TVL and/or STC, Jeffrey Derderian was investigating and preparing an analysis of nightclub safety for his employer intended to be aired in the wake of a fatal Chicago nightclub fire.

277.    Jeffrey Derderian knew of several hazardous conditions in The Station nightclub on February 20th prior to 11:00 p.m., including without limitation that the club was substantially overcrowded, that it lacked adequate and lawful egress, that non-flame-retardant and defective egg crate foam had been placed on the interior finish of the walls surrounding the stage where the band would perform, and that Great White would use pyrotechnics in close proximity to these walls.

278.    Had Jeffrey Derderian been investigating any other nightclub but one he owned and operated, he would have, armed with this knowledge, brought it to the attention of the owners and operators of the nightclub in an effort to aggressively promote a newsworthy story and/or to promote safety and prevent tragedy.

279.    Jeffrey Derderian's failure to call attention to these defects as an individual, as owner of DERCO, LLC, and as an investigative reporter for TVL and/or STC working for WPRI Channel 12, caused deaths of and severe personal injuries to plaintiffs.

## COUNT I
## JEFFREY DERDERIAN – NEGLIGENCE

280.   Plaintiffs repeat and incorporate by reference herein  paragraphs 1 through 279 of this Complaint.

281.   This Count seeks damages on behalf of all plaintiffs from Jeffrey Derderian arising out of his negligence as an individual, as an agent of DERCO, LLC, and as an agent of TVL and/or STC.

## COUNT II
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

282.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 279 of this Complaint.

283.   Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

### MICHAEL DERDERIAN

284.   The defendant Michael Derderian is an individual who at times material hereto resided in Saunderstown, Washington County, Rhode Island.  At times material hereto Michael Derderian acted individually and as an agent of defendant DERCO, LLC.

285.   The defendant Michael Derderian was negligent, both individually and as an agent of defendant DERCO, LLC, in the management, maintenance, supervision, control and inspection of The Station.  Without limitation, defendant Michael Derderian:

    a.    contributed to the overcrowding of The Station on February 20, 2003;

    b.    installed and maintained defective material, including flammable foam and other interior finish, in The Station which caused and contributed to the fire spread;

c.    failed to ensure compliance with Rhode Island's laws for the permit and use of pyrotechnics;

d.    failed to provide numerous fire prevention, detection and suppression materials at The Station; and

e.    failed to provide proper means of egress and adequate and operable lighting to illuminate such means of egress during the fire.

286.    Defendant Michael Derderian's negligence, both individually and as an agent of DERCO, LLC, caused deaths of and severe personal injuries to plaintiffs.

### COUNT III
### MICHAEL DERDERIAN – NEGLIGENCE

287.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 284 through 286 of this Complaint.

288.    This Count seeks damages on behalf of all plaintiffs from Michael Derderian arising out of his negligence as an individual and as an agent of DERCO, LLC.

### COUNT IV
### VIOLATION OF RHODE ISLAND GENERAL LAWS
### TITLE 9, CHAPTER 1, SECTION 2

289.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 284 through 286 of this Complaint.

290.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

### DERCO, LLC

291.    The defendant DERCO, LLC is a Rhode Island Corporation with a principal place of business in West Warwick.  DERCO, LLC does business as The Station and is owned by defendants Jeffrey Derderian and Michael Derderian.

292.    The defendant DERCO, LLC, through its agents, servants and employees, was negligent in the management, maintenance, supervision, control and inspection of The Station, which it owned and operated.  DERCO, LLC's negligence included, without limitation:

    a.    allowing The Station to be overcrowded on February 20, 2003;

    b.    allowing the installation and maintenance of defective material, including flammable foam and other interior finish, in The Station which caused and contributed to fire spread;

    c.    failing to ensure compliance with Rhode Island's laws for the permit and use of pyrotechnics;

    d.    failing to provide numerous fire prevention, detection and suppression materials at The Station; and

    e.    failing to provide proper means of egress and adequate and operable lighting to illuminate such means of egress during the fire.

293.    Defendant DERCO, LLC's negligence caused deaths of and severe personal injuries to plaintiffs.

## COUNT V
## DERCO, LLC – NEGLIGENCE

294.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 291 through 293 of this Complaint.

295.    This Count seeks damages on behalf of all plaintiffs from DERCO, LLC arising out of its negligence.

## COUNT VI
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

296.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 291 through 293 of this Complaint.

297.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## HOWARD JULIAN

298.    The defendant Howard Julian is an individual who at times material hereto resided in Hope Valley, Washington County, Rhode Island.  At times material hereto Howard Julian acted individually and as an agent and owner of La Villa Strangiato, Inc.

299.    From December 5, 1995 through March 7, 2000, the defendant Howard Julian, individually and as an agent and owner of La Villa Strangiato, Inc. negligently managed, maintained, supervised, controlled and inspected premises at 211 Cowesett Avenue, West Warwick, while such premises were being leased from the defendant, Triton Realty Limited Partnership.  Julian's negligence included the installation and maintenance of defective material, including interior finish, on the premises, which caused and contributed to fire spread on February 20, 2003.  Defendant Howard Julian's negligence, both individually and as an agent of La Villa Strangiato, Inc. caused deaths of and severe personal injuries to plaintiffs.

## COUNT VII
## HOWARD JULIAN - NEGLIGENCE

300.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 298 through 299 of this Complaint.

301.    This Count seeks damages on behalf of all plaintiffs from Howard Julian arising out of his negligence as an individual and as an agent of La Villa Strangiato, Inc.

## COUNT VIII
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

302.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 298 through 299 of this Complaint.

- 71 -

303.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## TRITON REALTY LIMITED PARTNERSHIP

304.    Triton Realty Limited Partnership is a limited partnership organized under the laws of Massachusetts, registered to do business in and having a principal place of business in Rhode Island. At all relevant times Triton Realty Limited Partnership owned property at 211 Cowesett Avenue, West Warwick, Rhode Island, and leased property to various individuals and entities for the operation of restaurants and nightclubs.

305.    As property owner Triton Realty Limited Partnership had an obligation to keep the premises reasonably safe for all persons lawfully on the property. As landlord, Triton Realty Limited Partnership retained the right to approve or reject any and all alterations or repairs made by the tenant. Triton Realty Limited Partnership retained sufficient control over the leased premises to impose upon it a duty to correct defective and nuisance conditions created by tenants both prior to renewal of leases and after lease renewal but prior to the fire of February 20, 2003. Triton Realty Limited Partnership also warranted to its lessees that the leased premises complied with all applicable building, safety and fire regulations as of the date of the lease, giving rise to a duty to make such corrections as were necessary to make the statement true.

306.    Triton Realty Limited Partnership breached the aforementioned duties and obligations by negligently failing to correct and remove defective conditions on the premises, including without limitation, defective material installed on the premises, including interior finish, and failing to correct open and obvious building and fire code violations on the

premises. Defendant Triton Realty Limited Partnership's negligence caused deaths of and severe personal injuries to plaintiffs.

307.   On information and belief, Defendant Triton Realty Limited Partnership has transferred assets with the intent to hinder, delay or defraud Plaintiffs.

## COUNT IX
## TRITON REALTY LIMITED PARTNERSHIP – NEGLIGENCE

308.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 304 through 307 of this Complaint.

309.   This Count seeks damages on behalf of all plaintiffs from Triton Realty Limited Partnership arising out of its negligence.

## COUNT X
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

310.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 304 through 307 of this Complaint.

311.   Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## TRITON REALTY, INC.

312.   Triton Realty, Inc. is a corporation organized under the laws of Massachusetts and registered to do business in and having a principal place of business in Rhode Island. At relevant times Triton Realty, Inc. was the General Partner of Triton Realty Limited Partnership, which limited partnership owned property at 211 Cowesett Avenue, West Warwick, Rhode Island and leased the property to various individuals and entities for the operations of restaurants and nightclubs.

313.   As general partner of Triton Realty Limited Partnership, Triton Realty, Inc. had an obligation to keep the premises at 211 Cowesett Avenue in West Warwick, Rhode Island reasonably safe for all persons lawfully on the property. As general partner of the landlord, Triton Realty Limited Partnership, Triton Realty, Inc. retained the right to approve or reject any and all alterations or repairs made by the tenant. Triton Realty, Inc., as general partner of Triton Realty Limited Partnership, retained sufficient control over the leased premises to impose upon it a duty to correct defects and nuisance conditions created by tenants both prior to renewal of leases and after lease renewal but prior to the fire of February 20, 2003. Triton Realty, Inc., as general partner of Triton Realty Limited Partnership, warranted to its lessees that the leased premises complied with all applicable building, safety and fire regulations as of the date of the lease, giving rise to a duty to make such corrections as were necessary to make the statement true.

314.   Triton Realty, Inc., as general partner of Triton Realty Limited Partnership, breached the aforementioned duties and obligations by negligently failing to correct and remove defective conditions on the premises, including without limitation, defective material installed on the premises, including interior finish, and failing to correct open and obvious building and fire code violations. Defendant Triton Realty, Inc.'s negligence caused deaths of and severe personal injuries to plaintiffs.

315.   On information and belief Defendant Triton Realty, Inc. has transferred assets with the intent to hinder, delay or defraud Plaintiffs.

## COUNT XI
## TRITON REALTY, INC. – NEGLIGENCE

316.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 312 through 315 of this Complaint.

- 74 -

317.   This Count seeks damages on behalf of all plaintiffs from Triton Realty, Inc. arising out of its negligence.

## COUNT XII
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

318.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 312 through 315 of this Complaint.

319.   Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## RAYMOND J. VILLANOVA

320.   Raymond J. Villanova ("Villanova") is a resident of Warwick, Kent County, Rhode Island.  At relevant times Raymond J. Villanova was General Partner of Triton Realty Limited Partnership, the owner of property at 211 Cowesett Avenue, West Warwick, Rhode Island.

321.   As general partner of the property owner Triton Realty Limited Partnership, Villanova had an obligation to keep the premises reasonably safe for all persons lawfully on the property.  As general partner to the landlord, Triton Realty Limited Partnership, Villanova retained the right to approve or reject any and all alterations or repairs made by the tenant.  As general partner of Triton Realty Limited Partnership, Villanova retained sufficient control over the leased premises to impose upon it a duty to correct defects and nuisance conditions created by the tenants both prior to renewal of leased and after lease renewal but prior the fire of February 20, 2003.  Raymond J. Villanova, as general partner of Triton Realty Limited Partnership retained sufficient control over the leased premises to impose upon it a duty to correct defects and nuisance conditions created by tenants both prior to renewal of leases and

after lease renewal but prior to the fire of February 20, 2003. Raymond J. Villanova, as general partner of Triton Realty Limited Partnership, warranted to its lessees that the leased premises complied with all applicable building, safety and fire regulations as of the date of the lease, giving rise to a duty to make such corrections as were necessary to make the statement true.

322.   *Villanova as general partner of Triton Realty Limited Partnership breached the* aforementioned duties and obligations by negligently failing to correct and remove defective conditions on the premises, including without limitation, defective material installed on the premises, including interior finish, failing to correct open and obvious building and fire code violations. Defendant Villanova's negligence caused deaths of and severe personal injuries to plaintiffs.

323.   On information and belief Defendant Villanova has transferred assets with the intent to hinder, delay or defraud Plaintiffs.

## COUNT XIII
## RAYMOND J. VILLANOVA – NEGLIGENCE

324.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 *and 320 through 323 of this Complaint.*

325.   This Count seeks damages on behalf of all plaintiffs from Raymond J. Villanova arising out of his negligence.

## COUNT XIV
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

326.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 320 through 323 of this Complaint.

327.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

### JACK RUSSELL

328.    The defendant Jack Russell is a resident of California, and was on February 20, 2003, the lead singer of the Band Great White. Defendant Russell individually managed and controlled many aspects of the Band's performance, including its use of pyrotechnics.

329.    The defendant Russell had a duty to exercise reasonable care for the safety of the patrons at The Station nightclub in connection with a concert performed there by Great White on February 20, 2003.

330.    The defendant Russell failed to use reasonable care and failed to comply with the laws of the State of Rhode Island including, without limitation:

    a.    the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

    b.    the failure to obtain a permit for the use and display of proximate pyrotechnics;

    c.    the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

    d.    failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

331.    Defendant Jack Russell's failure to use reasonable care and violation of the laws of the State of Rhode Island and the requirements of NFPA 1126 caused deaths of and severe personal injuries to plaintiffs.

## COUNT XV
## JACK RUSSELL – NEGLIGENCE

332.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 328 through 331 of this Complaint.

333.    This Count seeks damages on behalf of all plaintiffs from Jack Russell arising out of his negligence.

## COUNT XVI
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

334.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 328 through 331 of this Complaint.  Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## JACK RUSSELL TOURING, INC.

335.    The defendant, Jack Russell Touring, Inc. is a California corporation that employed Jack Russell and other members of the band Great White in February of 2003.  Jack Russell Touring, Inc. managed and controlled many aspects of the band Great White's performance, including its use of pyrotechnics.  Jack Russell Touring, Inc. had a duty to exercise reasonable care for the safety of the patrons of The Station and a duty to comply with the laws of Rhode Island in connection with a concert performed by Great White at The Station on February 20, 2003.

336.    The defendant Jack Russell Touring, Inc. failed to use reasonable care and failed to comply with the laws of the State of Rhode Island, including without limitation:

    a.    the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

- 78 -

     b.     the failure to obtain a permit for the use and display of proximate pyrotechnics;

     c.     the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

     d.     failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

337.    Additionally, Defendant Jack Russell Touring, Inc., through its agents, servants and employees, transported more than 25 kilograms of explosive material (fireworks) in interstate commerce and into Rhode Island without registration or permit, state or federal, allowing same to be used by unlicensed persons in close proximity to the public, within a confined, highly flammable space.

338.    Said actions by Jack Russell Touring, Inc. were negligent and in violation of state and federal laws, including but not limited to R.I.G.L. Title 11, Chapter 13, Section 8 and 49 C.F.R. §107.601(a)(2).

339.    Plaintiffs bring the following claims under common law of negligence and under R.I.G.L. §9-1-2. The negligence and violations of criminal law by Jack Russell Touring, Inc. were a proximate cause of Plaintiffs' deaths and injuries.

## COUNT XVII
## JACK RUSSELL TOURING, INC. – NEGLIGENCE

340.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 335 through 339 of this Complaint.

341.    This Count seeks damages on behalf of all plaintiffs from Jack Russell Touring, Inc. arising out of its negligence.

## COUNT XVIII
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

342.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 335 through 339 of this Complaint.

343.   Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## PAUL WOOLNOUGH

344.   The defendant Paul Woolnough is a resident of the State of California, and a principal of Knight Records, Inc. and Manic Music Management, Inc.  The defendant Woolnough, individually and through Knight Records, Inc. and Manic Music Management, Inc. managed and controlled many aspects of the band Great White's performance on February 20, 2003, including its use of pyrotechnics.

345.   The defendant Paul Woolnough had a duty to exercise reasonable care for the safety of patrons of The Station nightclub and to comply with the laws of Rhode Island in connection with a concert performed at The Station by Great White on February 20, 2003.

346.   The defendant Paul Woolnough failed to use reasonable care and failed to comply with the laws of the State of Rhode Island, including without limitation:

a.    the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

b.    the failure to obtain a permit for the use and display of proximate pyrotechnics;

c.    the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

d.    failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

347.   Defendant Paul Woolnough's negligence, both individually and as an agent of Knight Records, Inc. and Manic Music Management, Inc., caused deaths of and severe personal injuries to plaintiffs.

**COUNT XIX**
**PAUL WOOLNOUGH – NEGLIGENCE**

348.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 344 through 347 of this Complaint.

349.   This Count seeks damages on behalf of all plaintiffs from Paul Woolnough arising out of its negligence.

**COUNT XX**
**VIOLATION OF RHODE ISLAND GENERAL LAWS**
**TITLE 9, CHAPTER 1, SECTION 2**

350.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 344 through 347 of this Complaint.

351.   Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

**MANIC MUSIC MANAGEMENT, INC.**

352.   The defendant Manic Music Management, Inc. is a corporation organized under the laws of California. At relevant times the defendant Manic Music Management, Inc. managed and controlled many aspects of the band Great White's performance, including its use of pyrotechnics.

353.   The defendant Manic Music Management, Inc. had a duty to exercise reasonable care for the safety of patrons of The Station and comply with the laws of Rhode Island in connection with a concert performed at The Station on February 20, 2003 by Great White.

- 81 -

354.   The defendant Manic Music Management, Inc. failed to use reasonable care and

failed to comply with the laws of the State of Rhode Island, including without limitation:

      a.     the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

      b.     the failure to obtain a permit for the use and display of proximate pyrotechnics;

      c.     the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

      d.     failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

355.   Defendant Manic Music Management's negligence caused deaths of and severe

personal injuries to plaintiffs.

**COUNT XXI**
**MANIC MUSIC MANAGEMENT, INC. – NEGLIGENCE**

356.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 352 through 355 of this Complaint.

357.   This Count seeks damages on behalf of all plaintiffs from Manic Music

Management, Inc. arising out of its negligence.

**COUNT XXII**
**VIOLATION OF RHODE ISLAND GENERAL LAWS**
**TITLE 9, CHAPTER 1, SECTION 2**

358.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 352 through 355 of this Complaint.

359.   Several of Defendant's actions or omissions constitute the commission of a

crime or offense and, accordingly, plaintiffs may recover damages in this action for

defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## KNIGHT RECORDS, INC.

360.    The defendant Knight Records, Inc. is a corporation organized under the laws of California. At relevant times Knight Records, Inc. managed and controlled many aspects of the band Great White's performance, including its use of pyrotechnics.

361.    The defendant Knight Records, Inc. had a duty to exercise reasonable care for the safety of patrons at The Station and to comply with the laws of Rhode Island in connection with a concert performed at The Station by Great White on February 20, 2003.

362.    The defendant Knight Records, Inc. failed to exercise reasonable care and failed to comply with the laws of the State of Rhode Island, including without limitation:

    a.    the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

    b.    the failure to obtain a permit for the use and display of proximate pyrotechnics;

    c.    the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

    d.    failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

363.    Defendant Knight Records, Inc.'s negligence caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXIII
## KNIGHT RECORDS, INC. – NEGLIGENCE

364.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 360 through 363 of this Complaint.

365.    This Count seeks damages on behalf of all plaintiffs from Knight Records, Inc. arising out of its negligence.

## COUNT XXIV
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

366.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 360 through 363 of this Complaint.

367.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## DANIEL BIECHELE

368.    The defendant Daniel Biechele is a resident of the State of California and was at relevant times tour manager of the band Great White and agent for Knight Records, Inc., Manic Music Management, Inc. and Jack Russell Touring, Inc.

369.    The defendant Daniel Biechele had a duty to exercise reasonable care for the safety of patrons at The Station and to comply with the laws of Rhode Island in connection with a concert performed at The Station by Great White on February 20, 2003.

370.    The defendant Daniel Biechele was negligent in the ignition of pyrotechnics before a proximate audience, failed to exercise reasonable care and failed to comply with the laws of the State of Rhode Island, including without limitation:

   a.    the failure to obtain a valid certificate of competency from the State Fire Marshal for the possession and display of pyrotechnics;

   b.    the failure to obtain a permit for the use and display of proximate pyrotechnics;

   c.    the failure to comply with the Rhode Island Fire Safety Code for Fireworks and Pyrotechnics (chapter 23-28.11-3 -- 11-10); and

   d.    failure to display pyrotechnics in accordance with the requirements of the National Fire Protection Association Standard 1126, entitled "Use of Pyrotechnics Before a Proximate Audience."

- 84 -

371.    Defendant, Daniel Biechele's negligence, both individually and as an agent of Jack Russell Touring, Inc., Knight Records, Inc., and Manic Music Management, Inc. caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXV
## DANIEL BIECHELE – NEGLIGENCE

372.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 368 through 371 of this Complaint.

373.    This Count seeks damages on behalf of all plaintiffs from Daniel Biechele arising out of his negligence as an individual, and as an agent of Jack Russell Touring, Inc., Knight Records, Inc. and Manic Music Management, Inc.

## COUNT XXVI
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

374.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 368 through 371 of this Complaint.

