UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALBERT L. GRAY, Administrator, et al., Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | C.A. No. 04-312L |
| JEFFERY DERDERIAN, et at., Defendants. | ) ) | |

| | | |
|---|---|---|
| ESTATE OF JUDE B. HENAULT, et al., Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | C.A. No. 03-483L |
| AMERICAN FOAM CORPORATION; et al., Defendants. | ) ) | |

In Re Motions to Dismiss of Defendants Essex Insurance Company, Multi-State Inspections, Inc., and High Caliber Inspections, Inc.

<u>DECISION AND ORDER</u>

Ronald R. Lagueux, Senior United States District Judge.

This matter comes before the Court on Motions to Dismiss filed by Defendants Essex Insurance Company ("Essex"), Multi-State Inspections, Inc. ("Multi-State"), and High Caliber Inspections, Inc. ("High Caliber") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek to have this Court dismiss all allegations against them. For reasons explained at length below, Defendants' Motions to Dismiss are granted.

### Facts

On February 20, 2003, a massive fire destroyed The Station nightclub in West Warwick, Rhode Island. The fire began when Great White, the featured rock band performing that evening, ignited pyrotechnic devices on stage as they began to perform. Eyewitness accounts indicated that the pyrotechnics caused the polyurethane foam insulation lining the walls and ceiling around the stage to catch fire. The entire structure was soon engulfed in flames, with dark smoke and extreme temperatures adding to the ensuing chaos as patrons, employees, and band members tried to escape. One hundred people lost their lives and over 200 others were injured as a result of the fire.

### The Complaint

At this stage in the litigation, as reflected by the First Amended Master Complaint (hereinafter "the Complaint"), about 250 plaintiffs have sued over 50 defendants in an eighty-one count Complaint. The counts naming Essex, Multi-State and High Caliber as set forth in the Complaint are as follows:

> 653. The Essex Insurance Company (hereinafter "Essex") is a corporation licensed to sell liability and property and casualty insurance in the State of Rhode Island. It issued a policy of commercial liability insurance number 3CH 0430 to Michael Derderian, effective from March 24, 2002 to March 24, 2003 for The Station at 211 Cowesett Ave., West Warwick.
>
> 654. Multi-State Inspections, Inc. (hereinafter "Multi-State") is a corporation organized under the laws of the State of Rhode Island for the business of performing insurance inspections.
>
> 655. High Caliber Inspections, Inc. (hereinafter "High Caliber") is a corporation organized under the laws of the

2

Caliber") is a corporation organized under the laws of the State of Rhode Island for the business of performing insurance inspections.

656. At various times, including but not limited to April 4, 1996, March 25, 1998 and October 8, 2002, Essex, through its agents and servants, Multi-State and High Caliber, conducted inspections of the premises at 211 Cowesett Ave. Essex, Multi-State and High Caliber were negligent in performing said inspections.   Their negligence included without limitation:

      a. failing to adequately inspect The Station for safety hazards and fire/building code violations;

      b. failing to note the presence of highly flammable surface treatments;

      c. failing to note the inadequacy of exits;

      d. failing to note practices of overcrowding;

      e. allowing the use of dangerous pyrotechnic devices during performances at The Station;

      f. knowing of numerous dangerous conditions and fire hazards at The Station and failing to remedy those conditions or order the insureds to remedy them;

      g. failing to protect members of the public for the foreseeable risk of serious injury or death at The Station;

      h. failing to adequately oversee, supervise, monitor, evaluate, train and/or retrain those performing inspections of The Station;

      i. other acts and failures to act that may become apparent after discovery.

657.   Defendants Essex, Multi-State and High Caliber, in undertaking to perform said inspections, recognized or should have recognized that the competent performance ofns was necessary for the protection of third persons, including Plaintiffs.

658. Essex' insured, Michael Derderian, relied upon the results and recommendations of said negligently performed inspections.

659. The negligence of Essex, Multi-State and High Caliber, and each of them, was a proximate cause of Plaintiffs' deaths and injuries.

Compl., ¶¶ 653-59. Plaintiffs seek damages from Essex, Multi-

State and High Caliber for their negligence. Compl., ¶¶ 660-65.

This writer will first address the claim against Defendant Essex.

3

Defendant Essex moves to dismiss the claim against it for Plaintiffs' failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "In the course of its analysis, the Court will assume that all allegations are true." Gray v. Derderian, 365 F. Supp. 2d 218, 223 (D.R.I. 2005).[1] The allegations and all reasonable inferences to be drawn from them will be construed in the light most favorable to the Plaintiffs. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). As articulated by the United States Supreme Court, "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Defendant's motion will fail if "the well-pleaded facts, taken as true, justify recovery on any supportable legal theory." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000).

