UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT L. GRAY, Administrator,
et al., Plaintiffs,

v.                                    C.A. No. 04-312L

JEFFREY DERDERIAN,
et al., Defendants.


ESTATE OF JUDE B. HENAULT,
et al., Plaintiffs,

v.                                    C.A. No. 03-483L

AMERICAN FOAM CORPORATION;
et al., Defendants.


In Re Motions to Dismiss of Defendants State of Rhode Island,
Irving J. Owens, Town of West Warwick, Denis Larocque, Anthony
Bettencourt, and Malcolm Moore, in his capacity as Finance
Director for the Town of West Warwick.

### DECISION AND ORDER

Ronald R. Lagueux, Senior District Judge.

On February 20, 2003, a deadly fire in West Warwick, Rhode
Island, destroyed a nightclub known as The Station.  The fire
started as the featured rock band, Great White, began its live
performance and the club was crowded with spectators, staff and
performers.  The opening featured stage fireworks, ignited by the
band's tour manager, as the band took the stage.

According to eyewitnesses, the fireworks created sparks
behind the stage which ignited polyurethane foam insulation on
the club's ceiling and walls.  In minutes, the entire building

was on fire and over 400 people were struggling to escape the
crowded, dark and smoky space.  The final toll:  One hundred
people dead and over 200 injured.

Numerous lawsuits, both criminal and civil, were filed
throughout southern New England in both state and federal courts.
Last year, in Passa v. Derderian, 308 F. Supp. 2d 43 (D.R.I.
2004), this Court asserted jurisdiction over several of the civil
cases that had been removed here from Rhode Island Superior
Court, and asserted jurisdiction as well over the cases that had
originally been filed in this Court.  The Court's exercise of
original federal jurisdiction is based upon the Multiparty,
Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369.
Since then, to the best of this Court's knowledge, all civil
lawsuits resulting from the nightclub fire have been consolidated
in this Court, pursuant to a First Amended Master Complaint
(hereinafter "the Master Complaint") filed and adopted jointly by
about 250 plaintiffs, against over 50 defendants.

Although this Court's jurisdiction relies upon federal law,
Rhode Island provides the substantive law for these cases.  Erie
R.R. v. Tompkins, 304 U.S. 64 (1938); Ticketmaster-New York v.
Alioto, 26 F.3d 201, 204 (1st Cir. 1994); Passa v. Derderian, 308
F. Supp. 2d 43 (D.R.I. 2004).  As of this writing, discovery has
been stayed to permit an adequate time for service of, and
response to, the Master Complaint and for the Court to deal with

-2-

a number of motions to dismiss.  To date, the Court has addressed four previous motions to dismiss, three of which may be found under this same caption at 389 F. Supp. 2d 308 (D.R.I. 2005), 371 F. Supp. 2d 98 (D.R.I. 2005) and 365 F. Supp. 2d 218 (D.R.I. 2005).  The fourth, most recent opinion is available through West Law, under the citation 2005 WL 3005046.

Presently before the Court are two Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by the State of Rhode Island and the Town of West Warwick. Additional defendants included in these Motions are State Fire Marshal Irving J. Owens, individually and in his official capacity; Malcolm Moore, in his capacity as Finance Director for the Town of West Warwick; Denis Larocque, individually and in his capacity as the Town's Fire Inspector; and Anthony Bettencourt, individually and in his capacity as a West Warwick police officer.  Plaintiffs allege that these defendants were negligent in their enforcement of fire codes and other safety regulations, and that the State and the municipality are liable for the negligence of their employees.  Defendants move for the dismissal of all counts against them, based upon the doctrine of sovereign immunity, among other grounds.

For the reasons set forth below, the Court grants the Motion to Dismiss of the State of Rhode Island and the State Fire Marshal Irving J. Owens.  The Court denies the Motion to Dismiss

-3-

brought by the Town of West Warwick, on behalf of its Fire Inspector Denis Larocque, Finance Director Malcolm Moore, and police officer Anthony Bettencourt.  For the sake of clarity, the Court will address the allegations against the State and Town defendants separately.

## Standard of Review

Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Accordingly, in the course of its analysis, the Court will assume that all Plaintiffs' allegations are true.  The allegations and all reasonable inferences to be drawn from them will be construed in the light most favorable to the Plaintiffs.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  As stated by the United States Supreme Court, "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957).  Defendants' motion will fail if "the well-pleaded facts, taken as true, justify recovery on any supportable legal theory."  Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000).

## State of Rhode Island Defendants

### Irving J. Owens

-4-

Irving J. Owens was Fire Marshal for the State of Rhode Island at the time of the fire.  The State Fire Marshal is a position created by Rhode Island statute, R.I. Gen. Laws § 23-28.2-1, and filled by gubernatorial appointment.

In the Master Complaint, Plaintiffs allege that Owens is directly responsible "for the enactment and enforcement of fire safety laws within the State of Rhode Island," including inspecting and enforcing code requirements for commercial structures such as The Station. Master Complaint, ¶ 434. Plaintiffs allege that Owens was egregiously negligent in the performance of these tasks, by "failing to enforce appropriate capacity limitations and exit requirements, failing to discover and order remedied highly flammable interior finish within the building and failing to properly train and supervise state personnel responsible for enforcing the fire safety laws of Rhode Island."  Master Complaint ¶ 435.  In Count 36, Plaintiffs seek damages from Owens individually and in his official capacity. Master Complaint ¶ 440.