375.    Several of Defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## ANHEUSER-BUSCH, INCORPORATED and
## ANHEUSER-BUSCH COMPANIES, INCORPORATED

376.    The defendants Anheuser-Busch, Incorporated and Anheuser-Busch Companies, Incorporated (hereinafter collectively "Anheuser-Busch") are foreign corporations with a principal place of business in St. Louis, Missouri.  Anheuser-Busch is registered to do business in Rhode Island and conducts business in Rhode Island both independently and through an exclusive distributing agency, defendant McLaughlin & Moran, Inc.

377.    Defendant Anheuser-Busch owns the registered trademark "Budweiser" and through written and verbal agreements with agents such as McLaughlin & Moran, Inc. grants the right to use the Budweiser trademark under circumstances which Anheuser-Busch controls. These circumstances include, upon information and belief, the requirement that Anheuser-Busch's trademark Budweiser not be used for or in support of or in sponsorship or promotion of an illegal activity.

378.    Anheuser-Busch derives direct and indirect economic benefit from the use of the Budweiser trademark in circumstances where Anheuser-Busch can promote brand awareness, and encourage consumption of Budweiser and other Anheuser-Busch products.  These circumstances include the use of the Budweiser trademark to invite individuals to crowded clubs, to concerts, and to places of public assembly where target age-groups gather that are known and predicted by Anheuser-Busch to consume its products.

379.    Anheuser-Busch had or should have had at all material times a special awareness of the need to regulate and insure the safe use of pyrotechnic special effects at indoor locations. Senior officials of Anheuser-Busch serve as members and alternates on the Technical Committee on Special Effects, the drafter of NFPA 1126, the national standard for the use of pyrotechnics before a proximate audience.

380.    By early January 2003, Anheuser-Busch, directly and through its agent McLaughlin & Moran, Inc., had determined that it would grant the use of the trademark Budweiser to promote, sponsor and endorse a concert by the heavy metal band Great White at The Station in West Warwick, Rhode Island on February 20, 2003.  Anheuser-Busch agreed to do this by:

    a.    advertising its promotion and sponsorship in print and on the radio;

b.      printing a banner which announced the concert and expressly invited patrons to "party with Budweiser" and hanging it outside the concert venue days prior to February 20, 2003;

c.      determining and advertising that it would specifically distribute Budweiser product that was bottled, or "born on," the date of the concert, February 20, 2003 and delivering said beer to The Station on 2/20/03;

d.      distributing hats, tee shirts and other Budweiser products within the concert venue at The Station during the concert on February 20, 2003;

e.      meeting with others who were promoting the concert, including the club owners and operators, officials and employees of the radio station WHJY and its parent Clear Channel, Inc., and coordinating the timing of these promotional activities prior to and during the concert of February 20, 2003.

381.   Anheuser-Busch knew or should have known that the concert that it promoted involved a band that customarily utilized pyrotechnics, and that Great White had repeatedly, openly and illegally used unlicensed pyrotechnics on its tour on numerous occasions prior to February 20, 2003. Minimal inquiry by Anheuser-Busch would have disclosed the inherently dangerous nature of the band's performance, a performance that began with the setting off of illegal fireworks.

382.   By virtue of these special circumstances, Anheuser-Busch owed a duty as a promoter and sponsor of the concert Great White was to perform in West Warwick at The Station on February 20, 2003, to make that minimal inquiry sufficient to discover the dangers of the band's performance. Additionally, Anheuser-Busch's allowing use of the "Budweiser" trademark without making such minimal inquiry into the quality or safety of the product or services associated with it constituted naked licensing of the mark which deceived or tended to deceive the public, including Plaintiffs.

383.   This duty derived from their special role in supporting and promoting the concert, and from their superior knowledge of the dangers of improperly licensed and regulated proximate pyrotechnics in this setting.

384.    Anheuser-Busch breached their duty to patrons at the Great White concert at The Station in West Warwick on February 20, 2003, and their negligence caused deaths of and severe personal injuries to plaintiffs.  Moreover, Anheuser-Busch's actions substantially contributed to the unlawful and dangerous overcrowding of the premises, and to the patrons' difficulties in escaping the burning building.

### COUNT XXVII
### ANHEUSER-BUSCH – NEGLIGENCE

385.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 376 through 384 of this Complaint.

386.    This Count seeks, on behalf of all plaintiffs, damages from Anheuser-Busch arising out of its negligence as an entity and through its agent, McLaughlin & Moran, Inc.

### McLAUGHLIN & MORAN

387.    McLaughlin & Moran, Inc. is a Rhode Island corporation with a principal place of business in Cranston, County of Providence, Rhode Island.  At all relevant times McLaughlin & Moran, Inc. was the exclusive distributor for Anheuser-Busch in Rhode Island, acting as its agent with respect to all matters, including without limitation, agreements for the use of the Budweiser trademark owned by Anheuser-Busch.

388.    By early January 2003, McLaughlin & Moran, Inc., acting individually and as the agent of Anheuser-Busch, determined that it would grant the use the trademark Budweiser to promote, sponsor and endorse a concert by the heavy metal band Great White at The Station in West Warwick, Rhode Island on February 20, 2003.  McLaughlin & Moran, Inc. agreed to do this by:

      a.    advertising its promotion and sponsorship in print and on the radio on behalf of Budweiser;

     b.     printing a banner which announced the concert and expressly invited patrons to "party with Budweiser" and hanging it outside the concert venue days prior to February 20, 2003;

     c.     determining and advertising that it would specifically distribute Budweiser product that was bottled, or "born on," the date of the concert, February 20, 2003;

     d.     providing its employees to distribute tee shirts and other Budweiser products within the concert venue at The Station during the concert on February 20, 2003; and

     e.     meeting with others who were promoting the concert, including the club owners and operators, officials and employees of the radio station WHJY and its parent Clear Channel, Inc., and coordinating the timing of these promotional activities prior to and during the concert of February 20, 2003.

     389.    McLaughlin & Moran, Inc., both individually and as the agent of Anheuser-

Busch, knew or should have known that the concert that it chose to promote involved a band

that customarily utilized pyrotechnics, and that Great White had repeatedly, openly and

illegally used unlicensed pyrotechnics on its tour on numerous occasions prior to February 20,

2003. Minimal inquiry by McLaughlin & Moran, Inc., individually and as agent of Anheuser-

Busch, would have disclosed the inherently dangerous nature of the band's performance, a

performance that began with the setting off of illegal fireworks.

     390.    By virtue of these special circumstances, McLaughlin & Moran, Inc., both

individually and as agent of Anheuser-Busch, owed a duty as a promoter and sponsor of the

concert Great White was to perform in West Warwick at The Station on February 20, 2003, to

make that minimal inquiry sufficient to discover the dangers of the band's performance.

Additionally, McLaughlin & Moran, Inc.'s allowing use of the "Budweiser" trademark without

making such minimal inquiry into the quality or safety of the product or services associated

with it constituted naked licensing of the mark which deceived or tended to deceive the public,

including Plaintiffs.

391.   This duty derived from the special role that McLaughlin & Moran, individually and as agent of Anheuser-Busch played in supporting and promoting the concert, and from the superior knowledge of Anheuser-Busch relating to the dangers of improperly licensed and regulated proximate pyrotechnics in this setting.

392.   McLaughlin & Moran, Inc. breached their duty to patrons of the Great White concert at The Station in West Warwick on February 20, 2003, and their negligence caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXVIII
## McLAUGHLIN & MORAN, INC. – NEGLIGENCE

393.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 387 through 392 of this Complaint.

394.   This Count seeks, on behalf of all plaintiffs, damages from the defendant McLaughlin & Moran, Inc., both individually and as an agent of Anheuser-Busch.

## WHJY, INC. AND CAPSTAR RADIO OPERATING COMPANY

395.   The defendant WHJY, Inc. is a Rhode Island corporation with a principal place of business in San Antonio, TX.  WHJY, Inc. operates WHJY-FM in Providence, Rhode Island.  WHJY, Inc. is a wholly owned subsidiary of the defendant Clear Channel Broadcasting, Inc.  On information and belief, since The Station nightclub fire defendant Capstar Radio Operating Company, another Rhode Island corporation, has succeeded to the interests of WHJY, Inc.

396.   Defendant WHJY was in early 2003 a radio station that broadcast, among other types of music, heavy metal rock music.  The defendant was sufficiently familiar with the band known as Great White to be aware of the style and manner of its musical performance and stage production.  Specifically, WHJY, Inc., through its agents, servants and employees had or

should have had specific knowledge that the band Great White used pyrotechnics before

proximate audiences at its concerts.

397.   By early January 2003, defendant WHJY, Inc. had determined that it would

promote, sponsor and endorse a concert by the heavy metal band Great White at The Station in

West Warwick, Rhode Island on February 20, 2003.  WHJY, Inc. agreed to accomplish this by:

a.   advertising its promotion and sponsorship in print and on the radio;

b.   authorizing a banner which announced the concert and expressly invited patrons to "party with WHJY" and hanging it outside the concert venue days prior to February 20, 2003;

c.   distributing free tickets to the concert through its radio station;

d.   providing its employee Mike Gonsalves to be master of ceremonies and to introduce the band Great White, as well as providing various interns to assist at The Station during the concert with promotion and sponsorship;

e.   meeting with others who were promoting the concert, including club owners and operators, and employees of defendants Anheuser-Busch and McLaughlin & Moran, Inc., and coordinating the timing of these promotional activities prior to and during the concert of February 20, 2003.

398.   Defendant WHJY, Inc. by its employee and agent, Mike Gonsalves, had both the

authority and opportunity to stop or delay Great White's performance over any issue relating to

safety or equipment.

399.   WHJY, Inc. knew or should have known that the concert and band that it

promoted was one that customarily utilized pyrotechnics and that Great White had repeatedly,

openly and illegally used unlicensed pyrotechnics on its tour on numerous occasions prior to

February 20, 2003.  Minimal inquiry by WHJY, Inc. would have disclosed the inherently

dangerous nature of the band's performance, a performance that WHJY knew or should have

known would begin with the setting off of illegal pyrotechnics before a proximate audience.

400.   By virtue of these special circumstances, WHJY, Inc. owed a duty as the

promoter and sponsor of the concert Great White was to perform in West Warwick at The

- 91 -

Station on February 20, 2003, to make minimal inquiry sufficient to discover the dangers of the band's performance. Additionally, WHJY, Inc.'s allowing use of the trademark or servicemark, "WHJY" without making such minimal inquiry into the quality or safety of the product or services associated with it constituted naked licensing of the mark which deceived, or tended to deceive, the public, including Plaintiffs.

401. WHJY, Inc.'s duty derived from its special role in supporting and promoting the concert and from its superior knowledge of the likelihood and probability that Great White would utilize proximate pyrotechnics in an illegal fashion in a proximate setting such as that at The Station.

402. WHJY, Inc. breached its duty to patrons of the Great White concert at The Station in West Warwick on February 20, 2003, and their negligence caused deaths and severe personal injuries to plaintiffs.

## COUNT XXIX
## WHJY, INC. AND/OR CAPSTAR – NEGLIGENCE

403. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 395 through 402 of this Complaint.

404. This Count seeks on behalf of all plaintiffs, damages from WHJY, Inc. or its successor in interest, Capstar Radio Operating Company, arising out of its negligence.

## CLEAR CHANNEL BROADCASTING, INC.

405. The defendant Clear Channel Broadcasting, Inc. is a Nevada corporation with a principal place of business in San Antonio, Texas. Upon information and belief, Clear Channel Broadcasting, Inc. is engaged in the business of ownership and operation of radio stations and owns WHJY, Inc. and its successor in interest, Capstar, supra.

406. Clear Channel, in addition to owning WHJY, Inc. and Capstar, directly manages and controls the day-to-day affairs and policies of the radio station, WHJY-FM, including

without limitation, decisions made with respect to promotion and sponsorship of concerts such as that which occurred at The Station on February 20, 2003.

407.   Clear Channel is directly responsible as principal for the actions of its agent, WHJY, Inc., as more specifically set out in Count XXIX.

408.   Defendant Clear Channel's negligence, both individually and as principal of the agent WHJY, Inc., caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXX
## CLEAR CHANNEL BROADCASTING, INC. – NEGLIGENCE

409.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 395 through 408 of this Complaint.

410.   This Count seeks damages on behalf of all plaintiffs from Clear Channel Broadcasting, Inc. arising out of its negligence.

## DENIS P. LAROCQUE, ANTHONY BETTENCOURT AND MALCOLM MOORE , IN HIS CAPACITY AS FINANCE DIRECTOR OF THE TOWN OF WEST WARWICK

411.   The defendant Denis Larocque is a resident of West Warwick, Kent County, Rhode Island and is and was at relevant times Fire Inspector for the Town of West Warwick and responsible for enforcement of fire safety laws in the Town.

412.   Defendant Anthony Bettencourt is an individual who, at all times material hereto, was employed as a police officer by the Town of West Warwick, Rhode Island.

413.   Malcolm Moore is Finance  Director of the Town of West Warwick, a municipal corporation organized and existing under the laws of the State of Rhode Island.

414.   Denis Larocque as Fire Inspector was responsible for inspecting commercial structures in the Town of West Warwick and for enforcing the fire code and building laws of the State of Rhode Island within West Warwick.

415. Denis Larocque, Fire Inspector, negligently failed to properly inspect the premises at 211 Cowesett Avenue in West Warwick, Rhode Island at various times prior to February 20, 2003; additionally, said inspections were relied upon by the owners of The Station and of the realty.

416. As a proximate result of Defendant Denis P. Larocque's negligence plaintiffs suffered injuries or death.

417. On February 20, 2003, Anthony Bettencourt was employed as a special detail officer to provide security services, and enforce the law, at The Station nightclub before and during the Great White Concert.

418. Defendant Anthony Bettencourt negligently failed to use reasonable care in carrying out his duties, failed to monitor and enforce occupancy restrictions, and permitted dangerous and unlawful overcrowding of the premises, failed to enforce Rhode Island's laws for the permit and use of pyrotechnics and otherwise negligently failed to perform his functions intended to protect the patrons of The Station, including plaintiffs.

419. As a direct and proximate result of Anthony Bettencourt's negligence plaintiffs suffered injuries or death.

420. The negligence of the Town of West Warwick, by and through its agents, servants and employees, included without limitation:

    a.      failing to adequately inspect The Station for safety hazards and violations;

    b.      failing to enforce fire safety laws, regulations and standards;

    c.      allowing unsafe numbers of persons on the premises during the performance;

    d.      allowing the use of dangerous pyrotechnic devices during performances at The Station;

    e.      allowing a public nuisance and a fire hazard to exist for an unreasonable period of time, namely, The Station nightclub;

    f.      failing to provide sufficient security and fire protection for a function at which they knew or should have known large numbers of people would be in attendance;

    g.     knowing of numerous dangerous conditions and fire hazards at The Station and failing to remedy those conditions or ordering them to be remedied;

    h.     failing to protect members of the public for the foreseeable risk of serious injury or death at The Station;

    i.      failing to adequately oversee, supervise, monitor, evaluate, train and/or retrain those performing inspections of The Station;

    j.     through the actions and inactions of its "detail policeman" Anthony Bettencourt who was performing a non-governmental function typically performed by private security services on the night of the fire, allowing (a) through (i), above; and

    k.     responsibility for other acts and failures to act that may become apparent after discovery.

    421.   The negligence of Denis P. Larocque and the Town of West Warwick was egregious; his actions constituted a lack of good faith performance of his duties.

    422.   The negligence of Anthony Bettencourt was egregious.

    423.   The negligence of all other agents, servants and employees of the Town of West Warwick including, without limitation, that of Building Inspector Stephen D. Murray, was egregious.

    424.   All plaintiffs provided the Town of West Warwick with a Notice of Presentment of Claim, pursuant to Rhode Island General Laws Section 45-15-5.

    425.   The egregious negligence of the Town of West Warwick through Denis Larocque, and/or Anthony Bettencourt and/or Stephen D. Murray (or other agents, servants or employees) was a proximate cause of plaintiffs' deaths and injuries.

## COUNT XXXI
## MALCOLM MOORE IN HIS CAPACITY AS FINANCE DIRECTOR
## OF THE TOWN OF WEST WARWICK – NEGLIGENCE

426. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 411 through 425 of this Complaint.

427. This Count seeks, on behalf of all plaintiffs, damages from Malcolm Moore in his capacity as Finance Director of the Town of West Warwick for the town's negligence.

## COUNT XXXII
## DENIS P. LAROCQUE, FIRE INSPECTOR – NEGLIGENCE

428. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 411 through 425 of this Complaint.

429. This Count seeks, on behalf of all plaintiffs, damages from Denis Larocque, Fire Inspector of the Town West Warwick, individually and in his official capacity, arising out of his negligence.

## COUNT XXXIII
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

430. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 411 through 425 of this Complaint.

431. Several of Defendant Larocque's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## COUNT XXXIV
## ANTHONY BETTENCOURT – NEGLIGENCE

432. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 411 through 425 of this Complaint.

433.    This Count seeks, on behalf of all plaintiffs, damages from Anthony Bettencourt

individually and in his official capacity for his negligence.

### STATE OF RHODE ISLAND AND
### IRVING J. OWENS, FIRE MARSHAL

434.    The defendant, State of Rhode Island, is a body politic and through its Fire

Marshal, Irving J. Owens, is directly responsible for the enactment and enforcement of fire

safety laws within the State of Rhode Island.  In particular, the State of Rhode Island and

Irving J. Owens, Fire Marshal are responsible for inspecting commercial structures such as The

Station in the Town of West Warwick and for enforcing fire code and building code laws of the

State of Rhode Island with respect to said structures.

435.    The State of Rhode Island and Fire Marshal Irving J. Owens negligently and

carelessly failed to properly inspect The Station and enforce the laws of the State of Rhode

proximately causing injuries and deaths to plaintiffs.  Such negligence included failing to

enforce appropriate capacity limitations and exit requirements, failing to discover and order

remedied highly flammable interior finish within the building and failing to properly train and

supervise state personnel responsible for enforcing the fire safety laws of Rhode Island.

436.    The negligence of  the State of Rhode Island and Irving J. Owens, Fire Marshal,

was egregious.

### COUNT XXXV
### STATE OF RHODE ISLAND – NEGLIGENCE

437.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 434 through 436 of this Complaint.

438.    This Count seeks, on behalf of all plaintiffs, damages from the State of Rhode

Island arising out of its egregious negligence.

## COUNT XXXVI
## IRVING J. OWENS – NEGLIGENCE

439.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 434 through 436 of this Complaint.

440.    This Count seeks, on behalf of all plaintiffs, damages from Irving J. Owens, individually and in his official capacity, arising from his egregious negligence.

## BRIAN BUTLER

441.    The defendant Brian Butler is a resident of Rhode Island.  Butler was on February 20, 2003 an employee of either TVL Broadcasting, Inc. or STC Broadcasting, Inc. which owned WPRI Channel 12..

442.    On February 20, 2003, Brian Butler, at the direction of Jeffrey Derderian, a Channel 12 investigative reporter for WPRI, and in the course of his employment with WPRI Channel 12 and TVL and/or STC, was acting as a cameraman and filming within The Station and documenting its condition and operation as a nightclub.  At relevant times Butler was directed by Derderian in the course of his employment as to what and where he should film with a large videocamera with an attached lighting source.

443.    Butler filmed both before and after the instant when the fire ignited polyurethane foam on the stage of The Station.  Rather than leaving the building, or assisting patrons of The Station to escape, Butler stood within the building, directly in an egress route, and filmed distressed patrons trying to leave the nightclub.  Butler's actions directly impeded the exit of patrons and contributed to the slowdown, backup and additional log jam for those attempting to leave through the main exit.

444.    Defendant Brian Butler's negligence, both individually and as an employee of TVL and/or STC, caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXXVII
## BRIAN BUTLER – NEGLIGENCE

445.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 441 through 444 of this Complaint.

446.   This Count seeks damages on behalf of all plaintiffs from Brian Butler arising out of his negligence as an individual and agent of TVL and/or STC.

## TVL BROADCASTING, INC.

447.   The defendant TVL Broadcasting, Inc. ("TVL") is a corporation doing business in Rhode Island as WPRI-Channel 12.

448.   At relevant times TVL employed defendant Jeffrey Derderian as an investigative reporter and defendant Brian Butler as a cameraman.

449.   The defendant TVL is vicariously responsible for the actions of defendant Butler and defendant Derderian on February 20, 2003, performed in the course of their employment for TVL and WPRI Channel 12.

450.   Defendant TVL's negligence, by and through the actions of its agents, servants and employees Jeffrey Derderian and Brian Butler, caused deaths of and severe personal injuries to plaintiffs.