In connection with the present Motion, Plaintiffs and Defendants have submitted additional material for this Court to consider. However, as the Federal Rules of Civil Procedure state and as this Court has previously noted:

---

[1] This was an earlier opinion issued by the Court relating to the fire at The Station nightclub. It concerned two motions to dismiss filed by bulk polyurethane foam manufacturers. Their motions were denied.

4

> If, on a motion asserting the defense numbered (6)
> to dismiss for failure of the pleading to state a
> claim upon which relief can be granted, matters
> outside the pleading are presented to and not
> excluded by the court, the motion shall be treated
> as one for summary judgment and disposed of as
> provided in Rule 56, and all parties shall be
> given reasonable opportunity to present all
> material made pertinent to such a motion by Rule
> 56.

Fed. R. Civ. P. 12(b). "However, because discovery has been and remains stayed in this litigation, neither side has had an opportunity to develop a complete record in support of their allegations or defenses. Consequently, the Court has chosen to exclude all extraneous [material], as well as all arguments in reliance thereon," in ruling on this Motion to Dismiss. Gray, 365 F. Supp. 2d at 223. See also Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) (asserting that a district court must actually have considered supplemental material or analyzed the motion as a motion for summary judgment in order to convert the motion to dismiss to a motion for summary judgment); Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992) (asserting that if a district court ignores supplementary material and determines the motion as a motion to dismiss, the motion is not converted to a motion for summary judgement).

### Standing: Rhode Island General Laws § 27-7-2

Essex argues that Plaintiffs lack standing to bring suit at this time because Rhode Island General Laws § 27-7-2 (2002

5

Reenactment) prohibits this type of suit until a judgment is rendered against the insured. Section 27-7-2 states in pertinent part that "[a]n injured party . . . in his or her suit against the insured, shall not join the insurer as a defendant. . . . The injured party . . . after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer."

However, § 27-7-2 is not applicable to the case at bar. That statute was designed to ensure that juries decide cases against an insured defendant on the merits rather than impermissibly take into consideration the fact that an insurer would pay any possible damages assessed against the defendant. Collier v. Travelers Ins. Co., 97 R.I. 315, 322, 197 A.2d 493, 496 (1964). It "permit[s] an injured party to sue a tortfeasor's liability insurer in order to obtain satisfaction of a judgment obtained against the tortfeasor." Clauson v. New England Ins. Co., 83 F. Supp. 2d 278, 281 (D.R.I. 2000), aff'd in part, 254 F.3d 331 (1st Cir. 2001). Therefore, under § 27-7-2, an injured party "would have no direct action against [the insurer] until he first obtained a judgment against [the insured], and, secondly, that such judgment was not satisfied in whole or in part." Canavan v. Lovett, Schefrin & Harnett, 745 A.2d 173, 174-75 (R.I. 2000) (per curiam).

The current case is not a suit on the liability insurance

6

policy issued by Essex. Rather, Plaintiffs are suing Essex claiming that it was negligent in inspecting the premises. The clear allegations in the Complaint are that "Essex, Multi-State and High Caliber were negligent in performing . . . inspections," and that "[t]he negligence of Essex, Multi-State and High Caliber, and each of them, was a proximate cause of Plaintiffs' deaths and injuries." Compl. ¶¶ 656, 659. Therefore, this Court concludes that § 27-7-2 is not implicated in the present case, at least, at this time.

## Common Law Negligence

Plaintiffs allege that Essex, as the issuer of commercial liability insurance to Michael Derderian for The Station, negligently conducted inspections of The Station premises. Compl. ¶¶ 653, 656. Defendant's negligence purportedly included, inter alia, failing to note practices of overcrowding, failing to note the inadequacy of exits, and failing to note the presence of highly flammable surface treatments. Compl. ¶ 656. Plaintiffs further allege that Essex recognized or should have recognized that the safety of the Plaintiffs depended on a competent inspection, and that Michael Derderian relied on the recommendations of the negligently performed inspections. Compl. ¶¶ 657-58. Finally, Plaintiffs allege that the negligently performed inspections were the proximate cause of Plaintiffs' deaths and injuries. Compl. ¶ 659.

7

This Court will address these claims by applying Rhode Island law, and, when appropriate, "analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). To make out a prima facie case of negligence under Rhode Island law, Plaintiffs must show that 1) Defendant owed them a legal duty to refrain from negligent activities; 2) Defendant breached that duty; 3) the breach proximately caused Plaintiffs' injuries; and 4) actual loss or damages resulted. See Splendorio v. Bilray Demolition Co., 682 A.2d 461, 466 (R.I. 1996).