The State of Rhode Island, on behalf of Owens, has advanced at least eight separate grounds for dismissal of the counts naming Owens and the State.  In this decision, the Court will focus on the argument that Owens is immune from liability based upon Rhode Island statute, R.I. Gen. Laws § 23-28.2-17.  The pertinent statutory section, entitled "Relief from

-5-

responsibility," provides,

> The state fire marshal, his or her deputies, and assistants, charged with the enforcement of the Fire Safety Code, chapters 28.1 through 28.39 of this title, shall not render themselves liable personally, and they are hereby relieved from all personal liability for any damage that may accrue to persons or property as a result of any act required or permitted in the discharge of their official duties. Any suit instituted against any officer or employee because of an act performed by him or her in the lawful discharge of his or her duties, and under the provisions of the Fire Safety Code, shall be defended by the legal representative of the state until the final termination of the proceedings. In no case shall the fire marshal, his or her deputies, or assistants, be liable for costs in any action, suit, or proceedings that may be instituted in pursuance of the provisions of the Fire Safety Code, and <u>any fire marshal, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his or her official duties in connection therewith.</u>

R. I. G. L. § 23-28.2-17, (emphasis added). Owens' alleged failure to adequately enforce Fire Safety Code provisions inarguably concerns the discharge of his official duties, and falls squarely within the scope of this statutory provision. Plaintiffs have made no allegation that Owens acted in bad faith or with malice. Consequently, Owens is relieved from all personal liability for damages caused by The Station fire.

### The State of Rhode Island

The State of Rhode Island is charged with negligence in the

enactment and enforcement of fire safety laws, "through its Fire
Marshal, Irving J. Owens." Master Complaint ¶ 434. Under the
theory of *respondeat superior*, the State's liability results from
the alleged negligence of Owens, acting in his official capacity.
The Court has concluded above that Owens is relieved from
personal liability; however, the question remains as to whether
the State may still be liable for actions Owens took, or failed
to take, in his official capacity.

Plaintiffs assert that even if Owens is absolved from
personal liability, the State remains liable for Owens' negligent
conduct. However, for reasons explained below, this Court holds
that Rhode Island Gen. Laws § 23-28.2-17 also provides immunity
for the State under these particular circumstances.

Returning to the above-quoted statutory immunity provision:
the first sentence relieves the Fire Marshal from all personal
liability for damages resulting from any official act. The third
sentence goes further:

> ... and any fire marshal, acting in good
> faith and without malice, shall be free from
> liability for acts performed under any of its
> provisions or by reason of any act or
> omission in the performance of his or her
> official duties in connection therewith.

R.I.G.L. § 23-28.2-17. The impact of this sentence is to relieve
the Fire Marshal from all liability for acts undertaken in the
performance of his duty, as long as his actions are free from bad
faith and malice. This interpretation operates to absolve both

-7-

Owens, and consequently the State, of all liability for any acts
of negligence committed in connection with the enforcement of
regulations at The Station, as no bad faith or malice on the part
of Owens has been alleged in the Master Complaint.  If no
liability can be charged against Owens, then no *respondeat*
*superior* liability can be charged to the State.

Plaintiffs urge the Court to ignore this plain language
interpretation, and to limit the relief granted by the statute to
personal liability only, leaving the State as a defendant.
However, a close reading of the two Rhode Island Supreme Court
cases that have addressed this qualified immunity statute reveals
that Plaintiffs' position is not mandated, and is not the correct
one.

The statutory immunity section was enacted by the Rhode
Island legislature in 1975, and the Rhode Island Supreme Court
first interpreted it in 1984 in <u>Bitgood v. Allstate Ins. Co.</u>, 481
A.2d 1001.  In that case, the plaintiff's place of business
burned down, killing his associate.  An investigation ensued,
undertaken by the State Deputy Fire Marshal.  The plaintiff filed
a claim with his insurance company, and was told that he would be
paid when the insurance company received the Deputy Fire
Marshal's final report absolving plaintiff from any criminal
liability for the fire.  This report, which did clear plaintiff
of all liability, was completed approximately six months after

-8-

the fire, but not received by the insurance company until another
seven months after that.  In the meantime, Plaintiff sued the
Deputy Fire Marshal, the State and the insurance company,
alleging, among other charges, that they conspired to delay the
final report and his financial recovery.  An eventual pay-out
under the insurance policy constituted a settlement with that
defendant, and the case against the State and the Deputy Fire
Marshal proceeded to trial, resulting in a directed verdict in
favor of the Deputy Fire Marshal.  In affirming the directed
verdict, the Supreme Court wrote,

> Section 23-28.2-17 purports to relieve the
> fire marshal and his personnel from any
> personal liability resulting from the
> carrying out of their responsibilities. ... A
> review  of the record failed to disclose
> substantial evidence to support the
> allegation of bad faith as an issue for the
> jury.

481 A.2d at 1006 -1007.

The Court next goes on to dispense with the State's appeal
concerning the denial of its motion to dismiss and alleged
improper service of process, declaring that "these issues have
been rendered moot in light of the fact that the state and its
deputy fire marshal, Ignagni, are the prevailing parties in this
action."  481 A.2d at 1008.  Although the Bitgood Court speaks in
terms of the statute providing the Deputy Fire Marshal relief
from personal liability only, it does not preserve any cause of
action against the State after affirming the directed verdict in

favor of the Deputy Fire Marshal.  481 A.2d at 1009.

In <u>Vaill v. Franklin</u>, 722 A.2d 793 (R.I. 1999), a shop owner claimed that the town's fire chief and officers violated his civil rights when they conducted an emergency inspection of his shop during the annual Christmas tree lighting ceremony/sales event.  The trial judge granted defendants' motion for summary judgment on the grounds that R.I. Gen. Laws § 23-28.2-17 shielded them from liability.  722 A.2d at 795.  On appeal, the Rhode Island Supreme Court held that there was no evidence to show that the officers, who were following the orders of the Fire Chief, acted in bad faith or with malice.  "...[T]herefore," the Court concluded, "the trial court did not err when it found that the officers were shielded from liability based upon qualified immunity."  722 A.2d at 795.