## COUNT XXXVIII
## TVL BROADCASTING, INC. – NEGLIGENCE

451.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 279, 441 through 444 and 447 through 450 of this Complaint.

452.   This Count seeks damages on behalf of all plaintiffs from TVL arising out of its negligence.

## STC BROADCASTING, INC.

453.   STC Broadcasting, Inc. ("STC") is a corporation doing business in Rhode Island as WPRI – Channel 12.

454.   At relevant times STC employed defendant Jeffrey Derderian as an investigative reporter and defendant Brian Butler as cameraman.

455.   Defendant STC is vicariously responsible for the actions of defendant Butler and defendant Derderian on February 20, 2003, performed in the course of their employment.

456.   Defendant STC's negligence, by and through the actions of its agents, servants and employees Butler and Derderian caused deaths of and personal injuries to plaintiffs.

### COUNT XXXIX
### STC BROADCASTING, INC. – NEGLIGENCE

457.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 279, 441 through 444 and 453 through 456 of this Complaint.

458.   This Count seeks damages on behalf of all plaintiffs from STC Broadcasting, Inc. arising out of its negligence.

### BARRY H. WARNER

459.   The defendant Barry H. Warner resides in West Warwick, Kent County, Rhode Island.

460.   At relevant times defendant Barry H. Warner was acting within the scope of his employment by American Foam Corporation.

461.   Defendant Barry H. Warner sold foam plastic, upon information and belief polyurethane foam, as an acoustical foam to defendants Jeffrey Derderian, Michael Derderian and DERCO, LLC to be used at The Station.  Such sale took place prior to February 20, 2003.

462. The foam that Warner sold on behalf of American Foam was highly flammable, non-flame-retardant, toxic, inappropriate for acoustical use and inappropriate for interior finish in places of public assembly.

463. Defendant Barry H. Warner negligently expressly or impliedly represented that the foam was safe for its intended purpose and failed to provide appropriate warnings despite his knowledge of the dangerous characteristics of the foam. Defendant Barry H. Warner did all this both as an individual and as an agent, servant or employee of American Foam Corporation.

464. Warner's negligence caused deaths of and severe personal injuries to plaintiffs.

## COUNT XL
## BARRY H. WARNER – NEGLIGENCE

465. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 459 through 464 of this Complaint.

466. This Count seeks damages on behalf of all plaintiffs from Barry H. Warner arising out of his negligence.

## COUNT XLI
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

467. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 459 through 464 of this Complaint.

468. Several of defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

## COUNT XLII
## LUNA TECH, INC. – NEGLIGENCE

469.    The defendant Luna Tech, Inc. is an Alabama corporation with a principal place of business at Owens Cross Roads, Alabama, and having sufficient minimum contact with Rhode Island to be subject to this Court's jurisdiction.

470.    Luna Tech manufactured the pyrotechnics used by the band Great White at The Station on February 20, 2003.

471.    At all material times defendant owed a duty of care to ultimate users or recipients of its pyrotechnics, including plaintiffs, in designing, manufacturing, testing, inspecting, marketing, producing, selling it or distributing the pyrotechnics.

472.    The injuries and deaths sustained by plaintiffs were the direct and proximate result of defendant's negligent breach of its duties including but not limited to:

      a.    failure to use due care in the manufacture, sale or distribution of the pyrotechnics;

      b.    failure to make or cause to be made reasonable research and/or testing as to the effects of the pyrotechnics;

      c.    failure to otherwise adequately test the pyrotechnics before providing it, distributing it or selling it;

      d.    failure to warn potential and actual users of the product of its potential hazards;

      e.    failure to properly and adequately educate users about the use and hazards of the pyrotechnics.

      f.    failing to provide adequate protection for persons coming into contact with the pyrotechnics, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

      g.    otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, labeling, packaging, provision, distribution and/or sale of the pyrotechnics.

## COUNT XLIII
## LUNA TECH, INC. – STRICT LIABILITY

473. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 468 through 471 of this Complaint.

474. The pyrotechnics sold and/or distributed by defendant contained defects making them unreasonably dangerous to all actual and potential users or recipients of the pyrotechnics, including plaintiffs.

475. Plaintiffs had no knowledge of the defective condition of the pyrotechnics.

476. The pyrotechnics were in substantially the same condition, when used, as when they left defendant's control.

477. As a direct and proximate result of the failure of the pyrotechnics sold and/or distributed by defendant, plaintiffs suffered death or injuries.

## COUNT XLIV
## LUNA TECH, INC. – BREACH OF WARRANTY

478. Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 469 through 472.

479. Defendant Luna Tech, Inc. breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said pyrotechnics.

480. As a direct and proximate result of said breach, Plaintiffs suffered death or injuries.

## COUNT XLV
## HIGH TECH SPECIAL EFFECTS, INC. - NEGLIGENCE

481. The defendant High Tech Special Effects, Inc. is a Tennessee corporation with a principal place of business in Bartlett, Tennessee and having sufficient minimum contact with Rhode Island to be subject to this Court's jurisdiction.

482.   High Tech Special Effects, Inc. sold to Great White the pyrotechnics that Great White used at The Station on February 20, 2003.

483.   At all material times defendant owed a duty of care to ultimate users or recipients of its pyrotechnics, including plaintiffs, in designing, manufacturing, testing, inspecting, marketing, producing, selling it or distributing the pyrotechnics.

484.   The injuries and deaths sustained by plaintiffs were the direct and proximate result of defendant's negligent breach of its duties including but not limited to:

a.   failure to use due care in the manufacture, sale or distribution of the pyrotechnics;

b.   failure to make or cause to be made reasonable research and/or testing as to the effects of the pyrotechnics;

c.   failure to otherwise adequately test the pyrotechnics before providing it, distributing it or selling it;

d.   failure to warn potential and actual users of the product of its potential hazards;

e.   failure to properly and adequately educate users about the use and hazards of the pyrotechnics.

f.   failing to provide adequate protection for persons coming into contact with the pyrotechnics, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

g.   otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, labeling, packaging, provision, distribution and/or sale of the pyrotechnics.

## COUNT XLVI
## HIGH TECH SPECIAL EFFECTS, INC.
## STRICT LIABILITY

485.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 481 through 484 of this Complaint.

486.    The pyrotechnics sold and/or distributed by defendant contained defects making them unreasonably dangerous to all actual and potential users or recipients of the pyrotechnics, including plaintiffs.

487.    Plaintiffs had no knowledge of the defective condition of the pyrotechnics.

488.    The pyrotechnics were in substantially the same condition, when used, as when it left defendant's control.

489.    As a direct and proximate result of the failure of the pyrotechnics sold and/or distributed by defendant, plaintiffs suffered death or injuries.

## COUNT XLVII
## HIGH TECH SPECIAL EFFECTS, INC. – BREACH OF WARRANTY

490.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 481 through 484.

491.    Defendant High Tech Special Effects, Inc. breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said pyrotechnics.

492.    As a direct and proximate result of said breach, Plaintiffs suffered death or injuries.

## COUNT XLVIII
## AMERICAN FOAM CORPORATION – NEGLIGENCE

493.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 of this Complaint.

494.    Defendant American Foam Corporation is a Rhode Island corporation with a principal place of business in Johnston, Rhode Island.

495.    Defendant American Foam Corporation distributed, sold and placed into the stream of commerce a foam plastic which was, upon information and belief, polyurethane

foam. American Foam Corporation's employee, Barry H. Warner, acting within the scope of

his employment, sold said foam to be used as acoustical interior finish at The Station

nightclub. Such sale took place prior to February 20, 2003. The foam that was sold was

highly flammable, non-flame-retardant, toxic, inappropriate for use as an acoustical foam and

inappropriate for use on interior finish in places of public assembly.

496. Defendant American Foam Corporation, both individually and through its

employee Barry Warner, negligently represented that the foam was safe and appropriate for its

intended use.

497. At all material times, defendant owed a duty of care to ultimate users or

recipients of the foam product, including plaintiffs, in designing, manufacturing, testing,

inspecting, marketing, producing, selling and/or distributing the foam product.

498. The injuries and deaths sustained by plaintiffs were the direct and proximate

result of defendant's negligent breach of its duties including but not limited to its:

      a.    failure to use due care in the sale or distribution of the foam product;

      b.    failure to make or cause to be made reasonable research and/or testing as to
           the effects of the foam product;

      c.    failure to otherwise adequately test the foam product before providing it,
           distributing it or selling it;

      d.    failure to warn potential and actual users of the product of its potential
           hazards;

      e.    failure to properly and adequately educate users about the use and hazards of
           the foam product.

      f.    failing to provide adequate protection for persons coming into contact with the
           foam product, such as plaintiffs, from suffering the injuries which plaintiffs
           suffered; and

      g.    otherwise failing to use due care in the testing, inspecting, marketing
           advertising, packaging, labeling, provision, distribution and/or sale of the
           foam product.

### COUNT XLIX
### AMERICAN FOAM CORPORATION
### STRICT LIABILITY

499.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 492 through 497 of this Complaint.

500.   The foam product sold and/or distributed by defendant contained defects making

it unreasonably dangerous to all actual and potential users or recipients of the foam product,

including plaintiffs.

501.   Plaintiffs had no knowledge of the defective condition of the foam product.

502.   The foam product was in substantially the same condition, when used, as when it

left defendant's control.

503.   As a direct and proximate result of the failure of the foam product sold and/or

distributed by defendant, plaintiffs suffered death or injuries.

### COUNT L
### AMERICAN FOAM CORPORATION – BREACH OF WARRANTY

504.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 493 through 498.

505.   Defendant American Foam Corporation breached express and implied warranties

of merchantability and fitness in the manufacture, sale and distribution of said polyurethane

foam.

506.   As a direct and proximate result of said breach, Plaintiffs suffered death or

injuries.

### COUNT LI
### LEGGETT & PLATT INCORPORATED – NEGLIGENCE

507.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 513 through 532 of this Complaint.

508.   Leggett & Platt Incorporated is a Missouri corporation doing business as Crest-Hood Foam Company, Inc. and Crest Foam.

509.   Leggett & Platt designed, manufactured and/or distributed and/or sold foam product to American Foam Corporation, which product caused severe injuries and death to plaintiffs.

510.   Defendant, at all material times, owed a duty of due care to all purchasers and/or ultimate users and/or recipients of the foam product, including plaintiffs, in the design, manufacture, testing, inspecting, marketing, producing, selling or distributing of the foam product.

511.   The injuries and deaths sustained by plaintiffs were the direct and proximate result of defendant's negligent breach of its duties including, but not limited to, defendant's:

     a.     failure to use due care in the manufacture, sale or distribution of the foam product.

     b.     failure to make or cause to be made reasonable research and/or testing as to the effects of the foam product;

     c.     failure to otherwise adequately test the foam product before providing it, distributing it or selling it;

     d.     failure to warn potential and actual users of the product of its potential hazards;

     e.     failure to properly and adequately educate users about the use and hazards of the foam product.

     f.     failing to provide adequate protection for persons coming into contact with the foam product, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

     g.     otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, packaging, labeling, provision, distribution and/or sale of the foam product.

### COUNT LII
### LEGGETT & PLATT INCORPORATED
### STRICT LIABILITY

512.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 508 through 511 of this Complaint.

513.   The foam product sold and/or distributed by defendant Leggett & Platt was

defective and unreasonably dangerous as designed, manufactured, marketed, distributed and

sold for the following reasons:

> A.   It was manufactured and sold untreated without any flame-retardant chemicals.  The defendant's foam possessed extraordinarily dangerous and defective flammability properties.
>
> B.   It ignited too easily, burned too vigorously once ignited and produced unreasonably dangerous toxic smoke and gases.
>
> C.   It was manufactured, sold, marketed and distributed without adequate warnings.
>
> > 1.   The requirement that defendant Leggett & Platt adequately and accurately warn derives, in part, from the fact that there is no safe use for defendant's foam where a known fire hazard can exist or where fire is of the slightest concern.
> >
> > 2.   For decades the polyurethane foam industry including Leggett & Platt has recognized that certain applications and locations of use of polyurethane foam were "high risk" because of the fire characteristics of polyurethane foam.  Some high-risk applications included the use of polyurethane foam in places of public assembly such as auditoria, hotels and nightclubs.  The extreme danger of non-flame retardant polyurethane foam in such places, and the magnitude of the potential harm in the event of fire, has been well recognized.
> >
> > 3.   The polyurethane foam industry, and particularly sophisticated manufacturers such as Leggett & Platt, have for decades had specialized knowledge of the extreme flammability hazard of the type of polyurethane foam present in The Station at the time of the fire.
> >
> > 4.   The general public does not possess this specialized expertise and knowledge.  Therefore, the hazardous nature of flexible

polyurethane under fire conditions is not known or obvious to the public.

D.    It was manufactured, sold, marketed and distributed without any necessary product stewardship.

    1.    There was a need for defendant Leggett & Platt to follow "product stewardship" practices in order to insure that hazardous products would not be used in an environment that would be a high risk to the public.

    2.    Product stewardship is a widely used practice that follows the use of raw materials, intermediate products and final goods through the design, manufacture, marketing, distribution, use and disposal to insure proper application and use in order to protect the public.

    3.    Leggett & Platt had to be satisfied that its foam plastic product was going to be used in a safe application before it sold it.

    4.    In order to provide a product that meets the physical and safety needs of the occupancy and manner in which it will be used, it is essential that foam producers be fully aware of all of the possible and potential applications of the foam that they produce.

514.   Defendant had actual knowledge that its foam in question was defective and unreasonably dangerous as designed, manufactured, marketed, distributed and sold.

515.   Defendant's polyurethane foam in question contained a manufacturing defect that caused plaintiffs harm.

516.   Defendant's polyurethane foam in question contained a design defect that caused plaintiffs harm.

517.   The defendant's foam which was on the walls of The Station nightclub on February 20, 2003 was in the exact same condition chemically and flammability-wise as it was when it was manufactured and sold by the defendant Leggett & Platt Incorporated.

518.   Plaintiffs had no knowledge of the defective condition of the foam product.

519.    The extremely hazardous, unreasonably dangerous and defective foam in question was the proximate cause of the plaintiffs' injuries and deaths which occurred as a result of The Station nightclub fire.

520.    The use to which this foam was put, i.e., being installed on the walls of The Station nightclub as acoustical insulation was reasonably foreseeable to defendant Leggett & Platt Incorporated.

A.    The use and misuse of foam plastic as an interior finish in a place of public assembly, i.e., a nightclub, is a foreseeable hazard. Leggett & Platt should have taken steps to prevent it.

B.    Polyurethane foam used as an interior finish has been the primary fuel load in fatal fires in places of public assembly for decades. There have been repeated, highly-publicized instances of application of polyurethane foam products as interior finishes in places of public assembly, i.e., nightclubs which were involved in fire, and the presence of the product was either the primary fuel load or a significant contributor to the fire.

C.    One of the defendant's intended uses for which flexible polyurethane foam is manufactured and sold is as a sound absorption or "sound-proofing" material, which was its use at the time of the fire.

D.    There would be no way for the general public to distinguish between flame retardant flexible polyurethane foam and the non-flame retardant variety.

E.    Defendant knew that its polyurethane foam product in question, untreated with any fire retardant chemicals, was often installed in places of public assembly including nightclubs such as The Station nightclub.

521.    It was foreseeable to defendant Leggett & Platt that a source of ignition would exist in The Station nightclub and lead to the ignition of the defendant's defective foam.

A.    Ignition, either accidentally or intentionally, of a hazardous product in a nightclub environment is foreseeable.

522.    It was foreseeable to defendant Leggett & Platt that state and town fire inspectors would fail to identify and require removal of defendant's defective foam.

A.    It was foreseeable that the great majority of state and town fire inspectors, including those in West Warwick, were not sufficiently trained

- 111 -

and not being certified in accordance with National Fire Protection Association Standards.

B.   Due to that inadequate training, and also due to budgetary limitations and other reasons, it was foreseeable by manufacturers such as Leggett & Platt, that such fire inspectors could be expected to inadequately inspect nightclubs such as The Station nightclub.

523.   It was foreseeable to Leggett & Platt that its defective foam would be ignited in an overcrowded nightclub with inadequate exists and other means of egress.

A.   Nightclub fires have the potential to cause high fire casualties due to maximum or over-capacity crowds, especially on weekends, during live music performances, or because of special events or promotions.

B.   In the event of a fire, there is a very significant risk that a full or over capacity crowd would panic or would otherwise have difficulty completely exiting.

524.   The defendant's defective foam constituted an active hazard, not a passive condition.

525.   The defendant's defective foam was not a remote cause of the fire but was an immediate cause.

526.   But for the defectiveness and unreasonable dangerousness of defendant's product as designed, manufactured, marketed, sold, distributed and installed, The Station nightclub fire would not have occurred on February 20, 2003.

527.   Defendant's foam in question was not a bulk product as would be protected by § 5 Restatement Torts, 3rd.

528.   Defendant's foam in question was not a component part but was an end product itself.

529.   Defendant's foam in question was not integrated into any other product.

530.    Even if defendant's foam was a component and even if it was integrated into another product, defendant's foam in question caused the product it was integrated into to be defective.

531.    This integration and defect caused the plaintiffs harm.

532.    Even if defendant's foam in question was a component and even if it was integrated into another product, the integration was done by an unsophisticated buyer.

### COUNT LIII
### LEGGETT & PLATT INCORPORATED – BREACH OF WARRANTY

533.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 513 through 532 of this Complaint.

534.    Defendant Leggett & Platt Incorporated breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said polyurethane foam.

535.    As a direct and proximate result of said breach, Plaintiffs suffered injuries or death.

### COUNT LIV
### L & P FINANCIAL SERVICES CO. – NEGLIGENCE

536.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 541 through 560 of this Complaint.

537.    L&P Financial Services Co. is a Delaware corporation which, in conjunction with defendant Leggett & Platt, sold foam product which injured plaintiffs.

538.    Defendant, at all material times, owed a duty of due care to all purchasers and/or ultimate users and/or recipients, and/or people coming in contact with the foam product in the design, manufacture, testing, inspecting, marketing, producing, selling and/or distributing of the foam product.

539.    The injuries and death suffered by the plaintiffs were a direct and proximate result of Defendant's negligent breach of its duties including but not limited to Defendant's:

    a.    failure to use due care in the manufacture, sale or distribution of the foam product.

    b.    failure to make or cause to be made reasonable research and/or testing as to the effects of the foam product;

    c.    failure to otherwise adequately test the foam product before providing it, distributing it or selling it;

    d.    failure to warn potential and actual users of the product of its potential hazards;

    e.    failure to properly and adequately educate users about the use and hazards of the foam product.

    f.    failing to provide adequate protection for persons coming into contact with the foam product, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

    g.    otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, packaging, provision, distribution and/or sale of the foam product.

## COUNT LV
## L&P FINANCIAL SERVICES CO. – STRICT LIABILITY

540.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 537 through 539 of this Complaint.

541.    The foam product sold and/or distributed by defendant L&P Financial Services was defective and unreasonably dangerous as designed, manufactured, marketed, sold and distributed for the following reasons:

    A.    It was manufactured and sold untreated without any flame-retardant chemicals.  The defendant's foam possessed extraordinarily dangerous and defective flammability properties.

    B.    It ignited too easily, burned too vigorously once ignited and produced unreasonably dangerous toxic smoke and gases.

C.    It was manufactured, sold, marketed and distributed without adequate warnings.

1.    The requirement that defendant L&P Financial Services adequately and accurately warn derives, in part, from the fact that there is no safe use for defendant's foam where a known fire hazard can exist or where fire is of the slightest concern.

2.    For decades the polyurethane foam industry including L&P Financial Services has recognized that certain applications and locations of use of polyurethane foam were "high risk" because of the fire characteristics of polyurethane foam. Some high-risk applications included the use of polyurethane foam in places of public assembly such as auditoria, hotels and nightclubs. The extreme danger of non-flame retardant polyurethane foam in such places, and the magnitude of the potential harm in the event of fire, has been well recognized.

3.    The polyurethane foam industry, and particularly sophisticated manufacturers such as L&P Financial Services Co., have for decades had specialized knowledge of the extreme flammability hazard of the type of polyurethane foam present in The Station at the time of the fire.

4.    The general public does not possess this specialized expertise and knowledge. Therefore, the hazardous nature of flexible polyurethane under fire conditions is not known or obvious to the public.