### Common Law Duty

The Rhode Island Supreme Court has pointed out that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994). The existence of a duty is a question of law to be determined by the court. Ferreira v. Strack, 636 A.2d 682, 685 (R.I. 1994). Under Rhode Island law, rather than using a "universal test" to determine the existence of a duty, courts should employ "an ad hoc approach of considering all relevant factors." Id.

In Banks v. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987),

8

the Rhode Island Supreme Court considered the following factors
in determining the existence of a duty:

> (1) the foreseeability of harm to the plaintiff,
> (2) the degree of certainty that the plaintiff suffered
> an injury,
> (3) the closeness of connection between the defendant's
> conduct and the injury suffered,
> (4) the policy of preventing future harm, and
> (5) the extent of the burden to the defendant and the
> consequences to the community for imposing a duty to
> exercise care with resulting liability for breach.

522 A.2d at 1225. The Rhode Island Supreme Court indicated that
foreseeability of the risk of injury, which is the initial factor
that the Court identified in Banks, is "[t]he linchpin in
determining the existence of any duty owed . . . ." Splendorio,
682 A.2d at 466. This echoes the famous words of Justice Cardozo
in Palsgraf v. Long Island Railroad Co., 162 N.E. 99 (N.Y. 1928):
"[t]he risk reasonably to be perceived defines the duty to be
obeyed, and risk imports relation; it is risk to another or to
others within the range of apprehension." 162 N.E. at 100. In
Selwyn v. Ward, 879 A.2d 882 (R.I. 2005), the Rhode Island
Supreme Court elaborated on limiting the scope of a defendant's
duty by citing precedent which held that "duty must be based on
conduct 'sufficiently likely to result in the kind of harm'
suffered by the plaintiff, or that 'in order to temper
foreseeability . . . an adequate nexus must exist between the
foreseeability of [plaintiff's] harm and the actions of the
defendant.'" 879 A.2d at 887 (citation omitted).

9

In determining whether Essex owed a duty to Plaintiffs to conduct an inspection of The Station premises in any particular manner, the purpose of the inspection must be considered. In McAleer v. Smith, 791 F. Supp. 923 (D.R.I. 1992), this Court held that an insurer's alleged failure to conduct a proper inspection of a sailing vessel that later sank did not amount to a breach of duty to sail trainees who died as a result of the accident. 791 F. Supp. at 934-35. Even if a more comprehensive inspection would have alerted the insurer to an unsatisfactory situation, this Court observed that "an insurer is generally not liable for underwriting a foolhardy risk." Id. at 935. This is because, as articulated by the Michigan Supreme Court in Smith v. Allendale Mutual Insurance Co., 303 N.W.2d 702 (Mich. 1981):

> The law does not impose a duty upon an insurer who inspects in the absence of conduct evidencing an agreement or intent to benefit others by the inspection; only in such a case has the insurer acknowledged the propriety of judging the competence of its inspection by a standard which measures its potential effect on others.

303 N.W.2d at 711. Unless provided otherwise, an insurer conducts an inspection solely for its own purposes in underwriting, rating, and loss prevention rather than for the benefit of another. Smith, 303 N.W.2d at 706. An insurer who acts only for its own purposes cannot be charged with having owed a duty to its insured or third parties to inspect with reasonable care unless it affirmatively creates or enlarges a hazard. Id.

Plaintiffs do not allege that Essex, through its agents,

conducted the inspections for the benefit of possible future
patrons of the nightclub or even the owners of the club. Instead,
it is clear that Essex performed the inspections of The Station
premises for its own benefit to evaluate the risks, determine the
amount of insurance to issue and what premiums to charge. Essex
could not have anticipated that its inspection would create a
risk of harm toward any member of the general public, including
any unidentifiable future patron of The Station. Therefore, Essex
had neither a duty to inspect the premises, nor a duty to inspect
in any particular manner.

Also, in considering the burden to Essex and the consequences
to the community if a duty is imposed, this Court recognizes that
a fundamental aspect of the modern insurance system is that an
insurer and its insured agree upon the amount that the insurer
will be required to pay if an undetected hazard causes loss.  See
Smith, 303 N.W.2d at 722. Accordingly, Essex should only be
required to pay the finite amount previously agreed upon in the
liability insurance policy issued to Michael Derderian.  To hold
Essex accountable for the additional and substantial amounts
sought by Plaintiffs in this action would undermine a key tenet
of the liability insurance industry. Imposing such broad
liability upon insurance companies who conduct inspections,
"'without regard to whether they have agreed to provide
inspections as a service to their insureds, might either

11

inspections as a service to their insureds, might either
drastically reduce inspections or raise premiums dramatically to
meet the cost of more extensive inspection programs and
judgments.'" <u>Leroy v. Hartford Steam Boiler Inspection & Ins.
Co.</u>, 695 F. Supp. 1120, 1126 (D. Kan. 1988) (quoting <u>Smith</u>, 303
N.W.2d at 721). Although Essex may be required to pay the amount
of its policy coverage, it should not be further liable to
Plaintiffs for an infinite amount that could be in excess of its
own net worth.