On the other hand, the determination of whether the Fire Chief was likewise shielded from liability by the statute was dependent on whether the spot inspection was a reasonable search under the Fourth Amendment.  Presumably, a search which failed to pass constitutional scrutiny could be found by the jury to be evidence of bad faith.  Consequently, summary judgment was vacated as to the Fire Chief, and the case was remanded for a determination of the material facts concerning the constitutionality of the search.  722 A.2d at 796.

In the case herein, Plaintiffs urge the Court to follow

-10-

cases where the Rhode Island Supreme Court has indicated that a
municipality could be liable for the negligence of its building
inspector. See Haworth v. Lannon, 813 A.2d 62 (R.I. 2003) and
Quality Court Condominium Ass'n v. Quality Hill Dev. Corp., 641
A.2d 746 (R.I. 1994). While these cases certainly have some
similarities to the case before the Court, they are also
distinguishable and, therefore, not controlling. The State Fire
Marshal has been granted immunity by the legislature; the
building inspector cases were analyzed by the Rhode Island
Supreme Court according to the public duty doctrine.

This Court's reading of the statutory immunity provision is
consistent with the Rhode Island Supreme Court's sovereign
immunity jurisprudence. In 1970, the State of Rhode Island
underwent a radical shift in its policy on the historical
doctrine of sovereign immunity. First the immunity previously
enjoyed by the state's municipalities was abrogated by Becker v.
Beaudoin, 261 A.2d 896 (R.I. 1970) (this writer was the trial
judge in that case); then the legislature followed with a broad
waiver of the State's immunity from tort liability as codified by
Rhode Island Gen. Laws § 9-31-1.[1]  In the ensuing thirty-five

---

[1] The section reads: **9-31-1. Tort liability of state.** - The
state of Rhode Island and any political subdivision thereof,
including all cities and towns, shall, subject to the period of
limitations set forth in § 9-1-25, hereby be liable in all
actions of tort in the same manner as a private individual or
corporation; provided, however, that any recovery in any such
action shall not exceed the monetary limitations thereof set

years, some fine tuning has taken place.

Despite the broad language of Rhode Island Gen. Laws § 9-31-1, courts have exercised restraint in imposing tort liability on the State in all cases.  This is in keeping with the holdings of the United States Supreme Court, which has said on this issue,

> When the Court in 1793 held that a State could be sued in the federal courts by a citizen of another State, the Eleventh Amendment was passed precluding it.  But this is an immunity which a State may waive at is pleasure.  The conclusion that there has been a waiver will not be lightly inferred.

Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 276 (1959) (emphasis added) (cites omitted).  In Marrapese v. Rhode Island, 500 F. Supp. 1207 (D.R.I. 1980), Judge Pettine of this Court stated,

> In accordance with the standard of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938), this Court must find that there has been an "intentional relinquishment or abandonment of a known right or privilege."  The most obvious evidence of such relinquishment would be an explicit, statutory statement that Rhode Island consents to be sued in the federal courts.

500 F. Supp. 1207, 1212-1213.  See also Andrade v. State, 448 A.2d 1293, 1294 (R.I. 1982).

In Calhoun v. Providence, 390 A.2d 350, 355 (R.I. 1978), the Rhode Island Supreme Court explicitly recognized that "there is a

---

forth in this chapter.

-12-

zone of governmental operation which should be insulated from
tort claims..."  In <u>Calhoun</u>, the plaintiff was mistakenly
rearrested on a motor vehicle charge that had been resolved.  The
error came about when either the judge or court clerk failed to
cancel the initial capias, or warrant, on resolution of the case.
In upholding the notion of judicial immunity, the Court engaged
in an extensive defense of the practice of limiting the State's
waiver of tort liability,

> However, unlike the common law doctrine of
> sovereign immunity which operated as a bar to
> recovery regardless of whether countervailing
> policies were implicated, current limitations
> upon governmental liability proceed from
> considerations of competing interests.  There
> must be a weighing of the injured party's
> demand for justice against the state's
> equally valid claim to exercise certain
> powers for the good of all without burdensome
> encumbrances and disruptive forces.

390 A.2d at 355.

This Court opines that it is precisely this weighing of
countervailing values that resulted in the state legislature's
decision to relieve the State Fire Marshal and his or her
deputies from tort liability for all actions undertaken in
connection with his or her official duties, except where those
actions were motivated by bad faith or malice.  Because
Plaintiffs herein have not alleged that Owens acted in bad faith
or with malice, the charges against him, in his official
capacity, must be dismissed.

The Rhode Island Supreme Court in <u>Calhoun</u> also states clearly that no liability can be charged to the State, based on the doctrine of *respondeat superior*, if the state's agent or employee is immune from prosecution: "We, therefore, find in this case, as did the trial justice, that plaintiff's claim is barred if the state official responsible for canceling the capias personally enjoyed the protection of a governmental immunity from tort liability." 390 A.2d at 357.

This same position was reiterated by the Rhode Island Supreme Court in a case involving prison guards, <u>Saunders v. State</u>, 446 A.2d 748 (R.I. 1982). In that case, this District Court had certified several questions of law to the Rhode Island Supreme Court. One of the questions concerned the State's *respondeat superior* liability for the torts of its employees. In response, the Rhode Island Supreme Court wrote,

> Consequently, in the event that a correctional officer employed by the state was guilty of negligence <u>and was not protected by personal immunity</u>, the state would be liable under the doctrine of *respondeat superior* for the negligence of its employee subject to the monetary limitation set forth in § 9-31-2.