D.    It was manufactured, sold, marketed and distributed without any necessary product stewardship.

1.    There was a need for defendant L&P Financial Services to follow "product stewardship" practices in order to insure that hazardous products would not be used in an environment that would be a high risk to the public.

2.    Product stewardship is a widely used practice that follows the use of raw materials, intermediate products and final goods through the design, manufacture, marketing, distribution, use and disposal to insure proper application and use in order to protect the public.

3.    L&P Financial Services had to be satisfied that its foam plastic product was going to be used in a safe application before it sold it.

4.    In order to provide a product that meets the physical and safety needs of the occupancy and manner in which it will be used, it is

essential that foam producers be fully aware of all of the possible
and potential applications of the foam that they produce.

542.   Defendant had actual knowledge that its foam in question was defective and
unreasonably dangerous as designed, manufactured, marketed, distributed and sold.

543.   Defendants' polyurethane foam in question contained a manufacturing defect that
caused plaintiffs harm.

544.   Defendants' polyurethane foam in question contained a design defect that caused
plaintiffs harm.

545.   The defendant's foam which was on the walls of The Station nightclub on
February 20, 2003 was in the exact same condition chemically and flammability-wise as it was
when it was manufactured and sold by the defendant L&P Financial Services.

546.   Plaintiffs had no knowledge of the defective condition of the foam product.

547.   The extremely hazardous, unreasonably dangerous and defective foam in
question was the proximate cause of the plaintiffs' injuries and deaths which occurred as a
result of The Station nightclub fire.

548.   The use to which this foam was put, i.e., being installed on the walls of The
Station nightclub as acoustical insulation was reasonably foreseeable to defendant L&P
Financial Services Co.

      A.     The use and misuse of foam plastic as an interior finish in a place of public
assembly, i.e., a nightclub, is a foreseeable hazard. L&P Financial
Services Co. should have taken steps to prevent it.

      B.     Polyurethane foam used as an interior finish has been the primary fuel
load in fatal fires in places of public assembly for decades. There have
been repeated, highly-publicized instances of application of polyurethane
foam products as interior finishes in places of public assembly, i.e.,
nightclubs which were involved in fire, and the presence of the product
was either the primary fuel load or a significant contributor to the fire.

      C.     One of the defendant's intended uses for which flexible polyurethane foam is manufactured and sold is as a sound absorption or "sound-proofing" material, which was its use at the time of the fire.

      D.     There would be no way for the general public to distinguish between flame retardant flexible polyurethane foam and the non-flame retardant variety.

      E.     Defendant knew that its polyurethane foam product in question, untreated with any fire retardant chemicals, was often installed in places of public assembly including nightclubs such as The Station nightclub.

549.   It was foreseeable to defendant L&P Financial Services that a source of ignition would exist in The Station nightclub and lead to the ignition of the defendant's defective foam.

      A.     Ignition, either accidentally or intentionally, of a hazardous product in a nightclub environment is foreseeable.

550.   It was foreseeable to defendant L&P Financial Services that state and town fire inspectors would fail to identify and require removal of defendant's defective foam.

      A.     It was foreseeable that the great majority of state and  town fire inspectors, including those in West Warwick, were not sufficiently trained and not being certified in accordance with National Fire Protection Association Standards.

      B.     Due to that inadequate training, and also due to budgetary limitations and other reasons, it was foreseeable by manufacturers such as L&P Financial Services, that such fire inspectors could be expected to inadequately inspect nightclubs such as The Station nightclub.

551.   It was foreseeable to L&P Financial Services that its defective foam would be ignited in an overcrowded nightclub with inadequate exists and other means of egress.

      A.     Nightclub fires have the potential to cause high fire casualties due to maximum or over-capacity crowds, especially on weekends, during live music performances, or because of special events or promotions.

      B.     In the event of a fire, there is a very significant risk that a full or over capacity crowd would panic or would otherwise have difficulty completely exiting.

552.   The defendant's defective foam constituted an active hazard, not a passive condition.

553.    The defendant's defective foam was not a remote cause of the fire but was an immediate cause.

554.    But for the defectiveness and unreasonable dangerousness of defendant's product as designed, manufactured, marketed, sold, distributed and installed, The Station nightclub fire would not have occurred on February 20, 2003.

555.    Defendant's foam in question was not a bulk product as would be protected by § 5 Restatement Torts, 3rd.

556.    Defendant's foam in question was not a component part but was an end product itself.

557.    Defendant's foam in question was not integrated into any other product.

558.    Even if defendant's foam was a component and even if it was integrated into another product, defendant's foam in question caused the product it was integrated into to be defective.

559.    This integration and defect caused the plaintiffs harm.

560.    Even if defendant's foam in question was a component and even if it was integrated into another product, the integration was done by an unsophisticated buyer.

## COUNT LVI
## L&P FINANCIAL SERVICES CO. – BREACH OF WARRANTY

561.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 541 through 560 of this Complaint.

562.    Defendant L&P Financial Services Co. breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said polyurethane foam.

563.    As a direct and proximate result of said breach, Plaintiffs suffered injuries or death.

## COUNT LVII
## GENERAL FOAM CORPORATION – NEGLIGENCE

564.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 569 through 588 of this Complaint.

565.    Defendant General Foam Corporation is a Delaware corporation which manufactured, designed, advertised, marketed, sold or otherwise distributed foam product which injured plaintiffs.

566.    Defendant, at all material times, owed a duty of due care to all purchasers and/or ultimate users and/or recipients, and/or people coming in contact with the foam product in the design, manufacture, testing, inspecting, marketing, producing, selling and/or distributing of the foam product.

567.    The injuries and deaths suffered by plaintiffs were a direct and proximate result of defendant's negligent breach of its duties including but not limited to defendant's:

    a.    failure to use due care in the manufacture, sale or distribution of the foam product.

    b.    failure to make or cause to be made reasonable research and/or testing as to the effects of the foam product;

    c.    failure to otherwise adequately test the foam product before providing it, distributing it or selling it;

    d.    failure to warn potential and actual users of the product of its potential hazards;

    e.    failure to properly and adequately educate users about the use and hazards of the foam product.

    f.    failing to provide adequate protection for persons coming into contact with the foam product, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

    g.    otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, packaging, provision, distribution and/or sale of the foam product.

## COUNT LVIII
## GENERAL FOAM CORPORATION – STRICT LIABILITY

568.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 564 through 567 of this Complaint.

569.    The foam product sold and/or distributed by defendant General Foam was defective and unreasonably dangerous as designed, manufactured, marketed, distributed and sold for the following reasons:

      A.    It was manufactured and sold untreated without any flame-retardant chemicals.  The defendant's foam possessed extraordinarily dangerous and defective flammability properties.

      B.    It ignited too easily, burned too vigorously once ignited and produced unreasonably dangerous toxic smoke and gases.

      C.    It was manufactured, sold, marketed and distributed without adequate warnings.

          1.    The requirement that defendant General Foam adequately and accurately warn derives, in part, from the fact that there is no safe use for defendant's foam where a known fire hazard can exist or where fire is of the slightest concern.

          2.    For decades the polyurethane foam industry including General Foam has recognized that certain applications and locations of use of polyurethane foam were "high risk" because of the fire characteristics of polyurethane foam.  Some high-risk applications included the use of polyurethane foam in places of public assembly such as auditoria, hotels and nightclubs.  The extreme danger of non-flame retardant polyurethane foam in such places, and the magnitude of the potential harm in the event of fire, has been well recognized.

          3.    The polyurethane foam industry, and particularly sophisticated manufacturers such as General Foam Corporation, have for decades had specialized knowledge of the extreme flammability hazard of the type of polyurethane foam present in The Station at the time of the fire.

          4.    The general public does not possess this specialized expertise and knowledge.  Therefore, the hazardous nature of flexible polyurethane under fire conditions is not known or obvious to the public.

D.    It was manufactured, sold, marketed and distributed without any necessary product stewardship.

    1.    There was a need for defendant General Foam to follow "product stewardship" practices in order to insure that hazardous products would not be used in an environment that would be a high risk to the public.

    2.    Product stewardship is a widely used practice that follows the use of raw materials, intermediate products and final goods through the design, manufacture, marketing, distribution, use and disposal to insure proper application and use in order to protect the public.

    3.    General Foam had to be satisfied that its foam plastic product was going to be used in a safe application before it sold it.

    4.    In order to provide a product that meets the physical and safety needs of the occupancy and manner in which it will be used, it is essential that foam producers be fully aware of all of the possible and potential applications of the foam that they produce.

570.    Defendant had actual knowledge that its foam in question was defective and unreasonably dangerous as designed, manufactured, marketed, distributed and sold.

571.    Defendant's polyurethane foam in question contained a manufacturing defect that caused plaintiffs harm.

572.    Defendant's polyurethane foam in question contained a design defect that caused plaintiffs harm.

573.    The defendant's foam which was on the walls of The Station nightclub on February 20, 2003 was in the exact same condition chemically and flammability-wise as it was when it was manufactured and sold by the defendant General Foam.

574.    Plaintiffs had no knowledge of the defective condition of the foam product.

575.    The extremely hazardous, unreasonably dangerous and defective foam in question was the proximate cause of the plaintiffs' injuries and deaths which occurred as a result of The Station nightclub fire.

576.   The use to which this foam was put, i.e., being installed on the walls of The Station nightclub as acoustical insulation was reasonably foreseeable to defendant General Foam Corporation.

      A.    The use and misuse of foam plastic as an interior finish in a place of public assembly, i.e., a nightclub, is a foreseeable hazard.  General Foam should have taken steps to prevent it.

      B.    Polyurethane foam used as an interior finish has been the primary fuel load in fatal fires in places of public assembly for decades.  There have been repeated, highly-publicized instances of application of polyurethane foam products as interior finishes in places of public assembly, i.e., nightclubs which were involved in fire, and the presence of the product was either the primary fuel load or a significant contributor to the fire.

      C.    One of the defendant's intended uses for which flexible polyurethane foam is manufactured and sold is as a sound absorption or "sound-proofing" material, which was its use at the time of the fire.

      D.    There would be no way for the general public to distinguish between flame retardant flexible polyurethane foam and the non-flame retardant variety.

      E.    Defendant knew that its polyurethane foam product in question, untreated with any fire retardant chemicals, was often installed in places of public assembly including nightclubs such as The Station nightclub.

577.   It was foreseeable to defendant General Foam that a source of ignition would exist in The Station nightclub and lead to the ignition of the defendant's defective foam.

      A.    Ignition, either accidentally or intentionally, of a hazardous product in a nightclub environment is foreseeable.

578.   It was foreseeable to defendant General Foam that state and town fire inspectors would fail to identify and require removal of defendant's defective foam.

      A.    It was foreseeable that the great majority of state and town fire inspectors, including those in West Warwick, were not sufficiently trained and not being certified in accordance with National Fire Protection Association Standards.

      B.    Due to that inadequate training, and also due to budgetary limitations and other reasons, it was foreseeable by manufacturers such as General Foam,

that such fire inspectors could be expected to inadequately inspect nightclubs such as The Station nightclub.

579. It was foreseeable to General Foam that its defective foam would be ignited in an overcrowded nightclub with inadequate exists and other means of egress.

    A.    Nightclub fires have the potential to cause high fire casualties due to maximum or over-capacity crowds, especially on weekends, during live music performances, or because of special events or promotions.

    B.    In the event of a fire, there is a very significant risk that a full or over capacity crowd would panic or would otherwise have difficulty completely exiting.

580. The defendant's defective foam constituted an active hazard, not a passive condition.

581. The defendant's defective foam was not a remote cause of the fire but was an immediate cause.

582. But for the defectiveness and unreasonable dangerousness of defendant's product as designed, manufactured, marketed, sold, distributed and installed, The Station nightclub fire would not have occurred on February 20, 2003.

583. Defendant's foam in question was not a bulk product as would be protected by § 5 Restatement Torts, 3rd.

584. Defendant's foam in question was not a component part but was an end product itself.

585. Defendant's foam in question was not integrated into any other product.

586. Even if defendant's foam was a component and even if it was integrated into another product, defendant's foam in question caused the product it was integrated into to be defective.

587. This integration and defect caused the plaintiffs harm.

588.   Even if defendant's foam in question was a component and even if it was integrated into another product, the integration was done by an unsophisticated buyer.

## COUNT LIX
## GENERAL FOAM CORPORATION – BREACH OF WARRANTY

589.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 569 through 588 of this Complaint.

590.   Defendant General Foam Corporation breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said polyurethane foam.

591.   As a direct and proximate result of said breach, Plaintiffs suffered injuries or death.

## COUNT LX
## GFC FOAM, LLC – NEGLIGENCE

592.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 598 through 617 of this Complaint.

593.   Defendant GFC Foam, LLC is a Delaware limited liability company which at times material hereto, sold defective foam product which injured plaintiffs to American Foam Corporation.

594.   On information and belief GFC Foam LLC designed and manufactured foam product which injured plaintiffs.

595.   Defendant, at all material times, owed a duty of due care to all purchasers and/or ultimate users and/or recipients, and/or people coming in contact with the foam product in the design, manufacture, testing, inspecting, marketing, producing, selling and/or distributing of the foam product.

596.    The injuries and deaths suffered by plaintiffs were a direct and proximate result

of defendant's negligent breach of its duties including but not limited to defendant's:

a.    failure to use due care in the manufacture, sale or distribution of the foam product.

b.    failure to make or cause to be made reasonable research and/or testing as to the effects of the foam product;

c.    failure to otherwise adequately test the foam product before providing it, distributing it or selling it;

d.    failure to warn potential and actual users of the product of its potential hazards;

e.    failure to properly and adequately educate users about the use and hazards of the foam product.

f.    failing to provide adequate protection for persons coming into contact with the foam product, such as plaintiffs, from suffering the injuries which plaintiffs suffered; and

g.    otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, packaging, provision, distribution and/or sale of the foam product.

## COUNT LXI
## GFC FOAM, LLC – STRICT LIABILITY

597.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271

and 593 through 596 of this Complaint.

598.    The foam product sold and/or distributed by defendant GFC Foam, LLC was

defective and unreasonably dangerous as designed, manufactured, marketed, distributed and

sold for the following reasons:

A.    It was manufactured and sold untreated without any flame-retardant chemicals. The defendant's foam possessed extraordinarily dangerous and defective flammability properties.

B.    It ignited too easily, burned too vigorously once ignited and produced unreasonably dangerous toxic smoke and gases.

C.   It was manufactured, sold, marketed and distributed without adequate warnings.

    1.   The requirement that defendant GFC Foam adequately and accurately warn derives, in part, from the fact that there is no safe use for defendant's foam where a known fire hazard can exist or where fire is of the slightest concern.

    2.   For decades the polyurethane foam industry including GFC Foam has recognized that certain applications and locations of use of polyurethane foam were "high risk" because of the fire characteristics of polyurethane foam. Some high-risk applications included the use of polyurethane foam in places of public assembly such as auditoria, hotels and nightclubs. The extreme danger of non-flame retardant polyurethane foam in such places, and the magnitude of the potential harm in the event of fire, has been well recognized.

    3.   The polyurethane foam industry, and particularly sophisticated manufacturers such as GFC Foam, LLC, have for decades had specialized knowledge of the extreme flammability hazard of the type of polyurethane foam present in The Station at the time of the fire.

    4.   The general public does not possess this specialized expertise and knowledge. Therefore, the hazardous nature of flexible polyurethane under fire conditions is not known or obvious to the public.

D.   It was manufactured, sold, marketed and distributed without any necessary product stewardship.

    1.   There was a need for defendant GFC Foam to follow "product stewardship" practices in order to insure that hazardous products would not be used in an environment that would be a high risk to the public.

    2.   Product stewardship is a widely used practice that follows the use of raw materials, intermediate products and final goods through the design, manufacture, marketing, distribution, use and disposal to insure proper application and use in order to protect the public.

    3.   GFC Foam had to be satisfied that its foam plastic product was going to be used in a safe application before it sold it.

    4.   In order to provide a product that meets the physical and safety needs of the occupancy and manner in which it will be used, it is

essential that foam producers be fully aware of all of the possible and potential applications of the foam that they produce.

599. Defendant had actual knowledge that its foam in question was defective and unreasonably dangerous as designed, manufactured, marketed, distributed and sold.

600. Defendant's polyurethane foam in question contained a manufacturing defect that caused plaintiffs harm.

601. Defendant's polyurethane foam in question contained a design defect that caused plaintiffs harm.

602. The defendant's foam which was on the walls of The Station nightclub on February 20, 2003 was in the exact same condition chemically and flammability-wise as it was when it was manufactured and sold by the defendant GFC Foam.

603. Plaintiffs had no knowledge of the defective condition of the foam product.

604. The extremely hazardous, unreasonably dangerous and defective foam in question was the proximate cause of the plaintiffs' injuries and deaths which occurred as a result of The Station nightclub fire.

605. The use to which this foam was put, i.e., being installed on the walls of The Station nightclub as acoustical insulation was reasonably foreseeable to defendant GFC Foam, LLC.

      A.    The use and misuse of foam plastic as an interior finish in a place of public assembly, i.e., a nightclub, is a foreseeable hazard. GFC Foam should have taken steps to prevent it.

      B.    Polyurethane foam used as an interior finish has been the primary fuel load in fatal fires in places of public assembly for decades. There have been repeated, highly-publicized instances of application of polyurethane foam products as interior finishes in places of public assembly, i.e., nightclubs which were involved in fire, and the presence of the product was either the primary fuel load or a significant contributor to the fire.

C.    One of the defendant's intended uses for which flexible polyurethane foam is manufactured and sold is as a sound absorption or "sound-proofing" material, which was its use at the time of the fire.

D.    There would be no way for the general public to distinguish between flame retardant flexible polyurethane foam and the non-flame retardant variety.

E.    Defendant knew that its polyurethane foam product in question, untreated with any fire retardant chemicals, was often installed in places of public assembly including nightclubs such as The Station nightclub.

606.    It was foreseeable to defendant GFC Foam that a source of ignition would exist in The Station nightclub and lead to the ignition of the defendant's defective foam.

A.    Ignition, either accidentally or intentionally, of a hazardous product in a nightclub environment is foreseeable.

607.    It was foreseeable to defendant GFC Foam that state and town fire inspectors would fail to identify and require removal of defendant's defective foam.

A.    It was foreseeable that the great majority of state and town fire inspectors, including those in West Warwick, were not sufficiently trained and not being certified in accordance with National Fire Protection Association Standards.

B.    Due to that inadequate training, and also due to budgetary limitations and other reasons, it was foreseeable by manufacturers such as GFC Foam, that such fire inspectors could be expected to inadequately inspect nightclubs such as The Station nightclub.

608.    It was foreseeable to GFC Foam that its defective foam would be ignited in an overcrowded nightclub with inadequate exists and other means of egress.

A.    Nightclub fires have the potential to cause high fire casualties due to maximum or over-capacity crowds, especially on weekends, during live music performances, or because of special events or promotions.

B.    In the event of a fire, there is a very significant risk that a full or over capacity crowd would panic or would otherwise have difficulty completely exiting.

609.    The defendant's defective foam constituted an active hazard, not a passive condition.

610.    The defendant's defective foam was not a remote cause of the fire but was an immediate cause.

611.    But for the defectiveness and unreasonable dangerousness of defendant's product as designed, manufactured, marketed, sold, distributed and installed, The Station nightclub fire would not have occurred on February 20, 2003.

612.    Defendant's foam in question was not a bulk product as would be protected by § 5 Restatement Torts, 3rd.

613.    Defendant's foam in question was not a component part but was an end product itself.

614.    Defendant's foam in question was not integrated into any other product.

615.    Even if defendant's foam was a component and even if it was integrated into another product, defendant's foam in question caused the product it was integrated into to be defective.

616.    This integration and defect caused the plaintiffs harm.

617.    Even if defendant's foam in question was a component and even if it was integrated into another product, the integration was done by an unsophisticated buyer.

### COUNT LXII
### GFC FOAM, LLC – BREACH OF WARRANTY

618.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 598 through 617 of this Complaint.

619.    Defendant GFC Foam, LLC breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said polyurethane foam.

620.    As a direct and proximate result of said breach, Plaintiffs suffered injuries or death.

## COUNT LXIII
## FOAMEX LP – SUCCESSOR LIABILITY FOR GENERAL FOAM CORPORATION

621.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 564 through 591 of this Complaint.

622.    Defendant Foamex LP is a Delaware limited partnership and is the successor entity to General Foam Corporation and is legally responsible to respond to plaintiff's claims in this action against General Foam Corporation.