<u>Third Party Liability: Restatement (Second) of Torts § 324A</u>

This Court, having concluded that there exists no common law
duty owed by Essex to Plaintiffs, is urged by Plaintiffs to
nevertheless find a duty owed pursuant to § 324A of Restatement
(Second) of Torts (1965). That section states:

> One who undertakes, gratuitously or for
> consideration, to render services to another which
> he should recognize as necessary for the protection
> of a third person or his things, is subject to
> liability to the third person for physical harm
> resulting from his failure to exercise reasonable
> care to protect his undertaking, if (a) his failure
> to exercise reasonable care increases the risk of
> such harm, or (b) he has undertaken to perform a
> duty owed by the other to the third person, or (c)
> the harm is suffered because of reliance of the
> other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). Plaintiffs argue
that the Rhode Island Supreme Court has embraced § 324A as "a
template for analysis of third-party liability." Mem. Supp. Pls.'
Objection Mot. Dismiss at 11.

Souther, 102 R.I. 609, 232 A.2d 396 (1967), in which the
defendant was authorized as an operator of an official motor
vehicle inspection station. 232 A.2d at 400. The plaintiffs were
injured while driving a vehicle that allegedly had been
negligently inspected by the defendant. Id. at 398. The employer
of one of the plaintiffs owned the vehicle and had taken the
vehicle to be inspected by the defendant. Id. at 397. The trial
court held that there was no privity between the plaintiffs and
defendant, but on appeal The Rhode Island Supreme Court declared
that the doctrine of privity was inapposite to the determination
of the case. Id. at 398.

The Court noted that "in certain negligence actions [the Court
has seen fit] to disregard the doctrine of privity." Id. These
situations included liability of a manufacturer of an imminently
dangerous product, liability of a maker of food for human
consumption, and liability of a landlord to a tenant, as well as
other individuals who were properly on the premises, for failure
to abide by his covenant to repair the premises. Id. The Court
then asserted that the sole question under consideration in the
case was whether "there [is] a duty owed to anyone but the owner
by an individual who being duly licensed by the state of Rhode
Island undertakes at the owner's request to inspect his motor
vehicle under the appropriate provisions of the motor vehicle
code[.]" Id.

The Court held that a duty is owed by one party to another
when "the circumstances involved in the undertaking make it clear
that there is an obvious and unreasonable risk of harm or injury
to outsiders if [one party] does not exercise due care in
fulfilling the contract . . . ." Id. at 399. The Court concurred
with the Pennsylvania Supreme Court's assertion that "[i]f a
person undertakes by contract to make periodic examinations and
inspections of equipment . . . he should reasonably foresee that
a normal and natural result of his failure to properly perform
such an undertaking might result in injury . . . to third persons
. . . ." Id. at 399-400 (quoting Evans v. Otis Elevator Co., 403
Pa. 13, 18 (1961)). The Court asserted that because the
legislature required inspections of motor vehicles to promote
highway safety and the defendant applied for and received
authority to conduct such inspections, he owed a duty to not only
the owner of the vehicle, but also to anyone else driving the
vehicle with the permission of the owner. Id. at 400. According
to the Court, to hold otherwise would frustrate the intent of the
legislature in requiring annual inspections. Id.

It is evident upon examination of Buszta, however, that the
Rhode Island Supreme Court did not adopt Restatement (Second) of
Torts § 324A as law. The Court merely held that privity was not a
bar to bringing a suit as a result of negligent motor vehicle
inspections. The only mention of Restatement (Second) of Torts §

14

324A came in the following passage:

> It has been held that a person who contracts to
> make repairs must exercise reasonable care in
> doing so, and although elements of contract may be
> involved, the repairer is liable in tort to third
> persons for injuries to such persons which are
> attributable to negligently made repairs. Smith v.
> Roberts, Ky., 268 S.W.2d 635; 5A Personal Injury,
> Frumer, Friedman and Pilgrim (1966 Cumulative
> Supp.) § 1, pp. 415-416.  This rule is in accord
> with the modern view as expressed in the
> Restatement, Torts 2d, § 324 A.