446 A.2d at 752 (emphasis added).

Therefore, it appears that the immunity from personal liability afforded the Fire Marshal by R.I.G.L. § 23-28.2-17, for actions taken in his official capacity, is sufficient to shield the State from liability for those actions, even without the

broader immunity offered by the section's final sentence. Accordingly, all allegations in the Master Complaint against the State of Rhode Island and Irving J. Owens must be dismissed.

### Henault allegations

A group of plaintiffs from Connecticut, under the caption Henault v. American Foam Corp., C.A. No. 03-483L, has adopted the Master Complaint and also enumerated several additional claims in its Notice of Adoption of First Amended Master Complaint. Based on the immunity provided Fire Marshal Irving J. Owens and the State by Rhode Island Gen. Laws § 23-28.2-17, these additional counts are hereby dismissed. The counts include Count Eight for negligence, Count Nine for damages stemming from the commission of a crime (R.I.G.L. § 9-1-2), and Count Ten, which names Owens and the State in a joint venture with other named defendants, which is dismissed only to the extent of removing Owens and the State from the list of joint venturers.

### Defendants from the Town of West Warwick

The Town Defendants include the Town of West Warwick as represented by Malcolm Moore, in his official capacity as Finance Director, police officer Anthony Bettencourt and Fire Inspector Denis Larocque. The Town's memoranda identifies seven grounds for the dismissal of the allegations against these defendants. To determine whether or not any of these arguments is sufficient to defeat the allegations at this pleading stage, the Court will

-15-

review each argument separately.

### Statutory immunity

Town fire official Denis Larocque asserts that he is a deputy to the State Fire Marshal and, therefore, the allegations against him must be dismissed based upon the statutory immunity provided by Rhode Island Gen. Laws § 23-28.2-17. In the Master Complaint, as well as in the Henault Plaintiffs' Notice of Adoption of First Amended Master Complaint (hereinafter "Notice of Adoption"), Larocque is identified as Fire Inspector for the Town of West Warwick.

Pursuant to Rhode Island Gen. Laws § 23-28.2-9, the State Fire Marshal "may appoint as many nonsalaried assistant deputy state fire marshals as he or she may deem necessary..." The statute provides further: "(b) The chief of the fire department of the several cities, towns, and fire districts may be an assistant fire marshal subject to the approval of the state fire marshal..." R.I.G.L. 23-28.2-9 (b). At the present stage in this litigation, there is no evidence of Larocque's appointment as a deputy. Without this evidence, the immunity statute cannot properly be invoked or applied on his behalf.

Furthermore, Plaintiffs allege that Larocque's negligence "constituted a lack of good faith performance of his duties." Master Complaint, ¶ 421. If the Plaintiffs can demonstrate that Larocque's negligence in carrying out his duties resulted from

-16-

bad faith or malice, then the immunity statute would not provide
a shield for him - regardless of his status as a deputy fire
marshal.  R.I Gen. Laws § 23-28.2-17.

### Quasi-judicial immunity

The Town Defendants argue that Larocque is protected from
liability under the doctrine of quasi-judicial immunity.  The
Rhode Island Supreme Court has recognized that "... agents of the
state who performed a quasi-judicial function were entitled to
immunity both for themselves and for the sovereign entity that
employed them." Mall at Coventry Joint Venture v. McLeod, 721
A.2d 865, 869 (R.I. 1998) (citing Psilopolous v. State, 636 A.2d
727 (R.I. 1994)).  In Suitor v. Nugent, 199 A.2d 722, 724 (R.I.
1964), the Rhode Island Supreme Court adopted a description of
the quasi-judicial function from the New Jersey Superior Court,

> Where a power rests in judgment or
> discretion, so that it is of a judicial
> nature or character, but does not involve the
> exercise of the functions of a judge, or is
> conferred upon an officer other than judicial
> officer, it is generally deemed 'quasi-
> judicial.'  Throop, Public Officers, Sec.
> 533.  It is defined as a term applied to the
> action and discretion of public
> administrative officers, who are required to
> investigate facts, and draw conclusions from
> them, as a basis for their official action,
> and to exercise discretion of a judicial
> nature.

199 A.2d at 724, (citing State v. Winne, 21 N.J. Super. 180, 198,
91 A.2d 65, 74 (1952)).

Plaintiffs allege that Larocque was negligent in the

performance of his duties, and some of those duties and
responsibilities are enumerated in the Master Complaint.
However, the information supplied at this point in the litigation
is insufficient to make a determination as to whether Larocque
was required "to exercise discretion of a judicial nature" in the
performance of his job.  Id., at 724.  Consequently, dismissing
the allegations against Larocque or the Town based upon the
doctrine of quasi-judicial immunity would be inappropriate at
this time.

### 'Negligent enforcement' not a cause of action

The Town Defendants argue that the allegations against them
must be dismissed because there is no cause of action for a
governmental entity's negligent enforcement of a regulatory
scheme, such as the State Fire Safety Code.  In support of this
contention, they rely on a line of cases from Kentucky, and one
from Vermont.[2]  The Town Defendants are correct that the Fire
Safety Code does not include a civil remedy for violations, and
that the Rhode Island Supreme Court would be unlikely to infer
that such a remedy exists.  See Bandoni v. State, 715 A.2d 580,
585 (R.I. 1998).