## COUNT LXIV
## FOAMEX INTERNATIONAL INC. – LIABILITY FOR FOAMEX LP

623.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 621 through 622 of this Complaint.

624.    Foamex International Inc. is a Delaware corporation which, on information and belief, is a general partner, and owns 100% of defendant Foamex LP.

625.    Foamex International Inc. so dominates and controls the affairs of Foamex LP that it acts as the alter ego of Foamex LP and is responsible to plaintiffs to respond to their claims in this action.

## COUNT LXV
## FMXI, INC. – LIABILITY AS GENERAL PARTNER

626.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 621 through 622 of this Complaint.

627.    Defendant FMXI, Inc. is, on information and belief, a corporation organized in the State of Delaware and at times material hereto, was the managing general partner of Foamex LP.

628.    FMXI, Inc., as general partner, is responsible for the liability of Foamex LP and is legally responsible to respond to plaintiffs' claims in this action.

## COUNT LXVI
## PMC, INC.

629.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 564 through 591 of this Complaint.

630.    Defendant PMC, Inc. is, on information and belief, a Delaware corporation, a subsidiary of PMC Global, Inc., and, on information and belief, the parent company of General Foam Corporation.

631.    Defendant PMC, Inc. so dominated and controlled the affairs of General Foam Corporation to make it legally responsible for the actions of General Foam Corporation as alleged in this complaint.

## COUNT LXVII
## PMC GLOBAL, INC.

632.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 629 through 631 of this Complaint.

633.    Defendant PMC Global, Inc. is a Delaware corporation which, on information and belief, owns 100% of the capital stock of PMC, Inc.

634.    Defendant PMC Global, Inc. so dominated and controlled the affairs of its wholly owned subsidiary, PMC, Inc. to make it legally responsible to respond the plaintiffs for the claims asserted in this complaint.

## COUNT LXVIII
## JBL INCORPORATED f/k/a James B. Lansing Sound,
## Incorporated d/b/a JBL Professional - NEGLIGENCE

635.    JBL Incorporated, formerly known as James B. Lansing Sound, Incorporated d/b/a JBL Professional (hereinafter "JBL"), is a foreign corporation duly organized and existing under the laws of the State of Delaware, and has sufficient minimum contacts with Rhode Island to be subject to this Court's jurisdiction.

636.    At all times material hereto on and prior to February 20, 2003, JBL through its
agents, employees, and/or assigns was in the business of designing, manufacturing, testing,
inspecting, marketing, producing, distributing, and selling encased electronic devices utilized
for the amplification of sound (hereinafter "Amplifiers") and intended, at least in part, for use
in various venues of public assembly.

637.    At all times material hereto on and prior to February 20, 2003, JBL knew or
should have known of the use of said amplifiers and speakers as stage furnishings in close
proximity to performers and members of the general public and of the dangerous
characteristics and properties of materials contained in and on such amplifiers and speakers.

638.    At all times material hereto on and prior to February 20, 2003, JBL owed a duty
to purchasers, users and to persons for whom exposure to said amplifiers and speakers was
reasonably foreseeable, to exercise due care in the design, manufacture, testing, inspection,
marketing, production, distribution and sale of said amplifiers.

639.    The injuries and deaths suffered by plaintiffs were a direct and proximate result
of defendant's negligent breach of its duties including but not limited to defendant's:

a.    failure to use due care in the manufacture, sale or distribution of the amplifiers;

b.    failure to make or cause to be made reasonable research and/or testing as to the
effects of the amplifiers;

c.    failure to otherwise adequately test the amplifiers before providing them,
distributing them or selling them;

d.    failure to warn potential and actual users of the product of its potential hazards;

e.    failure to properly and adequately educate users about the use and hazards of the
product.

f.    failing to provide adequate protection for persons coming into contact with the
product, such as plaintiffs, from suffering the injuries which plaintiffs suffered;
and

- 132 -

g.    otherwise failing to use due care in the design, manufacture, testing, inspecting, marketing advertising, packaging, provision, distribution and/or sale of the product.

640.    On or about February 20, 2003, Plaintiffs and/or decedents were exposed to the dangerous characteristics and properties of said amplifiers/speakers in the combustion of, inter alia, highly flammable foam on and within the speakers.

641.    Plaintiffs and/or decedents were at all times material hereto, in the exercise of due care.

642.    Prior to February 20, 2003, JBL through its agents and/or employees, breached its said duty owed in that it was negligent in their manner of designing, manufacturing, testing, inspecting, marketing, producing, distributing and selling said amplifiers/speakers.

643.    As a direct and proximate result of the negligence of JBL and/or its agents, employees, and/or assigns, said amplifiers were a proximate cause of the personal injuries of the Plaintiffs and/or deaths of the decedents in the combustion of the so-called Station Nightclub.

## COUNT LXIX
## JBL INCORPORATED - STRICT LIABILITY

644.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 635 through 643 of this Complaint.

645.    At the time JBL sold and/or distributed said amplifiers they were unreasonably dangerous in their characteristics and properties to all users and/or to all persons for whom exposure to said amplifiers was reasonably foreseeable.

646.    At all times material hereto, Plaintiffs and/or the decedents had no knowledge of the said dangerous characteristics and properties of said amplifiers.

647.    At all times when said amplifiers were used and/or when those persons and/or Plaintiffs for whom exposure to said amplifiers was reasonably foreseeable, were actually

exposed, said amplifiers were in essentially the same condition as when they left the care custody and/or control of JBL.

648.    As a direct and proximate result of using and/or being exposed to the dangerous characteristics and properties of said amplifiers, which were sold and/or distributed by JBL, Plaintiffs and/or the decedents suffered severe personal injuries and/or death.

## COUNT LXX
## JBL INCORPORATED – BREACH OF WARRANTY

649.    Plaintiffs repeat and incorporate by reference paragraphs 1 through 271 and 635 through 643 of this Complaint.

650.    Defendant JBL Incorporated breached express and implied warranties of merchantability and fitness in the manufacture, sale and distribution of said amplifiers.

651.    As a direct and proximate result of said breach, Plaintiffs suffered injuries or death.

## ESSEX INSURANCE COMPANY, MULTI-STATE INSPECTIONS, INC. AND HIGH CALIBER INSPECTIONS, INC.

652.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 of this Complaint.

653.    The Essex Insurance Company (hereinafter "Essex") is a corporation licensed to sell liability and property and casualty insurance in the State of Rhode Island.  It issued a policy of commercial liability insurance number 3CH 0430 to Michael Derderian, effective from March 24, 2002 to March 24, 2003 for The Station at 211 Cowesett Ave., West Warwick.

654.    Multi-State Inspections, Inc. (hereinafter "Multi-State") is a corporation organized under the laws of the State of Rhode Island for the business of performing insurance inspections.

655.    High Caliber Inspections, Inc. (hereinafter "High Caliber") is a corporation organized under the laws of the State of Rhode Island for the business of performing insurance inspections.

656.    At various times, including but not limited to April 4, 1996, March 25, 1998 and October 8, 2002, Essex, through its agents and servants, Multi-State and High Caliber, conducted inspections of the premises at 211 Cowesett Ave. Essex, Multi-State and High Caliber were negligent in performing said inspections. Their negligence included without limitation:

a.    failing to adequately inspect The Station for safety hazards and fire/building code violations;

b.    failing to note the presence of highly flammable surface treatments;

c.    failing to note the inadequacy of exits;

d.    failing to note practices of overcrowding;

e.    allowing the use of dangerous pyrotechnic devices during performances at The Station;

f.    knowing of numerous dangerous conditions and fire hazards at The Station and failing to remedy those conditions or order the insureds to remedy them;

g.    failing to protect members of the public for the foreseeable risk of serious injury or death at The Station;

h.    failing to adequately oversee, supervise, monitor, evaluate, train and/or retrain those performing inspections of The Station; and

i.    other acts and failures to act that may become apparent after discovery.

657.    Defendants Essex, Multi-State and High Caliber, in undertaking to perform said inspections, recognized or should have recognized that the competent performance of the inspections was necessary for the protection of third persons, including Plaintiffs.

658.    Essex' insured, Michael Derderian, relied upon the results and recommendations of said negligently performed inspections.

659.   The negligence of Essex, Multi-State and High Caliber, and each of them, was a proximate cause of Plaintiffs' deaths and injuries.

## COUNT LXXI
## ESSEX INSURANCE COMPANY – NEGLIGENCE

660.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 653 through 659 of this Complaint.

661.   This Count seeks, on behalf of all plaintiffs, damages from Essex Insurance Company for its negligence.

## COUNT LXXII
## MULTI-STATE INSPECTIONS, INC. – NEGLIGENCE

662.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 653 through 659 of this Complaint.

663.   This Count seeks, on behalf of all plaintiffs, damages from Multi-State Inspections, Inc. for its negligence.

## COUNT LXXIII
## HIGH CALIBER INSPECTIONS, INC. – NEGLIGENCE

664.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 653 through 659 of this Complaint.

665.   This Count seeks, on behalf of all plaintiffs, damages from High Caliber Inspections, Inc. for its negligence.

## UNDERWRITERS AT LLOYD'S, LONDON AND
## GRESHAM & ASSOCIATES OF R.I., INC.

666.   Those Underwriters At Lloyd's, London Subscribing To Policy No. 05409 (hereinafter, "Lloyd's") is a surplus lines insurer approved to issue policies in the State of Rhode Island, having a designated agent for service in Rhode Island, and having sufficient minimum contacts with Rhode Island to be subject to this Court's jurisdiction.

667.    Lloyd's issued a policy of liability insurance to Michael Derderian for his business at The Station numbered 05409 and effective March 24, 2000 to March 24, 2001.

668.    A Lloyd's syndicate also issued a policy of liability insurance to Michael Derderian for his business at The Station numbered 08209 and effective March 24, 2001 to March 24, 2002.

669.    A Lloyd's syndicate had previously issued a policy of liability insurance to Howard Julian d/b/a The Station numbered LJD/SPO164 and effective August 14, 1999 to August 14, 2000 (but cancelled on March 9, 2000).

670.    Gresham & Associates of R.I., Inc. (hereinafter "Gresham"), previously known as Excess Insurance Underwriters of R.I., Inc.,  is a corporation organized under the laws of the State of Rhode Island in the business of selling insurance.

671.    At various times, including but not limited to May-June, 2000 Lloyd's, through its agents and servants Excess Insurance Underwriters of R.I., Inc.  (and others) conducted inspections of the insured premises.

672.    Lloyd's and Gresham (then known as Excess) were negligent in performing said inspections.  Their negligence included without limitation:

    a.    failing to adequately inspect The Station for safety hazards and fire/building code violations;

    b.    failing to note the presence of highly flammable surface treatments;

    c.    failing to note the inadequacy of exits;

    d.    failing to note practices of overcrowding;

    e.    allowing the use of dangerous pyrotechnic devices during performances at The Station;

    f.    knowing of numerous dangerous conditions and fire hazards at The Station and failing to remedy those conditions or order the insureds to remedy them;

g.     failing to protect members of the public for the foreseeable risk of serious injury or death at The Station;

h.     failing to adequately oversee, supervise, monitor, evaluate, train and/or retrain those performing inspections of The Station;

i.     other acts and failures to act that may become apparent after discovery.

673.   Defendants Lloyd's and Gresham, in undertaking to perform said inspections, recognized or should have recognized that the competent performance of the inspections was necessary for the protection of third persons, including Plaintiffs.

674.   Lloyd's and Gresham's insureds, Julian and Derderian, relied upon the results and recommendations of said negligently performed inspections.

675.   The negligence of Lloyd's and Gresham, and each of them, was a proximate cause of Plaintiffs' deaths and injuries.

## COUNT LXXIV
## UNDERWRITERS AT LLOYD'S, LONDON – NEGLIGENCE

676.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 666 through 675 of this Complaint.

677.   This Count seeks, on behalf of all plaintiffs, damages from Underwriters at Lloyd's, London for its negligence.

## COUNT LXXV
## GRESHAM & ASSOCIATES OF R.I., INC. – NEGLIGENCE

678.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 666 through 675 of this Complaint.

679.   This Count seeks, on behalf of all plaintiffs, damages from Gresham & Associates of R.I., Inc. for its negligence.

## ABC BUS, INC. d/b/a ABC BUS LEASING, INC.

680.    ABC Bus, Inc. (hereinafter "ABC") is a corporation organized under the laws of the state of Missouri, doing business under the assumed name, "ABC Bus Leasing, Inc." and having sufficient contact with the State of Rhode Island to be subject to this Court's jurisdiction.  At all times relevant to the instant case it provided transportation of Great White's personnel and equipment into, and within, the State of Rhode Island.  It is a common carrier providing bus transportation in interstate commerce.

681.    On or about February 20, 2003 ABC, through its agents, servants and employees, transported more than 25 kilograms of explosive material (fireworks) in interstate commerce and into Rhode Island without registration or permit, state or federal, allowing same to be used by unlicensed persons in close proximity to the public, within a confined, highly flammable space.

682.    Said actions by ABC were negligent and in violation of state and federal laws, including but not limited to R.I.G.L. Title 11, Chapter 13, Section 8 and 49 C.F.R. §107.601(a)(2).

683.    Plaintiffs bring the following claims under common law of negligence and under R.I.G.L. §9-1-2.  The negligence and violations of criminal law by ABC were a proximate cause of Plaintiffs' deaths and injuries.

### COUNT LXXVI
### ABC BUS, INC. d/b/a ABC BUS LEASING, INC. – NEGLIGENCE

684.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 680 through 683 of this Complaint.

685.    This Count seeks, on behalf of all plaintiffs, damages from ABC Bus, Inc., for its negligence.

## COUNT LXXVII
## VIOLATION OF RHODE ISLAND GENERAL LAWS
## TITLE 9, CHAPTER 1, SECTION 2

686.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 680 through 683 of this Complaint.

687.    Several of defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

### SUPERSTAR SERVICES LLC

688.    Defendant Superstar Services LLC (hereinafter "Superstar") is a Delaware limited liability company having sufficient contacts with the State of Rhode Island to be subject to this Court's jurisdiction. At all times relevant to the instant case it provided transportation of Great White's personnel and equipment into, and within, the State of Rhode Island. It is a common carrier providing bus transportation in interstate commerce.

689.    On or about February 20, 2003, defendant Superstar, through its agents, servants and employees, transported more than 25 kilograms of explosive material (fireworks) in interstate commerce and into Rhode Island without registration or permit, state or federal, allowing same to be used by unlicensed persons in close proximity to the public, within a confined, highly flammable space.

690.    Said actions by Superstar were negligent and in violation of state and federal laws, including but not limited to R.I.G.L. Title 11, Chapter 13, Section 8 and 49 C.F.R. §107.601(a)(2).

691.    Plaintiffs bring the following claims under common law of negligence and under R.I.G.L. §9-1-2. The negligence and violations of criminal law by Superstar were a proximate cause of Plaintiffs' death and injuries.

**COUNT LXXVIII**
**SUPERSTAR SERVICES LLC – NEGLIGENCE**

692.    Plaintiffs repeat and incorporate by reference paragraphs 1 through 271 and 688 through 691 of this Complaint.

693.    This Count seeks, on behalf of all Plaintiffs, damages from Superstar Services LLC for its negligence.

**COUNT LXXIX**
**VIOLATION OF RHODE ISLAND GENERAL LAWS**
**TITLE 9, CHAPTER 1, SECTION 2**

694.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 688 through 691 of this Complaint.

695.    Several of defendant's actions or omissions constitute the commission of a crime or offense and, accordingly, plaintiffs may recover damages in this action for defendant's actions pursuant to Rhode Island General Laws Title 9, Chapter 1, Section 2.

**COUNT LXXX**
**"JOHN DOE" DEFENDANTS – NEGLIGENCE**

696.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 of this Complaint.

697.    "John Doe" defendants are unknown defendants who manufactured, distributed, sold or installed non-flame-retardant foam or other defective products in use at The Station nightclub on February 20, 2003.

698.    "John Doe" defendants are, further, unknown defendants who inspected the premises after installation of the foam or other defective products in use at The Station nightclub prior to February 20, 2003.

- 141 -

699.    "John Doe" defendants are, further, unknown defendants who promoted, managed, or produced the appearance of Great White at The Station nightclub on February 20, 2003.

700.    "John Doe" defendants are, further, unknown defendants who received property from Triton Realty-related persons or entities with intent to hinder, delay or defraud Plaintiffs.

701.    "John Doe" defendants, individually and collectively, were negligent and such negligence was a proximate cause of plaintiffs' injuries or death.

## COUNT LXXXI
## "JOHN DOE" DEFENDANTS – STRICT LIABILITY

702.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 271 and 696 through 701 of this Complaint.

703.    The products manufactured, distributed, sold or installed by "John Doe" defendants contained defects making them unreasonably dangerous to all actual and potential users or recipients of the foam products, including plaintiffs.

704.    Plaintiffs had no knowledge of the defective condition of the products.

705.    The products were in substantially the same condition, when used, as when they left these defendants' control.

706.    As a direct and proximate result of the failure of the products plaintiffs suffered death or injuries.

## PRAYERS FOR RELIEF

**WHEREFORE:**

**Claims of Decedents' Estates**

(a) All Plaintiffs representing estates of decedents pray for compensatory damages on behalf of said estates for the decedents' medical expenses, funeral expenses, lost wages and lost earning capacity during survival period, pain and suffering both

physical and mental and loss of life's enjoyment against all defendants*, pursuant to R.I.G.L. §10-7-5, et seq., jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Wrongful Death Claims**

(b) All Plaintiffs representing wrongful death beneficiaries pray for damages against all defendants* pursuant to R.I.G.L. §10-7-1, et seq., jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Death Cases – Loss of Spousal Consortium**

(c) All Plaintiffs suing in their capacities as surviving spouses, or representatives of surviving spouses, of decedents pray for damages against all defendants* for loss of spousal consortium pursuant to R.I.G.L. §10-7-1.2(a), jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Death Cases – Loss of Parental Society and Companionship**

(d) All Plaintiffs suing in their capacities as surviving minor children, or representatives of surviving minor children, of decedents pray for damages against all defendants* for loss of parental society and companionship pursuant to R.I.G.L. §10-7-1.2(b), jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Personal Injuries**

(e) All Plaintiffs suing individually, or representatives of plaintiffs suing individually, who were injured in The Station nightclub fire hereby pray for compensatory damages against all defendants* for their personal injuries sustained as a result of the fire including, but not limited to, medical expenses, lost wages and loss of earning capacity, pain and suffering both physical and mental, scarring, deformity, and

disability, all of which may be permanent, jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Personal Injuries – Loss of Spousal Consortium**

(f) All Plaintiffs suing in their capacity as spouse, or representatives of a spouse, of a person who was injured in The Station nightclub fire pray for damages for loss of consortium pursuant to R.I.G.L. §9-1-41(a) against all defendants*, jointly and severally, in such amounts as a jury deems proper, plus interest and costs.

**Personal Injuries – Loss of Parental Society and Companionship**

(g) All Plaintiffs suing in their capacity as minor children or as representatives of minor children of persons injured in The Station nightclub fire pray for damages for loss of parental society and companionship pursuant to R.I.G.L. §9-1-41(b), against all defendants*, jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

**Bystander Emotional Distress**

(h) All Plaintiffs who are closely related to a victim of The Station nightclub fire and who suffered emotional distress from perceiving their loved ones' pain and suffering during and after the fire pray for compensatory damages against all defendants*, jointly and severally, in such amounts as a jury deems proper, plus interest and costs;

* Plaintiffs #38 (Cordier) make no claims against Defendant D16;  Plaintiffs #50 (King), #72 (DeMaio), #100 (Arpin), #102 (Beese) and #163 (Choquette) make no claims against Defendants D1, D2 and D3;  Plaintiffs #164 (N. Conant) and #165 (S. Conant) make no claims against Defendant D8;  Plaintiff #224 (Trudeau) makes no claims against Defendants D14, D15 or D16;

Plaintiff #86 (Rager) makes no claim against Defendant D9; Plaintiff #131 (Prudhomme) makes no claim against Defendant D20.

**JURY TRIAL CLAIM**

Plaintiffs claim trial by jury on all issues so triable.