Id. at 399. It is clear that the Court was indicating that

holding a repairer liable to third parties injured by negligent

repairs is consistent with the view expressed by Restatement

(Second) of Torts § 324A. The Court was also declaring that

inspecting motor vehicles was sufficiently analogous to repairing

motor vehicles that inspectors should also be liable to third

parties. However, the Court was not declaring that in all

circumstances third parties could sue for sustained injuries.

   Indeed, as evidence that the Rhode Island Supreme Court did

not adopt Restatement (Second) of Torts § 324A in Buszta, the

same Court ordered parties in Menzies v. Sigma Pi Alumni Ass'n of

R.I., 110 R.I. 488, 294 A.2d 193 (1972), to rebrief and reargue

their cases, with the requirement that the parties give

"consideration to whether the principles set out in 2 Restatement

(Second) Torts §§ 325 and 324A (1965) have been or should be

accepted in this state . . . ." 294 A.2d at 195. It is obvious

that had the Rhode Island Supreme Court adopted Restatement

15

(Second) of Torts § 324A in <u>Buszta</u>, it would not have asked the parties in <u>Menzies</u> to brief that question. This Court is aware of no case where the Rhode Island Supreme Court has adopted Restatement (Second) of Torts § 324A as the law of this state. As a result, this Court cannot conclude that Restatement (Second) of Torts § 324A is the established law in Rhode Island.

An analogous section of Restatement (Second) of Torts § 324A is § 323, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). This section addresses liability to first parties rather than third parties, which is the purview of § 324A.

The status of Restatement (Second) of Torts § 323 in Rhode Island was examined in <u>Travelers Insurance Co. v. Priority Business Forms</u>, 11 F. Supp. 2d 194 (D.R.I. 1998) by this writer. In that case, the defendant leased property belonging to Carol Pearl, Inc. Travelers Insurance Company, which insured the property, brought suit against defendant as subrogee of Carol Pearl to recover money paid out under the insurance policy as a

16

result of a burglary and arson committed on the premises. Id. at
195. The essence of the plaintiff's contention was that the
defendant discontinued its burglar alarm service and did not
notify Carol Pearl of this. Id. at 196. Had it not been for this
course of conduct by the defendant, arsonists would not have been
able to set fire to the premises. Id. The plaintiff, relying upon
Restatement (Second) of Torts § 323, claimed that "Priority, in
maintaining the Alarm in operational status prior to January 21,
1991, 'undertook to provide a service which inured to the benefit
of Carol Pearl,' i.e., by protecting Carol Pearl's property." Id.
at 202. The plaintiff further contended that Carol Pearl relied
on the defendant's undertaking by not taking additional measures
to ensure the safety of the premises. Id. This reliance became
detrimental when the alarm service was discontinued, unbeknownst
to Carol Pearl, and arsonists set fire to the premises. Id.

In analyzing this claim, this Court stated:

> [I]t is not at all clear that the theory of § 323
> has been adopted in Rhode Island. It is true that
> "even one who assumes to act gratuitously, may
> become subject to the duty of acting carefully if
> he acts at all." This statement, however, simply
> sets forth a particular situation in which a legal
> duty may be imposed. It does not extend to an
> adoption of the relaxed approach to problems of
> proximate cause which § 323 appears to dictate.
> Travelers cites no case in which the Rhode Island
> Supreme Court has substituted notions of reliance
> and/or increased harm for traditional rules of
> proximate cause, and this Court seriously doubts
> that such a case is forthcoming.

17

Id. (citation omitted). This Court went on to note, however, that
even if § 323 were the law in Rhode Island, the plaintiff's claim
would still fail. Id. at 203. The reason was that the defendant
"quite simply did not 'undertake' to provide any 'service' to
Carol Pearl upon which the latter could rely." Id. This Court
went on to conclude:

> That Priority's maintenance of the Alarm may have
> been known by Carol Pearl, and may have benefitted
> Carol Pearl, does not mean that in maintaining the
> Alarm, Priority ever undertook to do anything for
> the purpose of benefiting Carol Pearl. Rather,
> Priority obviously maintained the Alarm for the
> sole purpose of protecting its own property, not
> that of its landlord.

Id. It is clear from this analysis that merely performing a
service that may be known to another individual or may benefit
another individual does not constitute an undertaking for the
benefit of that other individual.