However, Plaintiffs respond that the cause of action they
have alleged is not for negligent enforcement of a regulatory

---

[2] See Bolden v. Covington, 803 S.W.2d 577 (Ky. 1991) and
Corbin v. Buchanan, 657 A.2d 170 (Vt. 1994).

-18-

scheme.   Instead, according to Plaintiffs, the Town Defendants'
duty was a common law duty to act carefully after affirmatively
undertaking a responsibility – in this case, to inspect the
building and enforce the fire code.   The Rhode Island Supreme
Court has indeed held that such a duty exists,

> We have recognized the doctrine that one who
> assumes a duty must do so with reasonable
> care whether or not that person had an
> obligation to perform the act or repairs
> prior to assuming the duty.

Izen v. Winoker, 589 A.2d 824, 828 (R.I. 1991).

Moreover, Plaintiffs are able to cite several Rhode Island
Supreme Court cases where a cause of action was found to exist
for negligent enforcement of the State's building code, which,
like the Fire Safety Code, does not include a private right of
action or civil remedy.   See Torres v. Damicis, 853 A.2d 1233
(R.I. 2004); Haworth v. Lannon, 813 A.2d 62 (R.I. 2003); Boland
v. Tiverton, 670 A.2d 1245 (R.I. 1996); Quality Court Condominium
Ass'n v. Quality Hill Dev. Corp., 641 A.2d 746 (R.I. 1994).   The
Rhode Island Supreme Court relied on the law pertaining to the
public duty doctrine to analyze these cases.   This Court
concludes, therefore, that the Plaintiffs' negligence count sets
forth a cause of action and that a public duty doctrine analysis
is the appropriate approach.

### Public Duty Doctrine

The Town Defendants assert that Plaintiffs' claims are

barred by the public duty doctrine.   The public duty doctrine is
an exception to the broad waiver of sovereign immunity granted by
Rhode Island Gen. Laws § 9-31-1.   The doctrine shields a
government entity from tort liability, as long as the entity is
engaged in a governmental function of the sort that is not
ordinarily undertaken by private individuals.   In the following
instances, the Rhode Island Supreme Court has found that the
government entity was performing a function not ordinarily
undertaken by private individuals:   the issuance of an
entertainment license by the town council, <u>Martinelli v. Hopkins</u>,
787 A.2d 1158 (R.I. 2001); highway maintenance, <u>Wroblewski v.
Clark</u>, 146 A.2d 164 (R.I. 1958) and <u>Knudsen v. Hall</u>, 490 A.2d 976
(R.I. 1985); supervision of prisoners in jail, <u>Becker v.
Beaudoin</u>, 261 A.2d 896 (R.I 1970); issuance of a driver's
license, <u>Ryan v. DOT</u>, 420 A.2d 841 (R.I. 1980).

     A government entity engaged in carrying out an exclusively
governmental function will generally be rendered immune from tort
liability by the public duty doctrine, unless the government's
actions fall into one of two exceptions: 1) when the government
entity owes a special duty to the plaintiff; or 2) when the
government's negligent conduct is egregious.   <u>Martinelli v.
Hopkins</u>, 787 A.2d 1158, 1167 (R.I. 2001).

     The Rhode Island Supreme Court distinguishes a 'public duty'
owed to the citizenry at large from a 'special duty' owed to a

-20-

specific identifiable individual, and describes the distinction

as "a manifestation of public policy." <u>Orzechowski v. State</u>, 485

A.2d 545, 548 (R.I. 1984).   In <u>Quality Court Condominium Ass'n v.</u>

<u>Quality Hill Dev. Corp.</u>, 641 A.2d 746 (R.I. 1994), the Rhode

Island Supreme Court concluded that the City of Pawtucket,

because of the actions of the City's building inspector, owed a

special duty to the condominium association whose buildings were

plagued by construction defects in violation of the state

building code.   The Supreme Court emphasized that a single visit

to a building site by the building inspector to ensure code

compliance would be insufficient to establish a special duty.

However, in this case, the City's building inspector had met

repeatedly with the seller of the condominiums, the unit owners,

the architect and the State building inspector in an effort to

resolve the construction problems.   The Supreme Court wrote,

> This court is persuaded that the specific
> events listed above brought the individual
> unit owners "specifically into the realm of
> [the city's] knowledge."   This was not an
> instance in which the potential "victim" was
> unknown to the city.   After the meeting with
> a representative of the Attorney General's
> office the city's duty was to the individual
> owners of the condominium's units and "not to
> some amorphous, unknown 'public.'"

641 A.2d at 751 (cites omitted).

The Rhode Island Supreme Court further limited the public

duty doctrine in 1991, when it established the 'egregious'

conduct exception in the case of <u>Verity v. Danti</u>, 585 A.2d 65

(R.I. 1991). In that case, a girl was injured when she stepped off the sidewalk in order to avoid a large tree that blocked her way.  When she stepped onto Route 44, she was struck by a car. The tree took up the entire sidewalk, and a stone wall prevented pedestrians from passing the tree on the other side.  The trial judge granted the State's motion to dismiss based upon the public duty doctrine.  585 A.2d at 66.

But the Supreme Court found that state employees were aware of the tree, which had stood in that spot for over 100 years, and held that the State's failure to remove the tree "forced Stephanie into the position of peril that caused her to be injured."  585 A.2d at 67.  The Supreme Court stated,

> We find that the state's negligence in this
> instance is so extreme that to bar suit under
> the public duty doctrine would effectively
> excuse governmental employees from remedying
> perilous situations that they themselves have
> created.  To recognize governmental immunity
> under the present facts would violate the
> basic premise of the Tort Claims Act as
> stated above. ... We conclude, therefore,
> that when the state has knowledge that it has
> created a circumstance that forces an
> individual into a position of peril and
> subsequently chooses not to remedy the
> situation, the public duty doctrine does not
> shield the state from liability.