**Plaintiffs #13d and e, #17 through #63, inclusive, #133 through #190, inclusive, #225 through #233, inclusive and #240,**

By their attorneys,

*Mark S. Mandell (EMS)*

Mark S. Mandell, Esq. #0502
Mandell, Schwartz & Boisclair, Ltd.
One Park Row
Providence, RI 02903
Tel: 401-273-8330
Fax: 401-751-7830
[email: msmandell@msb.com]

*Max Wistow (EMS)*

Max Wistow, Esq. #0330
John P. Barylick, Esq. #1907
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903-2824
Tel: 401-831-2700
Fax: 401-272-9752
[email: mw@wistbar.com]

**Plaintiffs #1 through #12, #13a,b and c, #14 through #16, inclusive, #80 through #132, inclusive, and #222 and #223,**

By their attorney and Vice-Chair, Plaintiffs' Steering Committee,

*Patrick T. Jones (EMS)*

Patrick T. Jones, Esq. #6636
Cooley Manion Jones LLP
21 Custom House Street
Boston, MA 02110
Tel: 617-737-3100
Fax: 617-737-3113
[email: pjones@cmj-law.com]

**Plaintiffs #191 and 239,**

By their attorney,

*Charles N. Redihan (770)*

Charles N. Redihan, Jr., Esq. #1810
Kiernan, Plunkett & Redihan
91 Friendship Street
Providence, RI 02903
Tel: 401-831-2900
Fax: 401-331-7123
[email: credihan@kprlaw.com]


**Plaintiffs #64, #65(a), #66 through #68, inclusive and #192 through #195, inclusive,**

By their attorney,

*Stephen E. Breggia (770)*

Stephen E. Breggia, Esq. #2865
Breggia, Bowen & Grande
395 Smith Street
Providence, RI 02908-3734
Tel: 401-831-1900
Fax: 401-831-0129
[email: sbreggia@bbglaw.us]


**Plaintiffs #69, #70 and #199,**

By their attorney,

*Eva-Marie Mancuso (770)*

Eva-Marie Mancuso, Esq. #3564
Hamel, Waxler, Allen & Collins
387 Atwells Avenue
Providence, RI 02909
Tel: 401-455-3800
Fax: 401-455-3806
[email: emancuso@hwac.com]

**Plaintiffs #65(b), #71 through #75, inclusive, #196 through #215, inclusive, #224 and 234 through 237, inclusive,**

By their attorney,

*Michael A. St. Pierre (SPB)*

Michael A. St. Pierre, Esq. #2553
Revens, Revens & St. Pierre, P.C.
946 Centerville Road
Warwick, RI 02886
Tel: 401-822-2900
Fax: 401-826-3245
[email: mikesp@rrsplaw.com]

**Plaintiffs #76 through #79, inclusive, #215 through #221, inclusive, and 238,**

By their attorney,

*Steven A. Minicucci (SPB)*

Steven A. Minicucci, Esq. #4155
Calvino Law Associates
373 Elmwood Avenue
Providence, RI 02907
Tel: 401-785-9400
Fax: 401-941-1550
[email: sminicucci@calvinolaw.com]

## CERTIFICATION

I hereby certify that an exact copy of the within document was mailed to the following individuals on this **20ᵗ** day of _December_, 2004.

Thomas C. Angelone, Esq.
HODOSH, SPINELLA & ANGELONE, P.C.
One Turks Head Place, Suite 1050
Providence, RI 02903

C. Russell Bengtson, Esq.
CARROLL, KELLY & MURPHY
One Turks Head Place, Suite 400
Providence, RI 02903

Gregory L. Boyer, Esq.
170 Westminster Street, Suite 200
Providence, RI 02903-2196

Stephen E. Breggia, Esq.
BREGGIA, BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Mark D. Cahill, Esq.
Eric Bradford Hermanson, Esq.
CHOATE, HALL & STEWART
Exchange Place, 53 State Street
Boston, MA 02109

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903

Edward M. Crane, Esq.
Deborah Solmor, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
333 West Wacker Drive
Chicago, IL 60606

Michael R. DeLuca, Esq.
GIDLEY, SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903

Anthony F. DeMarco, Esq.
Mark Reynolds, Esq.
REYNOLDS, DEMARCO & BOLAND, LTD
170 Westminster Street, Suite 200
Providence, RI 02903

Gerald C. DeMaria, Esq.
James A. Ruggieri, Esq.
HIGGINS, CAVANAGH & COONEY
The Hay Building
123 Dyer Street
Providence, RI   02903

Marc DeSisto, Esq.
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

Curtis R. Diedrich, Esq.
SLOANE & WALSH, LLP
127 Dorrance Street
Providence, RI  02903-2808

Mark P. Dolan, Esq.
Rice Dolan & Kershaw
170 Westminster Street, Suite 900
Providence, RI  02903

Stephen P. Fogerty, Esq.
HALLORAN & SAGE LLP
315 Post Road West
Westport, CT  06880

Mark Hadden, Esq.
68 Kennedy Plaza, Suite 3
Providence, RI   02903

Carl A. Henlein, Esq.
John R. Crockett, III, Esq.
Susan S. Wettle, Esq.
FROST BROWN TODD
400 West Market Street, 32nd Floor
Louisville, KY  40202-3363

Patrick T. Jones, Esq.
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 02110

Howard Julian
570 Shermantown Road
North Kingstown, RI 02874

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
Ian Ridlon, Esq.
NIXON PEABODY, LLP
One Citizens Plaza, Suite 700
Providence, RI 02903

Ronald Langlois, Esq.
Lauren D. Wilkins, Esq.
SMITH & BRINK
One State Street, Suite 400
Providence, RI 02908

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Thomas W. Lyons, Esq.
STRAUSS, FACTOR, LAING & LYONS
222 Richmond Street, Suite 208
Providence, RI 02903-2914

Richard W. MacAdams, Esq.
MACADAMS & WIECK INCORPORATED
101 Dyer Street, Suite 400
Providence, RI 02903

John R. Mahoney, Esq.
ASQUITH & MAHONEY, LLP
155 South Main Street, 2nd Floor
Providence, RI 02903

Eva Marie Mancuso, Esq.
HAMEL, WAXLER, ALLEN & COLLINS
387 Atwells Avenue
Providence, RI 02909

Mark S. Mandell, Esq.
MANDELL, SCHWARTZ & BOISCLAIR
One Park Row
Providence, RI 02903

W. Thomas McGough, Jr., Esq.
James J. Restivo, Jr., Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA   15219

Edwin F. McPherson, Esq.
MCPHERSON & KALMANSOHN LLP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Steven A. Minicucci, Esq.
William A. Filippo, Esq.
CALVINO LAW ASSOCIATES
373 Elmwood Avenue
Providence, RI 02907

James T. Murphy, Esq.
Kelly N. Michels, Esq.
HANSON CURRAN, LLP
146 Westminster Street
Providence, RI 02903

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
MORRISON MAHONEY LLP
121 South Main Street, Suite 600
Providence, RI 02903

Stephen M. Prignano, Esq.
Stephen J. MacGillivray, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI   02903

Charles N. Redihan, Jr., Esq.
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903

James H. Reilly, III, Esq.
Donald J. Maroney, Esq.
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903

Michael A. St. Pierre, Esq.
REVENS, REVENS & ST. PIERRE, P.C.
946 Centerville Road
Warwick, RI 02886

Andrew J. Trevelise, Esq.
REED SMITH LLP
2500 One Liberty Place
Philadelphia, PA   19103-7301

Earl H. Walker, Esq.
Charles Babcock, Esq.
Nancy W. Hamilton, Esq.
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX  77010

George E. Wolf, III, Esq.
Ann Songer, Esq.
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118

*Jessica D'Iansiris*

# Numerical Victim List

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 1 | Gray | Derek | | | Jones | death |
| 2 | O'Neill | Nicholas | | | Jones | death |
| 3 | Morton | Jason | R. | | Jones | death |
| 4 | Barnett | Thomas | A. | | Jones | death |
| 5 | Mitchell | Donna | M. | | Jones | death |
| 6 | Vieira | Kelly | Lynn | | Jones | death |
| 7 | Avilez | Eugene | | | Jones | death |
| 8 | Young | Robert | D. | | Jones | death |
| 9 | Angers | Stacie | J. | | Jones | death |
| 10 | Marion | Thomas | Frank | Jr. | Jones | death |
| 11 | Fresolo | Michael | | | Jones | death |
| 12 | Longley | Ty | | | Jones | death |
| 13a,b &c | Shubert | Mitchell | | | Jones | death |
| 13d & e | Shubert | Mitchell | | | Mandell/Wistow | death |
| 14 | DiBonaventura | Albert | | | Jones | death |
| 15 | Frederickson | Daniel | | | Jones | death |
| 16 | Croteau | Robert | J. | | Jones | death |
| 17 | Baker | Mary | H. | | Mandell/Wistow | death |
| 18 | Bonardi | William | C. | III | Mandell/Wistow | death |
| 19 | Crisostomi | Alfred | C. | | Mandell/Wistow | death |
| 20 | Dunn | Kevin | | | Mandell/Wistow | death |
| 21 | Durante | Lori | K. | | Mandell/Wistow | death |
| 22 | Gooden | James | F. | | Mandell/Wistow | death |
| 23 | Hamelin | Bonnie | L. | | Mandell/Wistow | death |
| 24 | Hoban | Andrew | R. | | Mandell/Wistow | death |
| 25 | Hoogasian | Michael | B. | | Mandell/Wistow | death |
| 26 | Hoogasian | Sandy | L. | | Mandell/Wistow | death |
| 27 | Latulippe | Dale | L. | | Mandell/Wistow | death |
| 28 | Longiaru | John | M. | | Mandell/Wistow | death |
| 29 | Mancini | Keith | A. | | Mandell/Wistow | death |
| 30 | Mancini | Steven | R. | | Mandell/Wistow | death |
| 31 | Morin | Ryan | M. | | Mandell/Wistow | death |
| 32 | Prouty | Christopher | | | Mandell/Wistow | death |
| 33 | Anderson | Kevin | | | Mandell/Wistow | death |
| 34 | Beauchaine | Laureen | | | Mandell/Wistow | death |
| 35 | Blom | Steven | | | Mandell/Wistow | death |
| 36 | Cabral | Richard | | Jr. | Mandell/Wistow | death |
| 37 | Cartwright | William | W. | | Mandell/Wistow | death |
| 38 | Cordier | Michael | | | Mandell/Wistow | death |



1

# Numerical Victim List

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 39 | D'Andrea | Lisa | | | Mandell/Wistow | death |
| 40 | DiRienzo | Christina | | | Mandell/Wistow | death |
| 41 | Fick | Charline | E. | | Mandell/Wistow | death |
| 42 | Fleming | Thomas | J. | | Mandell/Wistow | death |
| 43 | Florio-DePietro | Rachel | K. | | Mandell/Wistow | death |
| 44 | Gahan | James | C. | IV | Mandell/Wistow | death |
| 45 | Greene | Scott | C. | | Mandell/Wistow | death |
| 46 | Griffith | Scott | S. | | Mandell/Wistow | death |
| 47 | Hoisington | Abbie | L. | | Mandell/Wistow | death |
| 48 | Howorth | Carlton | L. | III | Mandell/Wistow | death |
| 49 | Kelly | Lisa | | | Mandell/Wistow | death |
| 50 | King | Tracy | F. | | Mandell/Wistow | death |
| 51 | Kulz | Michael | J. | | Mandell/Wistow | death |
| 52 | Lapierre | Keith | R. | | Mandell/Wistow | death |
| 53 | McQuarrie | Kristen | L. | | Mandell/Wistow | death |
| 54 | Moreau | Leigh | Ann | | Mandell/Wistow | death |
| 55 | Moscynski | Beth | | | Mandell/Wistow | death |
| 56 | Rakoski | Theresa | L. | | Mandell/Wistow | death |
| 57 | Reisner | Robert | L. | III | Mandell/Wistow | death |
| 58 | Shaw | Rebecca | | | Mandell/Wistow | death |
| 59 | Stark | Victor | L. | | Mandell/Wistow | death |
| 60 | Suffoletto | Benjamin | J. | Jr. | Mandell/Wistow | death |
| 61 | Suffoletto | Linda | D. | | Mandell/Wistow | death |
| 62 | Washburn | Kevin | R. | | Mandell/Wistow | death |
| 63 | Woodmansee | Everett | T. | III | Mandell/Wistow | death |
| 64 | Darby | Matthew | P. | | Breggia | death |
| 65a | Romanoff | Tracey | L. | | Breggia | death |
| 65b | Romanoff | Tracey | L. | | St. Pierre | death |
| 66 | Hyer | Eric | J. | | Breggia | death |
| 67 | Sanetti | Bridget | M. | | Breggia | death |
| 68 | Gillett | Laura | L. | | Breggia | death |
| 69 | Martin | Jeffrey | Wood | | Mancuso | death |
| 70 | Stowers | Jennifer | L. | | Mancuso | death |
| 71 | Corbett | Edward | B. | Jr. | St. Pierre | death |
| 72 | DeMaio | Dina | A. | | St. Pierre | death |
| 73 | Johnson | Derek | B. | | St. Pierre | death |
| 74 | Jacavone-Mancini | Andrea | L. | | St. Pierre | death |
| 75 | Smith | Dennis | J. | | St. Pierre | death |
| 76 | Arruda | Christopher | G. | | Minicucci | death |
| 77 | Fontaine | Mark | A. | | Minicucci | death |

## Numerical Victim List

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 78 | Libera | Stephen | M. | | Minicucci | death |
| 79 | Ervanian | Edward | E. | | Minicucci | death |
| 80 | Sullivan | Kathleen | | | Jones | injuries |
| 81 | Vieira | Scott | J. | | Jones | injuries |
| 82 | Chamberlin | Susan | H. | | Jones | injuries |
| 83 | Van Deusen | John | F. | III | Jones | injuries |
| 84 | Luxton | Robert | J. | | Jones | injuries |
| 85 | Arruda | Elizabeth | | | Jones | injuries |
| 86 | Rager | Robert | W. | | Jones | injuries |
| 87 | Kinan | Joseph | K. | | Jones | injuries |
| 88 | Fairbairn | John | F. | | Jones | injuries |
| 89 | Fairbairn | Andrea | F. | | Jones | injuries |
| 90 | Demos | Jose | R. | | Jones | injuries |
| 91 | O'Melia | Roberta | | | Jones | injuries |
| 92 | Vallante | Fredrick | P. | Jr. | Jones | injuries |
| 93 | Beers | Kerrie-Lynn | | | Jones | injuries |
| 94 | Canillas | Francis | J. | | Jones | injuries |
| 95 | Ciccone | David | | | Jones | injuries |
| 96 | Travis | Christopher | J. | | Jones | injuries |
| 97 | Schmidt | Jon | R. | | Jones | injuries |
| 98 | MacDonald | David | B. | | Jones | injuries |
| 99 | du Fosse' | Paul | | | Jones | injuries |
| 100 | Arpin | John | R. | | Jones | injuries |
| 101 | Gould | Paula | | | Jones | injuries |
| 102 | Beese | Kevin | J. | Sr. | Jones | injuries |
| 103 | O'Donnell | Shaun | | | Jones | injuries |
| 104 | Loftus | Brian | | | Jones | injuries |
| 105 | Costa | Christopher | | | Jones | injuries |
| 106 | Giroux-Brown | Georgette | | | Jones | injuries |
| 107 | Zannella | Stephanie | | | Jones | injuries |
| 108 | Prete | Roberta | J. | | Jones | injuries |
| 109 | Randall | Catherine | | | Jones | injuries |
| 110 | Pezzelli | Edward | | Jr. | Jones | injuries |
| 111 | Pezzelli | Paul | | | Jones | injuries |
| 112 | Barber | Joseph | P. | | Jones | injuries |
| 113 | Gershelis | Irina | M. | | Jones | injuries |
| 114 | Gaumitz | Rodney | J. | | Jones | injuries |
| 115 | Reis | Donna | | | Jones | injuries |
| 116 | Schoepfer | Ronald | S. | | Jones | injuries |
| 117 | Grace | Richard | J. | | Jones | injuries |

# Numerical Victim List

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 118 | Kelly | Tawnya | | | Jones | injuries |
| 119 | Dufour | Gregory | Scott | | Jones | injuries |
| 120 | Wigginton | John | D. | | Jones | injuries |
| 121 | Dunbar | Scott | | | Jones | injuries |
| 122 | Lusardi | Joseph | | | Jones | injuries |
| 123 | Kudryk | John | | | Jones | injuries |
| 124 | Fravala | Brandon | | | Jones | injuries |
| 125 | Fravala | David | | | Jones | injuries |
| 126 | Petrarca | Robin | | | Jones | injuries |
| 127 | Stefani | Michael | | | Jones | injuries |
| 128 | Pomfret | Hollie | A. | | Jones | injuries |
| 129 | Pomfret | Justin | | | Jones | injuries |
| 130 | Prudhomme | Al | | | Jones | injuries |
| 131 | Prudhomme | Charlene | | | Jones | injuries |
| 132 | Harrington | Robert | | | Jones | injuries |
| 133 | Barlow | Robert | A. | | Mandell/Wistow | injuries |
| 134 | Brown | Kristen | A. | | Mandell/Wistow | injuries |
| 135 | Clarke | Patricia | L. | | Mandell/Wistow | injuries |
| 136 | Companatico | Gennaro | | | Mandell/Wistow | injuries |
| 137 | Cook | Richard | | | Mandell/Wistow | injuries |
| 138 | DelSanto | Richard | | | Mandell/Wistow | injuries |
| 139 | DiBona | Joseph | A. | Jr. | Mandell/Wistow | injuries |
| 140 | Fisher | Linda | M. | | Mandell/Wistow | injuries |
| 141 | Flynn | Joseph | M. | | Mandell/Wistow | injuries |
| 142 | Hale | Lisa | C. | | Mandell/Wistow | injuries |
| 143 | Hussey | Laurie | A. | | Mandell/Wistow | injuries |
| 144 | Lucier | Marc | A. | | Mandell/Wistow | injuries |
| 145 | Mallette | Matthew | | | Mandell/Wistow | injuries |
| 146 | Mangan | John | | Jr. | Mandell/Wistow | injuries |
| 147 | McMurray | Frances | P. | | Mandell/Wistow | injuries |
| 148 | Nowicki | Christopher | J. | | Mandell/Wistow | injuries |
| 149 | Pelletier | Paul | M. | | Mandell/Wistow | injuries |
| 150 | Perreault | Michael | | | Mandell/Wistow | injuries |
| 151 | Peters | Christopher | A. | | Mandell/Wistow | injuries |
| 152 | Petrin | Jonathan | | | Mandell/Wistow | injuries |
| 153 | Piscopio | Jason | | | Mandell/Wistow | injuries |
| 154 | Rezendes | John | A. | | Mandell/Wistow | injuries |
| 155 | Sagesta | Catherine | C. | | Mandell/Wistow | injuries |
| 156 | Solitro | George | | | Mandell/Wistow | injuries |
| 157 | Stein | Gary | | | Mandell/Wistow | injuries |

4

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 158 | Stephenson | Melissa | A. | | Mandell/Wistow | injuries |
| 159 | Beauchaine | Ray | F. | Jr. | Mandell/Wistow | injuries |
| 160 | Belson | Julie | | | Mandell/Wistow | injuries |
| 161 | Blom | Kevin | | | Mandell/Wistow | injuries |
| 162 | Bump | Milisa | | | Mandell/Wistow | injuries |
| 163 | Choquette | Jennifer | | | Mandell/Wistow | injuries |
| 164 | Conant | Nicole | | | Mandell/Wistow | injuries |
| 165 | Conant | Stephanie | | | Mandell/Wistow | injuries |
| 166 | Conway | Arthur | J. | III | Mandell/Wistow | injuries |
| 167 | Cushman | Robert | | | Mandell/Wistow | injuries |
| 168 | Dell | Shauna | | | Mandell/Wistow | injuries |
| 169 | Richard | Claude | | | Mandell/Wistow | injuries |
| 170 | Dufour | Richard | | Jr. | Mandell/Wistow | injuries |
| 171 | Dufresne | James | | | Mandell/Wistow | injuries |
| 172 | Gibbs | John | | | Mandell/Wistow | injuries |
| 173 | Gray | Gregory | | | Mandell/Wistow | injuries |
| 174 | Hall | Grant | | | Mandell/Wistow | injuries |
| 175 | Iannone | Michael | | | Mandell/Wistow | injuries |
| 176 | Krasinskas | Adrian | | | Mandell/Wistow | injuries |
| 177 | LoBianco | Joseph | | | Mandell/Wistow | injuries |
| 178 | McGinn | David | | | Mandell/Wistow | injuries |
| 179 | Peduzzi | Deborah | | | Mandell/Wistow | injuries |
| 180 | Perry | Dawn | | | Mandell/Wistow | injuries |
| 181 | Perry | Stephen | | | Mandell/Wistow | injuries |
| 182 | Precourt | Robin | | | Mandell/Wistow | injuries |
| 183 | Russo | Gina | | | Mandell/Wistow | injuries |
| 184 | Servis | Milton | | II | Mandell/Wistow | injuries |
| 185 | Silva | Derrick | | | Mandell/Wistow | injuries |
| 186 | Sippy | Erik | | | Mandell/Wistow | injuries |
| 187 | Steets | David | | | Mandell/Wistow | injuries |
| 188 | Vargas | Raul | | | Mandell/Wistow | injuries |
| 189 | Vieira | Jennifer | | | Mandell/Wistow | injuries |
| 190 | Wagner | Debra | | | Mandell/Wistow | injuries |
| 191 | Gauvin | Gina | M. | | Redihan | injuries |
| 192 | Moresco | Scott | C. | | Breggia | injuries |
| 193 | Cardillo | Mario | B. | | Breggia | injuries |
| 194 | Cardillo | Kathleen | M. | | Breggia | injuries |
| 195 | St. Hilaire | Tammy | M. | | Breggia | injuries |
| 196 | Feeney | Robert | P. | | Mancuso | injuries |
| 197 | Brennan | David | D. | | St. Pierre | injuries |