Turning to precedent from another jurisdiction, the Michigan
Supreme Court addressed a claim based on Restatement (Second) of
Torts § 324A in Smith v. Allendale Mutual Insurance Co., 410
Mich. 685, 303 N.W.2d 702 (Mich. 1981). In the consolidated case
of Smith, fire insurance companies conducted inspections of the
premises of their insureds. 303 N.W.2d at 705-08. After the
plaintiff-employees of the respective insureds were injured or
killed by fires on the insureds' premises, the plaintiffs relied
on Restatement (Second) of Torts § 324A to claim that the fire
insurance companies breached an assumed duty of care to them by

18

failing to detect the fire hazards that caused their injuries.
Id. The Court rejected the plaintiffs' claims, however, reasoning
that "[a]n insurer who does not undertake to inspect for the
insured's benefit owes no duty to the insured or the insured's
employees to inspect with reasonable care." Id. at 706. "It is
not enough that the insurer acted. It must have undertaken to
render services to another. Its acts do not constitute such an
undertaking *unless it agreed or intended to benefit the insured
or its employees by the inspections.*" Id. at 711 (emphasis
added). Furthermore:

> An inspection for fire hazards does not in itself
> represent that the insurer has done more than seek
> to reduce claims or determine whether it is
> willing to underwrite or remain on the risk.
> Identification of fire hazards and the making of
> recommendations to the insured do not in
> themselves suggest an objective other than to
> reduce the insurer's losses on the policy or to
> justify a decision by the insurer to raise or
> lower rates or to decline or remain on the risk;
> such conduct does not imply an undertaking to warn
> the insured of reasonably identifiable fire
> hazards.

Id. at 712. See also Leroy v. Hartford Steam Boiler Inspection
and Ins. Co., 695 F. Supp. 1120, 1126 (D. Kan. 1988)(following
the reasoning of the Michigan Supreme Court in Smith); Staffney
v. Mich. Millers Mut. Ins. Co., 362 N.W.2d 897, 899 (Mich. App.
1985) (asserting that the complaint did not allege that the
insurer's undertaking of an inspection was intended for the
benefit of the insured, and that an allegation that a gratuitous

19

benefit inured to the insured as a result of the inspection is not sufficient to establish a duty owed by insurer to the insured); <u>Schultz v. Mills Mut. Ins. Group</u>, 474 N.W.2d 522, 526 (S.D. 1991) (expressing agreement with Michigan Supreme Court's analysis in <u>Smith</u>).

Applying these principles to the case sub judice, it is apparent that Essex did not undertake to provide a service to any other individual or entity. Essex cannot be found to have engaged in an undertaking for the intended benefit of The Station owners or patrons simply because Michael Derderian may have known about, relied on, and even benefitted from the inspections of The Station premises. Furthermore, there is no allegation in the Complaint that Essex ever undertook to perform the inspections for the benefit of The Station owners or patrons. Therefore, even if Restatement (Second) of Torts § 324A is considered to be the law in Rhode Island, Plaintiffs' claims still fail. In short, § 324A is clearly inapplicable to this case.

Plaintiffs further argue that <u>Hill v. U.S. Fidelity & Guaranty Co.</u>, 428 F.2d 112 (5th Cir. 1970) together with <u>Sims v. American Casualty Co.</u>, 206 S.E.2d 121 (Ga. Ct. App. 1974), <u>aff'd sub nom. Providence Wash. Insurance Co. v. Sims</u>, 209 S.E.2d 61 (Ga. 1974) and <u>Huggins v. Aetna Casualty & Surety Co.</u>, 264 S.E.2d 191 (Ga. 1980) along with their progeny are applicable to the case at bar. However, the Court in <u>Hill</u> determined that the applicable Florida

law in that case followed Restatement (Second) of Torts § 324A.
The Court in <u>Sims</u> made the same determination with respect to the
applicable Georgia law in that case. The Georgia Supreme Court
explicitly adopted Restatement (Second) of Torts § 324A as
Georgia law in <u>Huggins</u>. As this Court has explained above,
Restatement (Second) of Torts § 324A is not the law in Rhode
Island, and furthermore, it is not applicable to this case. The
bottom line is that in Rhode Island there exists no common law
duty owed by Essex to Plaintiffs in this situation.

<u>Statutory Immunity: Rhode Island General Laws § 27-8-15</u>

Plaintiffs argue that Essex should be subject to liability for
its inspections of The Station premises because Rhode Island
General Laws § 27-8-15 (2002 Reenactment) does not name liability
insurers among the category of insurers that are immune from
liability for conducting inadequate insurance inspections.
Plaintiffs indicate that Rhode Island General Laws § 27-8-15
entitled "Insurance Inspections" falls within Chapter 8
("Casualty Insurance") of Title 27, rather than Chapter 7
("Liability Insurance"). The statute reads in relevant part:

> The furnishing of, or failure to furnish, insurance
> inspections or advisory services in connection with or
> incidental to the issuance or renewal of a policy of
> property, casualty or boiler and machinery insurance shall
> not subject the insurer, whether domestic or foreign, its
> agents, employees, or service contractors, to liability for
> damages from injury, death, or loss occurring as a result of
> any act or omission in the course of those services.