585 A.2d at 67.

To determine if the public duty doctrine provides a shelter of immunity for the Town Defendants, the Court must make determinations on the following three issues:  1) was the

-22-

particular defendant engaged in an activity not ordinarily undertaken by private individuals? 2) did the particular defendant owe a special duty to the Station Plaintiffs? and 3) were the actions of that defendant egregiously negligent? Obviously, such determinations must await the presentation of evidence.

### Anthony Bettencourt

The threshold issue is sufficient to eliminate West Warwick police officer Anthony Bettencourt from the protection of the public duty doctrine.  According to the Master Complaint, Bettencourt "was employed as a special detail officer to provide security services, and enforce the law, at The Station nightclub before and during the Great White Concert."  Master Complaint ¶ 417.  The act of providing security services is one that is frequently carried out by private individuals.  See Housing Authority of the City of Providence v. Oropeza, 713 A.2d 1262, 1264 (R.I. 1998).  The Court has insufficient evidence to evaluate Bettencourt's duties, or to make a determination as to the precise nature of the arrangement among Bettencourt, The Station owners and the Town of West Warwick.  The analysis as to whether Bettencourt can be shielded from liability by the public duty doctrine must await development of the facts pertaining thereto.

## Denis Larocque

West Warwick Fire Inspector Denis Larocque "was responsible
for inspecting commercial structures in the Town of West Warwick
and for enforcing the fire code and building laws of the State of
Rhode Island within West Warwick." Master Complaint ¶ 414.   The
Rhode Island Supreme Court recommends a "functional rather than
abstract" analysis of this activity:   "We inquire whether this is
an activity that a private person or corporation would be likely
to carry out?"  O'Brien v. State, 555 A.2d 334, 338 (R.I. 1989).

The Supreme Court has consistently held that the enforcement
of the state building code is not an activity engaged in by
private persons or corporations.  Torres v. Damicis, 853 A.2d
1233, 1239 (R.I. 2004).  Consistent with this analysis, this
Court holds that the enforcement of the fire code is likewise not
an activity undertaken by private persons or corporations.

The Henault Plaintiffs have alleged that Larocque owed a
duty "in particular" to the patrons of The Station.  Henault
Notice of Adoption ¶ 45.  The Master Complaint has alleged that
the negligence of Larocque, and through him the Town, was
egregious in nature.  Master Complaint ¶ 421.  These allegations
that Larocque's negligence fits into one or both of the
exceptions to the public duty doctrine are sufficient to prevent
the dismissal of the charges against Larocque and the Town on
these grounds.

In this decision this Court concurs with the Rhode Island
Supreme Court which has stated that "controversies in which the
public duty doctrine is asserted as a defense are not susceptible
of disposition by means of a motion for judgment on the
pleadings..." <u>Haley v. Town of Lincoln</u>, 611 A.2d 845, 847 (R.I.
1992). The Supreme Court explained further:

> In such cases to succeed on a Rule 12(c)
> motion, the state must demonstrate to a
> certainty that its relationship with the
> plaintiff does not come within an exception
> to the public duty doctrine. It is virtually
> impossible for the state to sustain such a
> burden when the pleadings are viewed in the
> light most favorable to the plaintiff. ... In
> light of the fact-intensive exceptions to the
> public duty doctrine, the trial court is
> unlikely to be able to hold that the
> plaintiff could not establish the state's
> negligence under any set of facts that might
> be adduced at trial.

611 A.2d at 849-50. <u>See also</u> <u>Tedesco v. Connors</u>, 871 A.2d 920,
926 (R.I. 2005). Based on the information made available to the
Court at this time by the pleadings, viewed in the light most
favorable to the Plaintiffs, it does not appear that the public
duty doctrine can shield Bettencourt, Larocque and the Town of
West Warwick from the burden of going forward as defendants in
this case.

**No criminal conduct giving rise to civil damages**

Plaintiffs have alleged that Larocque's actions or omissions
constitute the commission of a crime or offense, and, therefore,
Plaintiffs may recover damages from him and the Town pursuant to

-25-

Rhode Island Gen. Laws § 9-1-2, which provides crime victims with recourse to make a financial recovery from crime perpetrators.[3] Defendants seek the dismissal of this count because, they argue, the allegations do not support a finding that Larocque committed a criminal act.

Under Section 9-1-2, a plaintiff may bring a cause of action even if no criminal complaint for the crime or offense has been filed. Mello v. Dalomba, 798 A.2d 405, 411 (R.I. 2002). The Rhode Island Supreme Court defines the common law crime of involuntary manslaughter as follows, "This court has long held that the crime of involuntary manslaughter may be based upon proof that a defendant has been guilty of gross negligence and that such gross negligence is equated with the term 'criminal negligence.'" State v. Cacchiotti, 568 A.2d 1026, 1030 (R.I. 1990). If, as they have alleged, Plaintiffs can establish that Larocque was egregiously negligent in carrying out, or failing to carry out, his duties in enforcing the fire code, then it is possible that his negligence could be found to be 'gross' or

---

[3] R.I. Gen. Laws § 9-1-2 states: **Civil liability for crimes and offenses.** – Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof of in case of restoration.

'criminal' negligence.  Consequently, the Court holds that it
would be premature at this time to dismiss the counts for civil
damages under section 9-1-2.

### Proximate cause

The Town Defendants assert that the negligence claims
against them must be dismissed because their actions were not the
proximate cause of Plaintiffs' injuries.  The fire, they argue,
was caused by intervening negligent and criminal acts of others,
which acts break the causal chain.