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 198 | Cripe | Robert | M. | | St. Pierre | injuries |
| 199 | Cronin | Neil | E. | | St. Pierre | injuries |
| 200 | Gordon | Karen | M. | | St. Pierre | injuries |
| 201 | Gordon | Paul | R. | | St. Pierre | injuries |
| 202 | Jones | Joseph | A. | | St. Pierre | injuries |
| 203 | Karvonen | Lee | A. | | St. Pierre | injuries |
| 204 | LaBree | Theresia | M. | | St. Pierre | injuries |
| 205 | Minor | Melissa | J. | | St. Pierre | injuries |
| 206 | Oberg | Charles | A. | | St. Pierre | injuries |
| 207 | Ormerod | Linda | A. | | St. Pierre | injuries |
| 208 | Pinkham | John | S. | | St. Pierre | injuries |
| 209 | Potvin | Victoria | L. | | St. Pierre | injuries |
| 210 | Rock | Kerrie | A. | | St. Pierre | injuries |
| 211 | Rossano | Timothy | J. | | St. Pierre | injuries |
| 212 | Trautz | Nancy | S. | | St. Pierre | injuries |
| 213 | Williams | Donovan | | | St. Pierre | injuries |
| 214 | Wilson | Sharon | A. | | St. Pierre | injuries |
| 215 | Fontaine | Melanie | | | Minicucci | injuries |
| 216 | Lourenco | Shawn | | | Minicucci | injuries |
| 217 | Poland | Ashley | A. | | Minicucci | injuries |
| 218 | Cristina | Joseph | | | Minicucci | injuries |
| 219 | Rancourt | William | | | Minicucci | injuries |
| 220 | Dussault | Matthew | | | Minicucci | injuries |
| 221 | Bertolo | Paul | | | Minicucci | injuries |
| 222 | Nobles | Cynthia | A. | | Jones | injuries |
| 223 | Nobles | Edward | D. | | Jones | injuries |
| 224 | Trudeau | Donald | N. | | St. Pierre | injuries |
| 225 | Sylvester | Jason | | | Mandell/Wistow | death |
| 226 | Pucino | Erin | | | Mandell/Wistow | injuries |
| 227 | Pimentel | Charles | | | Mandell/Wistow | death |
| 228 | Rich | Walter | E. | | Mandell/Wistow | death |
| 229 | Prunier | Cathren | M. | | Mandell/Wistow | injuries |
| 230 | Therriault | Glenn | | | Mandell/Wistow | injuries |
| 231 | Cormier | Bruce | | | Mandell/Wistow | injuries |
| 232 | Cormier | Donna | | | Mandell/Wistow | injuries |
| 233 | Cormier | Brenda | | | Mandell/Wistow | injuries |
| 234 | Manzo | Judith | | | St. Pierre | death |
| 235 | Mattera-Housa | Tammy | A. | | St. Pierre | death |
| 236 | Whalen | Erin | | | St. Pierre | injuries |
| 237 | Simpson | Stephanie | | | St. Pierre | injuries |

Numerical Victim List

| plaintiff number | last name | first name | middle initial | suffix | attorney | Injury |
|---|---|---|---|---|---|---|
| 238 | Wiggs | Richard | | | Minicucci | injuries |
| 239 | Pickett | Matthew | J. | | Redihan | death |
| 240 | Ricardi | Michael | R. | | Mandell/Wistow | injuries |

# Alpha Victim Index

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|---|---|---|---|---|---|---|
| Anderson | Kevin | | | 33 | Mandell/Wistow | death |
| Angers | Stacie | J. | | 9 | Jones | death |
| Arpin | John | R. | | 100 | Jones | injuries |
| Arruda | Christopher | G. | | 76 | Minicucci | death |
| Arruda | Elizabeth | | | 85 | Jones | injuries |
| Avilez | Eugene | | | 7 | Jones | death |
| Baker | Mary | H. | | 17 | Mandell/Wistow | death |
| Barber | Joseph | P. | | 112 | Jones | injuries |
| Barlow | Robert | A. | | 133 | Mandell/Wistow | injuries |
| Barnett | Thomas | A. | | 4 | Jones | death |
| Beauchaine | Laureen | | | 34 | Mandell/Wistow | death |
| Beauchaine | Ray | F. | Jr. | 159 | Mandell/Wistow | injuries |
| Beers | Kerrie-Lynn | | | 93 | Jones | injuries |
| Beese | Kevin | J. | Sr. | 102 | Jones | injuries |
| Belson | Julie | | | 160 | Mandell/Wistow | injuries |
| Bertolo | Paul | | | 221 | Minicucci | injuries |
| Blom | Kevin | | | 161 | Mandell/Wistow | injuries |
| Blom | Steven | | | 35 | Mandell/Wistow | death |
| Bonardi | William | C. | III | 18 | Mandell/Wistow | death |
| Brennan | David | D. | | 197 | St. Pierre | injuries |
| Brown | Kristen | A. | | 134 | Mandell/Wistow | injuries |
| Bump | Milisa | | | 162 | Mandell/Wistow | injuries |
| Cabral | Richard | | Jr. | 36 | Mandell/Wistow | death |
| Canillas | Francis | J. | | 94 | Jones | injuries |
| Cardillo | Kathleen | M. | | 194 | Breggia | injuries |
| Cardillo | Mario | B. | | 193 | Breggia | injuries |
| Cartwright | William | W. | | 37 | Mandell/Wistow | death |
| Chamberlin | Susan | H. | | 82 | Jones | injuries |
| Choquette | Jennifer | | | 163 | Mandell/Wistow | injuries |
| Ciccone | David | | | 95 | Jones | injuries |
| Clarke | Patricia | L. | | 135 | Mandell/Wistow | injuries |
| Companatico | Gennaro | | | 136 | Mandell/Wistow | injuries |
| Conant | Nicole | | | 164 | Mandell/Wistow | injuries |
| Conant | Stephanie | | | 165 | Mandell/Wistow | injuries |
| Conway | Arthur | J. | III | 166 | Mandell/Wistow | injuries |
| Cook | Richard | | | 137 | Mandell/Wistow | injuries |
| Corbett | Edward | B. | Jr. | 71 | St. Pierre | death |
| Cordier | Michael | | | 38 | Mandell/Wistow | death |
| Cormier | Brenda | | | 233 | Mandell/Wistow | injuries |

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|---|---|---|---|---|---|---|
| Cormier | Bruce | | | 231 | Mandell/Wistow | injuries |
| Cormier | Donna | | | 232 | Mandell/Wistow | injuries |
| Costa | Christopher | | | 105 | Jones | injuries |
| Cripe | Robert | M. | | 198 | St. Pierre | injuries |
| Crisostomi | Alfred | C. | | 19 | Mandell/Wistow | death |
| Cristina | Joseph | | | 218 | Minicucci | injuries |
| Cronin | Neil | E. | | 199 | St. Pierre | injuries |
| Croteau | Robert | J. | | 16 | Jones | death |
| Cushman | Robert | | | 167 | Mandell/Wistow | injuries |
| D'Andrea | Lisa | | | 39 | Mandell/Wistow | death |
| Darby | Matthew | P. | | 64 | Breggia | death |
| Dell | Shauna | | | 168 | Mandell/Wistow | injuries |
| DelSanto | Richard | | | 138 | Mandell/Wistow | injuries |
| DeMaio | Dina | A. | | 72 | St. Pierre | death |
| Demos | Jose | R. | | 90 | Jones | injuries |
| DiBona | Joseph | A. | Jr. | 139 | Mandell/Wistow | injuries |
| DiBonaventura | Albert | | | 14 | Jones | death |
| DiRienzo | Christina | | | 40 | Mandell/Wistow | death |
| du Fosse' | Paul | | | 99 | Jones | injuries |
| Dufour | Gregory | Scott | | 119 | Jones | injuries |
| Dufour | Richard | | Jr. | 170 | Mandell/Wistow | injuries |
| Dufresne | James | | | 171 | Mandell/Wistow | injuries |
| Dunbar | Scott | | | 121 | Jones | injuries |
| Dunn | Kevin | | | 20 | Mandell/Wistow | death |
| Durante | Lori | K. | | 21 | Mandell/Wistow | death |
| Dussault | Matthew | | | 220 | Minicucci | injuries |
| Ervanian | Edward | E. | | 79 | Minicucci | death |
| Fairbairn | Andrea | F. | | 89 | Jones | injuries |
| Fairbairn | John | F. | | 88 | Jones | injuries |
| Feeney | Robert | P. | | 196 | Mancuso | injuries |
| Fick | Charline | E. | | 41 | Mandell/Wistow | death |
| Fisher | Linda | M. | | 140 | Mandell/Wistow | injuries |
| Fleming | Thomas | J. | | 42 | Mandell/Wistow | death |
| Florio-DePietro | Rachel | K. | | 43 | Mandell/Wistow | death |
| Flynn | Joseph | M. | | 141 | Mandell/Wistow | injuries |
| Fontaine | Mark | A. | | 77 | Minicucci | death |
| Fontaine | Melanie | | | 215 | Minicucci | injuries |
| Fravala | Brandon | | | 124 | Jones | injuries |
| Fravala | David | | | 125 | Jones | injuries |
| Frederickson | Daniel | | | 15 | Jones | death |

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|---|---|---|---|---|---|---|
| Fresolo | Michael | | | 11 | Jones | death |
| Gahan | James | C. | IV | 44 | Mandell/Wistow | death |
| Gaumitz | Rodney | J. | | 114 | Jones | injuries |
| Gauvin | Gina | M. | | 191 | Redihan | injuries |
| Gershelis | Irina | M. | | 113 | Jones | injuries |
| Gibbs | John | | | 172 | Mandell/Wistow | injuries |
| Gillett | Laura | L. | | 68 | Breggia | death |
| Giroux-Brown | Georgette | | | 106 | Jones | injuries |
| Gooden | James | F. | | 22 | Mandell/Wistow | death |
| Gordon | Karen | M. | | 200 | St. Pierre | injuries |
| Gordon | Paul | R. | | 201 | St. Pierre | injuries |
| Gould | Paula | | | 101 | Jones | injuries |
| Grace | Richard | J. | | 117 | Jones | injuries |
| Gray | Derek | | | 1 | Jones | death |
| Gray | Gregory | | | 173 | Mandell/Wistow | injuries |
| Greene | Scott | C. | | 45 | Mandell/Wistow | death |
| Griffith | Scott | S. | | 46 | Mandell/Wistow | death |
| Hale | Lisa | C. | | 142 | Mandell/Wistow | injuries |
| Hall | Grant | | | 174 | Mandell/Wistow | injuries |
| Hamelin | Bonnie | L. | | 23 | Mandell/Wistow | death |
| Harrington | Robert | | | 132 | Jones | injuries |
| Hoban | Andrew | R. | | 24 | Mandell/Wistow | death |
| Hoisington | Abbie | L. | | 47 | Mandell/Wistow | death |
| Hoogasian | Michael | B. | | 25 | Mandell/Wistow | death |
| Hoogasian | Sandy | L. | | 26 | Mandell/Wistow | death |
| Howorth | Carlton | L. | III | 48 | Mandell/Wistow | death |
| Hussey | Laurie | A. | | 143 | Mandell/Wistow | injuries |
| Hyer | Eric | J. | | 66 | Breggia | death |
| Iannone | Michael | | | 175 | Mandell/Wistow | injuries |
| Jacavone-Mancini | Andrea | L. | | 74 | St. Pierre | death |
| Johnson | Derek | B. | | 73 | St. Pierre | death |
| Jones | Joseph | A. | | 202 | St. Pierre | injuries |
| Karvonen | Lee | A. | | 203 | St. Pierre | injuries |
| Kelly | Lisa | | | 49 | Mandell/Wistow | death |
| Kelly | Tawnya | | | 118 | Jones | injuries |
| Kinan | Joseph | K. | | 87 | Jones | injuries |
| King | Tracy | F. | | 50 | Mandell/Wistow | death |
| Krasinskas | Adrian | | | 176 | Mandell/Wistow | injuries |
| Kudryk | John | | | 123 | Jones | injuries |
| Kulz | Michael | J. | | 51 | Mandell/Wistow | death |

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|---|---|---|---|---|---|---|
| LaBree | Theresia | M. | | 204 | St. Pierre | injuries |
| Lapierre | Keith | R. | | 52 | Mandell/Wistow | death |
| Latulippe | Dale | L. | | 27 | Mandell/Wistow | death |
| Libera | Stephen | M. | | 78 | Minicucci | death |
| LoBianco | Joseph | | | 177 | Mandell/Wistow | injuries |
| Loftus | Brian | | | 104 | Jones | injuries |
| Longiaru | John | M. | | 28 | Mandell/Wistow | death |
| Longley | Ty | | | 12 | Jones | death |
| Lourenco | Shawn | | | 216 | Minicucci | injuries |
| Lucier | Marc | A. | | 144 | Mandell/Wistow | injuries |
| Lusardi | Joseph | | | 122 | Jones | injuries |
| Luxton | Robert | J. | | 84 | Jones | injuries |
| MacDonald | David | B. | | 98 | Jones | injuries |
| Mallette | Matthew | | | 145 | Mandell/Wistow | injuries |
| Mancini | Keith | A. | | 29 | Mandell/Wistow | death |
| Mancini | Steven | R. | | 30 | Mandell/Wistow | death |
| Mangan | John | | Jr. | 146 | Mandell/Wistow | injuries |
| Manzo | Judith | | | 234 | St. Pierre | death |
| Marion | Thomas | Frank | Jr. | 10 | Jones | death |
| Martin | Jeffrey | Wood | | 69 | Mancuso | death |
| Mattera-Housa | Tammy | A. | | 235 | St. Pierre | death |
| McGinn | David | | | 178 | Mandell/Wistow | injuries |
| McMurray | Frances | P. | | 147 | Mandell/Wistow | injuries |
| McQuarrie | Kristen | L. | | 53 | Mandell/Wistow | death |
| Minor | Melissa | J. | | 205 | St. Pierre | injuries |
| Mitchell | Donna | M. | | 5 | Jones | death |
| Moreau | Leigh | Ann | | 54 | Mandell/Wistow | death |
| Moresco | Scott | C. | | 192 | Breggia | injuries |
| Morin | Ryan | M. | | 31 | Mandell/Wistow | death |
| Morton | Jason | R. | | 3 | Jones | death |
| Moscynski | Beth | | | 55 | Mandell/Wistow | death |
| Nobles | Cynthia | A. | | 222 | Jones | injuries |
| Nobles | Edward | D. | | 223 | Jones | injuries |
| Nowicki | Christopher | J. | | 148 | Mandell/Wistow | injuries |
| O'Donnell | Shaun | | | 103 | Jones | injuries |
| O'Melia | Roberta | | | 91 | Jones | injuries |
| O'Neill | Nicholas | | | 2 | Jones | death |
| Oberg | Charles | A. | | 206 | St. Pierre | injuries |
| Ormerod | Linda | A. | | 207 | St. Pierre | injuries |
| Peduzzi | Deborah | | | 179 | Mandell/Wistow | injuries |

# Alpha Victim Index

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|-----------|-----------|----------------|--------|-------------------|----------|--------|
| Pelletier | Paul | M. | | 149 | Mandell/Wistow | injuries |
| Perreault | Michael | | | 150 | Mandell/Wistow | injuries |
| Perry | Dawn | | | 180 | Mandell/Wistow | injuries |
| Perry | Stephen | | | 181 | Mandell/Wistow | injuries |
| Peters | Christopher | A. | | 151 | Mandell/Wistow | injuries |
| Petrarca | Robin | | | 126 | Jones | injuries |
| Petrin | Jonathan | | | 152 | Mandell/Wistow | injuries |
| Pezzelli | Edward | | Jr. | 110 | Jones | injuries |
| Pezzelli | Paul | | | 111 | Jones | injuries |
| Pickett | Matthew | J. | | 239 | Redihan | death |
| Pimentel | Charles | | | 227 | Mandell/Wistow | death |
| Pinkham | John | S. | | 208 | St. Pierre | injuries |
| Piscopio | Jason | | | 153 | Mandell/Wistow | injuries |
| Poland | Ashley | A. | | 217 | Minicucci | injuries |
| Pomfret | Hollie | A. | | 128 | Jones | injuries |
| Pomfret | Justin | | | 129 | Jones | injuries |
| Potvin | Victoria | L. | | 209 | St. Pierre | injuries |
| Precourt | Robin | | | 182 | Mandell/Wistow | injuries |
| Prete | Roberta | J. | | 108 | Jones | injuries |
| Prouty | Christopher | | | 32 | Mandell/Wistow | death |
| Prudhomme | Al | | | 130 | Jones | injuries |
| Prudhomme | Charlene | | | 131 | Jones | injuries |
| Prunier | Cathren | M. | | 229 | Mandell/Wistow | injuries |
| Pucino | Erin | | | 226 | Mandell/Wistow | injuries |
| Rager | Robert | W. | | 86 | Jones | injuries |
| Rakoski | Theresa | L. | | 56 | Mandell/Wistow | death |
| Rancourt | William | | | 219 | Minicucci | injuries |
| Randall | Catherine | | | 109 | Jones | injuries |
| Reis | Donna | | | 115 | Jones | injuries |
| Reisner | Robert | L. | III | 57 | Mandell/Wistow | death |
| Rezendes | John | A. | | 154 | Mandell/Wistow | injuries |
| Ricardi | Michael | R. | | 240 | Mandell/Wistow | injuries |
| Rich | Walter | E. | | 228 | Mandell/Wistow | death |
| Richard | Claude | | | 169 | Mandell/Wistow | injuries |
| Rock | Kerrie | A. | | 210 | St. Pierre | injuries |
| Romanoff | Tracey | L. | | 65a | Breggia | death |
| Romanoff | Tracey | L. | | 65b | St. Pierre | death |
| Rossano | Timothy | J. | | 211 | St. Pierre | injuries |
| Russo | Gina | | | 183 | Mandell/Wistow | injuries |
| Sagesta | Catherine | C. | | 155 | Mandell/Wistow | injuries |