Plaintiffs argue that the inclusion of the terms "property, casualty or boiler and machinery insurance," without express mention of liability insurance, demonstrates that the Rhode Island legislature did not intend to grant immunity to liability insurers for conducting inadequate insurance inspections. The Rhode Island Supreme Court has held, however, that courts "must apply cautiously the principle that express enumeration of items in a statute impliedly excludes all others, so that the principle furthers, rather than defeats, legislative intent." Volpe v. Stillman White Co., 415 A.2d 1034, 1036 (R.I. 1980). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the legislature." Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001).

Rhode Island law dictates that this Court should not broaden statutory provisions unless judicial interpretation is "necessary and appropriate in carrying out the clear intent or defining the terms of the statute." Simeone v. Charron, 762 A.2d 442, 448-49 (R.I. 2000). As this Court has noted, "[w]hen construing a statute, the Court must consider it in its entirety. The Court must interpret it so as to give it the meaning most consistent with its policies or obvious purposes. Moreover, legislation should not be given a meaning that leads to an unjust, absurd, or unreasonable result." Bogosian v. Woloohojian, 93 F. Supp. 2d 145, 155 (D.R.I. 2000) (quoting City of Warwick v. Almac's, Inc.,

22

442 A.2d 1265, 1272 (R.I. 1982)). Under Rhode Island law, a
statute also should not be construed in a manner that results in
absurdities or defeats its underlying purpose. Marques v.
Fitzgerald, 99 F.3d 1, 5 (1st Cir. 1996) (citing In re Falstaff
Brewing Corp., 637 A.2d 1047, 1050 (R.I. 1994)).

Title 27 of the Rhode Island General Laws reflects the policy
decisions of the Rhode Island legislature regarding insurance
law. The general policy underlying § 27-8-15 is that insurers
should not be held liable beyond the scope of their undertaking.
Specifically, insurers who, for their own purposes, conduct
inspections of their policyholders' premises do not owe a duty to
others to conduct inspections in any manner. Rather than
intending to carve out select instances where insurers would be
free from owing an otherwise existent duty, the purpose behind §
27-8-15 merely was to codify the absence of any common law duty
owed to third parties by insurers who conduct inspections for
their own purposes. To conclude that the Rhode Island legislature
intended to exclude liability insurers from the category of
insurers eligible for immunity under § 27-8-15 would be entirely
inconsistent with the general policy of the statute. For example,
it would be absurd to hold that an insurer who inadequately
inspects certain premises before issuing a fire policy is immune
from liability to third parties for conducting that inspection
but that the same insurer who inspects the same premises before

23

issuing a liability policy on those premises would not be immune
from liability.

As previously discussed, Essex voluntarily chose to inspect
the Station premises for its own purposes. Therefore, consistent
with the underlying purpose of the statute, Essex should be
immune from liability to Plaintiffs for its inspections. As Essex
owes no duty to Plaintiffs to have conducted an inspection of The
Station premises in any particular manner, Essex should be liable
only to the extent that it could have anticipated, which is the
amount of the policy issued to the named insured, Michael
Derderian, if the insured is at fault.

### Workers' Compensation Cases Distinguished

Plaintiffs rely on Latour v. Commercial Union Insurance Co.,
528 F. Supp. 231 (D.R.I. 1981), and Sims v. American Casualty
Co., 206 S.E.2d 121 (Ga. Ct. App. 1974), aff'd sub nom.
Providence Wash. Insurance Co. v. Sims, 209 S.E.2d 61 (Ga. 1974),
in support of their position that a duty is owed by Essex to the
Plaintiffs.  Such precedent is not applicable to the case before
this Court, however, as workers' compensation coverage is not at
issue in the instant matter.

In Sims, the plaintiff, as mother of the deceased employee,
brought suit against the employer's insurers for conducting
negligent safety inspections of the area where the employee was
fatally injured. 206 S.E.2d 124-25. One of the defendants was not

24

only the workers' compensation carrier of the employer, but also was alleged to have insured the employer with other policies. Id. at 125. The Court held that although this defendant was statutorily immune from tort liability in its capacity as the employer's workers compensation insurer, because other types of insurers were not accorded such immunity under the Workmen's Compensation Act, this defendant was not immune from liability arising out of other insurance policies that it issued to the employer. Id. at 130-31.