To make a *prima facie* case of negligence under Rhode Island
law, Plaintiffs must show that 1) Defendants owed them a legal
duty to refrain from negligent activities; 2) Defendants breached
that duty; 3) the breach proximately caused Plaintiffs' injuries;
and 4) actual loss or damages resulted.  Splendorio v. Bilray
Demolition Co., 682 A.2d 461, 466 (R.I. 1996).

Proximate cause is described as the proximate connection
between a defendant's negligence and plaintiff's injury, or a
cause which is natural, unbroken and continuous.  Peycke v.
United E. Ry., 49 R.I. 257, 259 (1928).

> "It is well settled that in order to gain
> recovery in a negligence action, a plaintiff
> must establish***proximate causation between
> the conduct and the resulting injury, and the
> actual loss or damage." Jenard v. Halpin,
> 567 A.2d 368, 370 (R.I. 1989) (citing
> Atlantic Home Insulation, Inc. v. James J.
> Reilly, Inc., 537 A.2d 126, 128 (R.I. 1988)).
> "[P]roximate cause is established by showing
> that but for the negligence of the

-27-

> tortfeasor, injury to the plaintiff would not
> have occurred." <u>Skaling v. Aetna Insurance
> Co.</u>, 742 A.2d 282, 288 (R.I. 1999) (citing
> <u>Fondedile, S.A. v. C.E. Maguire, Inc.</u>, 610
> A.2d 87, 95 (R.I. 1992)).

<u>English v. Green</u>, 787 A.2d 1146, 1151 (R.I. 2001).

However, the Rhode Island Supreme Court has also stated that
"the negligence of a third party intervening between the
defendant's negligence and the damage breaks the causal
connection between the two." <u>Mahogany v. Ward</u>, 16 R.I. 479, 481
(1889). The <u>Mahogany</u> Court, charged with apportioning liability
between the drivers of two horse-drawn carriages on a single-lane
road in Middletown, went on to explain an exception to the rule
about intervening acts:

> The rule above stated is subject to the
> qualification that, if the intervening act is
> such as might reasonably have been
> anticipated as the natural or probable result
> of the original negligence, the original
> negligence will, notwithstanding such
> intervening act, be regarded as the proximate
> cause of the injury, and will render the
> person guilty of it chargeable.

<u>Mahogany v. Ward</u>, 16 R.I. at 483.

More recently, the Rhode Island Supreme Court addressed the
issue of proximate and intervening causes in the case of an
injured tennis player, <u>Hueston v. Narragansett Tennis Club</u>, 502
A.2d 827 (R.I. 1986). There the Supreme Court wrote, "It is
fundamental that there may be concurring proximate causes which
contribute to a plaintiff's injury and that a defendant's

-28-

negligence is not always rendered remote in the causal sense
merely because a second cause intervenes." 502 A.2d at 830. The
key is foreseeability: Are the intervening acts the natural and
probable consequence of defendant's negligence; and could those
intervening acts have reasonably been anticipated by the
defendant? Clements v. Tashjoin, 168 A.2d 472, 474 (R.I. 1961).

In the Master Complaint, Plaintiffs allege that police
officer Anthony Bettencourt failed to enforce occupancy
restrictions at The Station, permitting dangerous overcrowding,
and that he failed to enforce the laws governing the legal use of
pyrotechnics. Denis Larocque allegedly failed to adequately
inspect The Station for safety violations and failed to enforce a
myriad of fire safety laws and standards. These laws and
regulations were all enacted in order to ensure the safety of the
general public. These laws are designed to prevent fire or
mitigate its impact in public places. It is logical that
violations of these laws and regulations would result in an
increased possibility of fire and increased hazard to the general
public. By definition, fire is a foreseeable consequence of a
violation of a fire prevention regulation. Plaintiffs'
allegations against Bettencourt, Larocque and the Town, if
proven, are sufficient to support a finding of proximate cause,
and support a theory of liability against Defendants.
Consequently, the Town Defendants' Motion to Dismiss the

-29-

allegations of negligence based on a lack of proximate cause is denied.

## No *in personam* jurisdiction

In their Memorandum in Support of their Motion to Dismiss the Henault complaint[4] (which complaint was originally filed in the United States District Court for the District of Connecticut), Defendants argue that the Connecticut District Court lacks *in personam* jurisdiction over them.  In reviewing the travel of the case, this Court concludes that this issue has been addressed and resolved, and therefore is moot.

In determining whether a transfer of venue is proper, courts look to the jurisdictional authority of the transferee court rather than the transferor court.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962), Mulcahy v. Guertler, 416 F. Supp. 1083, 1085 (D. Mass. 1976).  In transferring the Henault matter to this Court in October 2003, United States District Judge Dominic Squatrito wrote,

> Prior to determining whether a transfer is
> appropriate pursuant to Section 1404 [28
> U.S.C. § 1404 (a)], certain conditions must
> be met.  The phrase "where it might be
> brought" has been interpreted to mean that,
> in order to transfer a case to another
> district pursuant to Section 1404, the
> transferee court must have subject matter
> jurisdiction, the plaintiffs must have been

---

[4] Defendants filed their memorandum of law on August 31, 2004, which predates by several months the Henault Plaintiff's Notice of Adoption of the First Amended Master Complaint.

-30-

> able to acquire personal jurisdiction over
> each defendant in the transferee district.
> <u>See</u> <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343 -
> 45.  Here, these prerequisites have been
> satisfied.

Memorandum of Decision and Order, Case No. 3:03CV999(DJS),

10/3/03.