# Alpha Victim Index

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|-----------|-----------|----------------|--------|------------------|----------|--------|
| Sanetti | Bridget | M. | | 67 | Breggia | death |
| Schmidt | Jon | R. | | 97 | Jones | injuries |
| Schoepfer | Ronald | S. | | 116 | Jones | injuries |
| Servis | Milton | | II | 184 | Mandell/Wistow | injuries |
| Shaw | Rebecca | | | 58 | Mandell/Wistow | death |
| Shubert | Mitchell | | | 13a,b &c | Jones | death |
| Shubert | Mitchell | | | 13d & e | Mandell/Wistow | death |
| Silva | Derrick | | | 185 | Mandell/Wistow | injuries |
| Simpson | Stephanie | | | 237 | St. Pierre | injuries |
| Sippy | Erik | | | 186 | Mandell/Wistow | injuries |
| Smith | Dennis | J. | | 75 | St. Pierre | death |
| Solitro | George | | | 156 | Mandell/Wistow | injuries |
| St. Hilaire | Tammy | M. | | 195 | Breggia | injuries |
| Stark | Victor | L. | | 59 | Mandell/Wistow | death |
| Steets | David | | | 187 | Mandell/Wistow | injuries |
| Stefani | Michael | | | 127 | Jones | injuries |
| Stein | Gary | | | 157 | Mandell/Wistow | injuries |
| Stephenson | Melissa | A. | | 158 | Mandell/Wistow | injuries |
| Stowers | Jennifer | L. | | 70 | Mancuso | death |
| Suffoletto | Benjamin | J. | Jr. | 60 | Mandell/Wistow | death |
| Suffoletto | Linda | D. | | 61 | Mandell/Wistow | death |
| Sullivan | Kathleen | | | 80 | Jones | injuries |
| Sylvester | Jason | | | 225 | Mandell/Wistow | death |
| Therriault | Glenn | | | 230 | Mandell/Wistow | injuries |
| Trautz | Nancy | S. | | 212 | St. Pierre | injuries |
| Travis | Christopher | J. | | 96 | Jones | injuries |
| Trudeau | Donald | N. | | 224 | St. Pierre | injuries |
| Vallante | Fredrick | P. | Jr. | 92 | Jones | injuries |
| Van Deusen | John | F. | III | 83 | Jones | injuries |
| Vargas | Raul | | | 188 | Mandell/Wistow | injuries |
| Vieira | Jennifer | | | 189 | Mandell/Wistow | injuries |
| Vieira | Kelly | Lynn | | 6 | Jones | death |
| Vieira | Scott | J. | | 81 | Jones | injuries |
| Wagner | Debra | | | 190 | Mandell/Wistow | injuries |
| Washburn | Kevin | R. | | 62 | Mandell/Wistow | death |
| Whalen | Erin | | | 236 | St. Pierre | injuries |
| Wigginton | John | D. | | 120 | Jones | injuries |
| Wiggs | Richard | | | 238 | Minicucci | injuries |
| Williams | Donovan | | | 213 | St. Pierre | injuries |
| Wilson | Sharon | A. | | 214 | St. Pierre | injuries |

# Alpha Victim Index

| last name | first name | middle initial | suffix | plaintiff number | attorney | Injury |
|---|---|---|---|---|---|---|
| Woodmansee | Everett | T. | III | 63 | Mandell/Wistow | death |
| Young | Robert | D. | | 8 | Jones | death |
| Zannella | Stephanie | | | 107 | Jones | injuries |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|---|---|---|---|---|---|---|
| Breggia | Cardillo | Kathleen | M. | | 194 | injuries |
| Breggia | Cardillo | Mario | B. | | 193 | injuries |
| Breggia | Darby | Matthew | P. | | 64 | death |
| Breggia | Gillett | Laura | L. | | 68 | death |
| Breggia | Hyer | Eric | J. | | 66 | death |
| Breggia | Moresco | Scott | C. | | 192 | injuries |
| Breggia | Romanoff | Tracey | L. | | 65a | death |
| Breggia | Sanetti | Bridget | M. | | 67 | death |
| Breggia | St. Hilaire | Tammy | M. | | 195 | injuries |
| Jones | Angers | Stacie | J. | | 9 | death |
| Jones | Arpin | John | R. | | 100 | injuries |
| Jones | Arruda | Elizabeth | | | 85 | injuries |
| Jones | Avilez | Eugene | | | 7 | death |
| Jones | Barber | Joseph | P. | | 112 | injuries |
| Jones | Barnett | Thomas | A. | | 4 | death |
| Jones | Beers | Kerrie-Lynn | | | 93 | injuries |
| Jones | Beese | Kevin | J. | Sr. | 102 | injuries |
| Jones | Canillas | Francis | J. | | 94 | injuries |
| Jones | Chamberlin | Susan | H. | | 82 | injuries |
| Jones | Ciccone | David | | | 95 | injuries |
| Jones | Costa | Christopher | | | 105 | injuries |
| Jones | Croteau | Robert | J. | | 16 | death |
| Jones | Demos | Jose | R. | | 90 | injuries |
| Jones | DiBonaventura | Albert | | | 14 | death |
| Jones | du Fosse' | Paul | | | 99 | injuries |
| Jones | Dufour | Gregory | Scott | | 119 | injuries |
| Jones | Dunbar | Scott | | | 121 | injuries |
| Jones | Fairbairn | Andrea | F. | | 89 | injuries |
| Jones | Fairbairn | John | F. | | 88 | injuries |
| Jones | Fravala | Brandon | | | 124 | injuries |
| Jones | Fravala | David | | | 125 | injuries |
| Jones | Frederickson | Daniel | | | 15 | death |
| Jones | Fresolo | Michael | | | 11 | death |
| Jones | Gaumitz | Rodney | J. | | 114 | injuries |
| Jones | Gershelis | Irina | M. | | 113 | injuries |
| Jones | Giroux-Brown | Georgette | | | 106 | injuries |
| Jones | Gould | Paula | | | 101 | injuries |
| Jones | Grace | Richard | J. | | 117 | injuries |
| Jones | Gray | Derek | | | 1 | death |

APPENDIX C

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|---|---|---|---|---|---|---|
| Jones | Harrington | Robert | | | 132 | injuries |
| Jones | Kelly | Tawnya | | | 118 | injuries |
| Jones | Kinan | Joseph | K. | | 87 | injuries |
| Jones | Kudryk | John | | | 123 | injuries |
| Jones | Loftus | Brian | | | 104 | injuries |
| Jones | Longley | Ty | | | 12 | death |
| Jones | Lusardi | Joseph | | | 122 | injuries |
| Jones | Luxton | Robert | J. | | 84 | injuries |
| Jones | MacDonald | David | B. | | 98 | injuries |
| Jones | Marion | Thomas | Frank | Jr. | 10 | death |
| Jones | Mitchell | Donna | M. | | 5 | death |
| Jones | Morton | Jason | R. | | 3 | death |
| Jones | Nobles | Cynthia | A. | | 222 | injuries |
| Jones | Nobles | Edward | D. | | 223 | injuries |
| Jones | O'Donnell | Shaun | | | 103 | injuries |
| Jones | O'Melia | Roberta | | | 91 | injuries |
| Jones | O'Neill | Nicholas | | | 2 | death |
| Jones | Petrarca | Robin | | | 126 | injuries |
| Jones | Pezzelli | Edward | | Jr. | 110 | injuries |
| Jones | Pezzelli | Paul | | | 111 | injuries |
| Jones | Pomfret | Hollie | A. | | 128 | injuries |
| Jones | Pomfret | Justin | | | 129 | injuries |
| Jones | Prete | Roberta | J. | | 108 | injuries |
| Jones | Prudhomme | Al | | | 130 | injuries |
| Jones | Prudhomme | Charlene | | | 131 | injuries |
| Jones | Rager | Robert | W. | | 86 | injuries |
| Jones | Randall | Catherine | | | 109 | injuries |
| Jones | Reis | Donna | | | 115 | injuries |
| Jones | Schmidt | Jon | R. | | 97 | injuries |
| Jones | Schoepfer | Ronald | S. | | 116 | injuries |
| Jones | Shubert | Mitchell | | | 13a,b &c | death |
| Jones | Stefani | Michael | | | 127 | injuries |
| Jones | Sullivan | Kathleen | | | 80 | injuries |
| Jones | Travis | Christopher | J. | | 96 | injuries |
| Jones | Vallante | Fredrick | P. | Jr. | 92 | injuries |
| Jones | Van Deusen | John | F. | III | 83 | injuries |
| Jones | Vieira | Kelly | Lynn | | 6 | death |
| Jones | Vieira | Scott | J. | | 81 | injuries |
| Jones | Wigginton | John | D. | | 120 | injuries |
| Jones | Young | Robert | D. | | 8 | death |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|---|---|---|---|---|---|---|
| Jones | Zannella | Stephanie | | | 107 | injuries |
| Mancuso | Feeney | Robert | P. | | 196 | injuries |
| Mancuso | Martin | Jeffrey | Wood | | 69 | death |
| Mancuso | Stowers | Jennifer | L. | | 70 | death |
| Mandell/Wistow | Anderson | Kevin | | | 33 | death |
| Mandell/Wistow | Baker | Mary | H. | | 17 | death |
| Mandell/Wistow | Barlow | Robert | A. | | 133 | injuries |
| Mandell/Wistow | Beauchaine | Laureen | | | 34 | death |
| Mandell/Wistow | Beauchaine | Ray | F. | Jr. | 159 | injuries |
| Mandell/Wistow | Belson | Julie | | | 160 | injuries |
| Mandell/Wistow | Blom | Kevin | | | 161 | injuries |
| Mandell/Wistow | Blom | Steven | | | 35 | death |
| Mandell/Wistow | Bonardi | William | C. | III | 18 | death |
| Mandell/Wistow | Brown | Kristen | A. | | 134 | injuries |
| Mandell/Wistow | Bump | Milisa | | | 162 | injuries |
| Mandell/Wistow | Cabral | Richard | | Jr. | 36 | death |
| Mandell/Wistow | Cartwright | William | W. | | 37 | death |
| Mandell/Wistow | Choquette | Jennifer | | | 163 | injuries |
| Mandell/Wistow | Clarke | Patricia | L. | | 135 | injuries |
| Mandell/Wistow | Companatico | Gennaro | | | 136 | injuries |
| Mandell/Wistow | Conant | Nicole | | | 164 | injuries |
| Mandell/Wistow | Conant | Stephanie | | | 165 | injuries |
| Mandell/Wistow | Conway | Arthur | J. | III | 166 | injuries |
| Mandell/Wistow | Cook | Richard | | | 137 | injuries |
| Mandell/Wistow | Cordier | Michael | | | 38 | death |
| Mandell/Wistow | Cormier | Brenda | | | 233 | injuries |
| Mandell/Wistow | Cormier | Bruce | | | 231 | injuries |
| Mandell/Wistow | Cormier | Donna | | | 232 | injuries |
| Mandell/Wistow | Crisostomi | Alfred | C. | | 19 | death |
| Mandell/Wistow | Cushman | Robert | | | 167 | injuries |
| Mandell/Wistow | D'Andrea | Lisa | | | 39 | death |
| Mandell/Wistow | Dell | Shauna | | | 168 | injuries |
| Mandell/Wistow | DelSanto | Richard | | | 138 | injuries |
| Mandell/Wistow | DiBona | Joseph | A. | Jr. | 139 | injuries |
| Mandell/Wistow | DiRienzo | Christina | | | 40 | death |
| Mandell/Wistow | Dufour | Richard | | Jr. | 170 | injuries |
| Mandell/Wistow | Dufresne | James | | | 171 | injuries |
| Mandell/Wistow | Dunn | Kevin | | | 20 | death |
| Mandell/Wistow | Durante | Lori | K. | | 21 | death |
| Mandell/Wistow | Fick | Charline | E. | | 41 | death |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|---|---|---|---|---|---|---|
| Mandell/Wistow | Fisher | Linda | M. | | 140 | injuries |
| Mandell/Wistow | Fleming | Thomas | J. | | 42 | death |
| Mandell/Wistow | Florio-DePietro | Rachel | K. | | 43 | death |
| Mandell/Wistow | Flynn | Joseph | M. | | 141 | injuries |
| Mandell/Wistow | Gahan | James | C. | IV | 44 | death |
| Mandell/Wistow | Gibbs | John | | | 172 | injuries |
| Mandell/Wistow | Gooden | James | F. | | 22 | death |
| Mandell/Wistow | Gray | Gregory | | | 173 | injuries |
| Mandell/Wistow | Greene | Scott | C. | | 45 | death |
| Mandell/Wistow | Griffith | Scott | S. | | 46 | death |
| Mandell/Wistow | Hale | Lisa | C. | | 142 | injuries |
| Mandell/Wistow | Hall | Grant | | | 174 | injuries |
| Mandell/Wistow | Hamelin | Bonnie | L. | | 23 | death |
| Mandell/Wistow | Hoban | Andrew | R. | | 24 | death |
| Mandell/Wistow | Hoisington | Abbie | L. | | 47 | death |
| Mandell/Wistow | Hoogasian | Michael | B. | | 25 | death |
| Mandell/Wistow | Hoogasian | Sandy | L. | | 26 | death |
| Mandell/Wistow | Howorth | Carlton | L. | III | 48 | death |
| Mandell/Wistow | Hussey | Laurie | A. | | 143 | injuries |
| Mandell/Wistow | Iannone | Michael | | | 175 | injuries |
| Mandell/Wistow | Kelly | Lisa | | | 49 | death |
| Mandell/Wistow | King | Tracy | F. | | 50 | death |
| Mandell/Wistow | Krasinskas | Adrian | | | 176 | injuries |
| Mandell/Wistow | Kulz | Michael | J. | | 51 | death |
| Mandell/Wistow | Lapierre | Keith | R. | | 52 | death |
| Mandell/Wistow | Latulippe | Dale | L. | | 27 | death |
| Mandell/Wistow | LoBianco | Joseph | | | 177 | injuries |
| Mandell/Wistow | Longiaru | John | M. | | 28 | death |
| Mandell/Wistow | Lucier | Marc | A. | | 144 | injuries |
| Mandell/Wistow | Mallette | Matthew | | | 145 | injuries |
| Mandell/Wistow | Mancini | Keith | A. | | 29 | death |
| Mandell/Wistow | Mancini | Steven | R. | | 30 | death |
| Mandell/Wistow | Mangan | John | | Jr. | 146 | injuries |
| Mandell/Wistow | McGinn | David | | | 178 | injuries |
| Mandell/Wistow | McMurray | Frances | P. | | 147 | injuries |
| Mandell/Wistow | McQuarrie | Kristen | L. | | 53 | death |
| Mandell/Wistow | Moreau | Leigh | Ann | | 54 | death |
| Mandell/Wistow | Morin | Ryan | M. | | 31 | death |
| Mandell/Wistow | Moscynski | Beth | | | 55 | death |
| Mandell/Wistow | Nowicki | Christopher | J. | | 148 | injuries |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|---|---|---|---|---|---|---|
| Mandell/Wistow | Peduzzi | Deborah | | | 179 | injuries |
| Mandell/Wistow | Pelletier | Paul | M. | | 149 | injuries |
| Mandell/Wistow | Perreault | Michael | | | 150 | injuries |
| Mandell/Wistow | Perry | Dawn | | | 180 | injuries |
| Mandell/Wistow | Perry | Stephen | | | 181 | injuries |
| Mandell/Wistow | Peters | Christopher | A. | | 151 | injuries |
| Mandell/Wistow | Petrin | Jonathan | | | 152 | injuries |
| Mandell/Wistow | Pimentel | Charles | | | 227 | death |
| Mandell/Wistow | Piscopio | Jason | | | 153 | injuries |
| Mandell/Wistow | Precourt | Robin | | | 182 | injuries |
| Mandell/Wistow | Prouty | Christopher | | | 32 | death |
| Mandell/Wistow | Prunier | Cathren | M. | | 229 | injuries |
| Mandell/Wistow | Pucino | Erin | | | 226 | injuries |
| Mandell/Wistow | Rakoski | Theresa | L. | | 56 | death |
| Mandell/Wistow | Reisner | Robert | L. | III | 57 | death |
| Mandell/Wistow | Rezendes | John | A. | | 154 | injuries |
| Mandell/Wistow | Ricardi | Michael | R. | | 240 | injuries |
| Mandell/Wistow | Rich | Walter | E. | | 228 | death |
| Mandell/Wistow | Richard | Claude | | | 169 | injuries |
| Mandell/Wistow | Russo | Gina | | | 183 | injuries |
| Mandell/Wistow | Sagesta | Catherine | C. | | 155 | injuries |
| Mandell/Wistow | Servis | Milton | | II | 184 | injuries |
| Mandell/Wistow | Shaw | Rebecca | | | 58 | death |
| Mandell/Wistow | Shubert | Mitchell | | | 13d & e | death |
| Mandell/Wistow | Silva | Derrick | | | 185 | injuries |
| Mandell/Wistow | Sippy | Erik | | | 186 | injuries |
| Mandell/Wistow | Solitro | George | | | 156 | injuries |
| Mandell/Wistow | Stark | Victor | L. | | 59 | death |
| Mandell/Wistow | Steets | David | | | 187 | injuries |
| Mandell/Wistow | Stein | Gary | | | 157 | injuries |
| Mandell/Wistow | Stephenson | Melissa | A. | | 158 | injuries |
| Mandell/Wistow | Suffoletto | Benjamin | J. | Jr. | 60 | death |
| Mandell/Wistow | Suffoletto | Linda | D. | | 61 | death |
| Mandell/Wistow | Sylvester | Jason | | | 225 | death |
| Mandell/Wistow | Therriault | Glenn | | | 230 | injuries |
| Mandell/Wistow | Vargas | Raul | | | 188 | injuries |
| Mandell/Wistow | Vieira | Jennifer | | | 189 | injuries |
| Mandell/Wistow | Wagner | Debra | | | 190 | injuries |
| Mandell/Wistow | Washburn | Kevin | R. | | 62 | death |
| Mandell/Wistow | Woodmansee | Everett | T. | III | 63 | death |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|----------|-----------|------------|----------------|--------|------------------|--------|
| Minicucci | Arruda | Christopher | G. | | 76 | death |
| Minicucci | Bertolo | Paul | | | 221 | injuries |
| Minicucci | Cristina | Joseph | | | 218 | injuries |
| Minicucci | Dussault | Matthew | | | 220 | injuries |
| Minicucci | Ervanian | Edward | E. | | 79 | death |
| Minicucci | Fontaine | Mark | A. | | 77 | death |
| Minicucci | Fontaine | Melanie | | | 215 | injuries |
| Minicucci | Libera | Stephen | M. | | 78 | death |
| Minicucci | Lourenco | Shawn | | | 216 | injuries |
| Minicucci | Poland | Ashley | A. | | 217 | injuries |
| Minicucci | Rancourt | William | | | 219 | injuries |
| Minicucci | Wiggs | Richard | | | 238 | injuries |
| Redihan | Gauvin | Gina | M. | | 191 | injuries |
| Redihan | Pickett | Matthew | J. | | 239 | death |
| St. Pierre | Brennan | David | D. | | 197 | injuries |
| St. Pierre | Corbett | Edward | B. | Jr. | 71 | death |
| St. Pierre | Cripe | Robert | M. | | 198 | injuries |
| St. Pierre | Cronin | Neil | E. | | 199 | injuries |
| St. Pierre | DeMaio | Dina | A. | | 72 | death |
| St. Pierre | Gordon | Karen | M. | | 200 | injuries |
| St. Pierre | Gordon | Paul | R. | | 201 | injuries |
| St. Pierre | Jacavone-Mancini | Andrea | L. | | 74 | death |
| St. Pierre | Johnson | Derek | B. | | 73 | death |
| St. Pierre | Jones | Joseph | A. | | 202 | injuries |
| St. Pierre | Karvonen | Lee | A. | | 203 | injuries |
| St. Pierre | LaBree | Theresia | M. | | 204 | injuries |
| St. Pierre | Manzo | Judith | | | 234 | death |
| St. Pierre | Mattera-Housa | Tammy | A. | | 235 | death |
| St. Pierre | Minor | Melissa | J. | | 205 | injuries |
| St. Pierre | Oberg | Charles | A. | | 206 | injuries |
| St. Pierre | Ormerod | Linda | A. | | 207 | injuries |
| St. Pierre | Pinkham | John | S. | | 208 | injuries |
| St. Pierre | Potvin | Victoria | L. | | 209 | injuries |
| St. Pierre | Rock | Kerrie | A. | | 210 | injuries |
| St. Pierre | Romanoff | Tracey | L. | | 65b | death |
| St. Pierre | Rossano | Timothy | J. | | 211 | injuries |
| St. Pierre | Simpson | Stephanie | | | 237 | injuries |
| St. Pierre | Smith | Dennis | J. | | 75 | death |
| St. Pierre | Trautz | Nancy | S. | | 212 | injuries |
| St. Pierre | Trudeau | Donald | N. | | 224 | injuries |

| attorney | last name | first name | middle initial | suffix | plaintiff number | Injury |
|----------|-----------|------------|----------------|--------|------------------|--------|
| St. Pierre | Whalen | Erin | | | 236 | injuries |
| St. Pierre | Williams | Donovan | | | 213 | injuries |
| St. Pierre | Wilson | Sharon | A. | | 214 | injuries |