Similarly, in Latour, the plaintiffs were injured employees and widows of deceased employees who brought suit against their employer's insurer for undertaking a negligent inspection. 528 F. Supp. at 233. The defendant acted as the employer's workers' compensation insurer, general liability insurer and risk management consultant. Id. Judge Pettine, of this Court, concluded that although the defendant was immune from tort liability under the Rhode Island Workers' Compensation Act in its capacity as the employer's workers compensation insurer, that immunity did not extend to defendant as the employer's general liability insurer or risk management consultant. Id. at 236. Judge Pettine did not discuss the concept of legal duty owed to third parties by a liability insurer. In short, he did not hold that the insurance company qua liability insurance carrier had a duty to exercise due care in making inspections of the work

25

premises that was owed to the employees of the insured. Clearly
that issue was not before him.

In any event, these cases are certainly factually
distinguishable from the matter before this Court. Unlike the
defendants in both Sims and Latour, Essex did not provide its
insured, Michael Derderian, with workers compensation coverage.
Rather, Essex provided only liability insurance to Derderian.
Whereas a finite and defined class of employees could foreseeably
rely on the inspections of their employer's workers' compensation
insurers, an insurer such as Essex who solely provided liability
coverage could not have perceived or anticipated such a defined
class among the general public, including any possible future
patrons of The Station.

It is irrelevant that Defendant, acting in its sole capacity
as a liability insurer, does not enjoy immunity from tort
liability under the Rhode Island Workers' Compensation Act. The
Rhode Island Legislature enacted the Workers' Compensation Act to
provide a complete system of compensating injured employees. R.I.
GEN. LAWS § 28-29-20 (2003 Reenactment). As a result, all rights
and obligations assigned to employees and employers under the Act
are purely statutory. Nardolillo v. Big G Supermarket, Inc., 111
R.I. 751, 754, 306 A.2d 844, 847 (1973). Whereas the law of torts
involves "an adversary contest to right a wrong between the
contestants; workers' compensation is a system, not a contest, to

26

supply security to injured workers and distribute the cost to the consumers of the product." Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 1.03 (2005). Although tort law focuses on the relation of fault to an event, the primary concern of the workers' compensation system is "the relationship of an event to an employment." Id. The central determination of the workers' compensation system, unlike tort law, "is not a matter of assessing blame, but of marking out boundaries". Id. This unique character of the workers' compensation system as a purely statutory creation distinct from tort law renders cases concerning immunity from tort liability under workers' compensation statutes inapplicable to the matter before this Court. The long and short of it is that this Court opines that the Rhode Island Supreme Court when faced with a case of this kind will hold that Essex, as a liability insurer of the owners of The Station, did not owe a duty of due care in inspecting the premises to the future patrons of that nightclub. Therefore, Plaintiffs do not have a viable cause of action for negligent inspection against Essex.

### Multi-State and High Caliber

This Court now considers the Motions to Dismiss filed by Defendants Multi-State and High Caliber in light of the above analysis. As previously discussed, Plaintiffs allege that "[a]t various times, including but not limited to April 4, 1996, March

27

25, 1998 and October 8, 2002, Essex, through its agents and servants, Multi-State and High Caliber, conducted inspections of the premises at 211 Cowesett Ave." Compl. ¶ 656. In deciding the Motions to Dismiss of Multi-State and High Caliber, this Court will accept as true Plaintiffs' allegations that Multi-State and High Caliber were agents and servants of Essex, and that Multi-State and High Caliber conducted inspections of The Station premises on behalf of Essex.[2]

This Court's analysis regarding the Essex Motion to Dismiss also applies to the Motions to Dismiss of Defendants Multi-State and High Caliber. Although Multi-State and High Caliber, as agents and servants of Essex, may have owed a duty to Essex to conduct a satisfactory inspection, neither party owed a duty to Plaintiffs to inspect the premises at all or to inspect the premises in any particular manner.

CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Defendants Essex Insurance Company, Multi-State Inspections, Inc., and High Caliber Inspections, Inc. hereby are granted. No

---

[2] Defendants Multi-State and High Caliber indicate that "High Caliber . . . and Multi-State . . . were hired by an insurance company to evaluate the liability risk in insuring 211 Cowesett Avenue, West Warwick, R.I. . . . While on the premises High Caliber and Multi-State inspectors made a visual inspection of the property." Mem. Supp. Defs.' Mot. Dismiss at 4-5. At this stage in the litigation, however, this Court will only consider Plaintiffs' allegations in defining the nature of the relationship between Essex, Multi-State and High Caliber.

judgments will enter at this time.

It is so ordered.

Ronald R. Lagueux
Senior United States District Judge
November  9  , 2005