When this Court held that it could properly exercise

jurisdiction over all the Station fire cases in <u>Passa v.</u>

<u>Derderian</u>, 308 F. Supp. 2d 43 (D.R.I. 2004), this writer

specifically made note of the Henault case:

> Currently, this Court has been transferred
> three additional cases arising from the
> Station nightclub fire from Connecticut and
> Massachusetts.  The plaintiffs in these cases
> are not all from Rhode Island - indeed, in
> Estate of Henault v. American Foam, C.A. No.
> 03-483L, the filing plaintiffs are all from
> Connecticut, and have jurisdiction in this
> court based on the federal diversity statute,
> 28 U.S.C. § 1332.

308 F. Supp. 2d at 59.

The determination of Judge Squatrito as to the propriety of

the transfer of venue, as well as this Court's conclusion in

<u>Passa</u> that its exercise of jurisdiction was proper, indicate that

the issue of *in personam* jurisdiction has previously been

analyzed and decided in the case of these Defendants.  Moreover,

the fact that the Henault plaintiffs adopted the First Amended

Master Complaint on December 14, 2004, renders moot any

hypothetical technical shortcomings of their earlier filings.

<u>See</u> <u>Kendall v. Overseas Dev. Corp.</u>, 700 F.2d 536, 539 (9th Cir.

1983).

### Joint venture

Count Ten of the Henault Plaintiffs' Notice of Adoption charges that the Town of West Warwick and Denis Larocque, along with several other defendants,[5] entered into a joint venture in the pursuit of economic gain and their common business interests.

Under Rhode Island law, a joint venture is "an undertaking by two or more persons jointly to carry out a single business enterprise for profit." <u>Fireman's Fund Ins. Co. v. E. W. Burman, Inc.</u>, 391 A.2d 99, 101 (R.I. 1978).   In <u>McAleer v. Smith</u>, 860 F. Supp.  924 (D.R.I. 1994), this Court wrote,

> Generally, in order for a joint venture to exist, the parties must be bound by express or implied contract, providing for: (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking.   In addition, the joint venture agreement must provide for a sharing of losses as well as profits.

860 F. Supp. at 943.  When a joint venture is established, then all members of the joint venture are chargeable with the negligence of one member acting in furtherance of the joint

---

[5]The other defendants included in the joint venture are: Jeffrey Derderian; Michael Derderian; DERCO, LLC d/b/a The Station; Manic Music Management, Inc., Jack Russell; Mark Kendall; David Filice; Eric Powers; Daniel Biechele; Paul Woolnough; Knight Records, Inc.; Anheuser-Busch, Inc.; Anheuser-Busch Companies, Inc.; McLaughlin & Moran, Inc.; Clear Channel Broadcasting, Inc. d/b/a WHJY-FM; Citadel Communications Corporation d/b/a WQGN-FM; Motiva Enterprises, LLC; Shell Oil Company; State of Rhode Island; and Irving J. Owens.

enterprise.  <u>Walsh v. Israel Couture Post, No. 2274 V.F.W.</u>, 542
A.2d 1094, 1096 (R.I. 1988).

    A review of the joint venture allegations in the Notice of
Adoption reveals few of the requisite elements.  The alleged
joint venturers, twenty-five in number, include the owners of the
nightclub, the band members and road manager, the corporate
sponsors, Denis Larocque and the Town of West Warwick, Irving J.
Owens and the State of Rhode Island, and two California
corporations which the Court believes may comprise the band's
promoter and/or recording company.  According to Count Ten, these
parties entered into "an express or implied agreement for the
common purpose and design of planning, endorsing, sponsoring,
promoting, and/or advertising the concert" in order to pursue
common business interests and economic gain.  Notice of Adoption,
¶¶ 67 - 68.  The Henault Plaintiffs also allege that each joint
venturer could "voice concerns regarding the event" and that each
controlled "certain aspects of the planning, endorsement,
sponsorship, promotion, and/or advertising relating to the Great
White concert."  Notice of Adoption, ¶ 69.

    While it may be true that at least some of the joint venture
Defendants collaborated to put on the Great White concert,
Plaintiffs fail to make the essential allegation that they had an
agreement to share profits and losses.  The Court has tried, in
the words of Circuit Chief Judge Boudin, "indulging to a

-33-

reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." <u>DM Research, Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999). However, despite all indulgent inferences, the Court is unable to imagine what kind of an agreement could include these twenty-five defendants. Plaintiffs allege that the Town Defendants failed to adequately inspect The Station for fire and other safety hazards. There is no allegation that the Town Defendants had an agreement with the nightclub owners, the corporate sponsors, or any of the other defendants to share in the profits and losses from the concert, or, that they played any role in putting on the concert.

For all these reasons, the Court concludes that the Henault Plaintiffs have failed to allege adequate factual predicates to support their claim. Even if all the allegations are taken as true, a joint venture has not been sufficiently pleaded. Consequently, Count Ten of the Notice of Adoption in the Henault case is dismissed as to the Town of West Warwick and Denis Larocque.

### Conclusion

For the aforementioned reasons, this Court grants the Motion to Dismiss of the State of Rhode Island and State Fire Marshal Irving J. Owens as to all allegations set forth in the First Amended Master Complaint, and the Henault Notice of Adoption. The Court denies the Motion to Dismiss of the Town of West

-34-

Warwick, on behalf of Malcolm Moore, Denis Larocque and Anthony
Bettencourt, except that Count Ten of the Notice of Adoption of
First Amended Master Complaint in the Henault case is dismissed
as to these Defendants.  No judgment shall enter at this time.
It is so ordered.

Ronald R. Lagueux
Senior United States District Judge
November 17 , 2005